CELELLO LAW GROUP, LLC
MARC A. CELELLO (Georgia Bar No. 950497) (Admitted *Pro Hac Vice*)
BRANDON T. BRYSON (Georgia Bar No. 940663) (Admitted *Pro Hac Vice*)
9940 Highway 92, Suite 200
Woodstock, Georgia 30188
Telephone: (404) 897-6000
Facsimile: (404) 897-7879

QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
MICHAEL J. QUILLING (Texas Bar No. 16432300) (Admitted *Pro Hac Vice*)
HUDSON M. JOBE (Texas Bar No. 24041189) (Admitted *Pro Hac Vice*)
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

MCALLISTER LAW GROUP
MARLIS MCALLISTER (State Bar No. 124265)
220 State Street, Suite A
Los Altos, California 94022
Telephone: (650) 948-7536
Facsimile: (650) 948-7502

Attorneys for Defendants,
JAMES A. TORCHIA; MARC A. CELELLO; THE CLEAR SKIES HOLDING COMPANY LLC; CARS 1ST LLC; SYNERGY MOTOR COMPANY N/K/A CREDIT NATION AUTO SALES, LLC; CREDIT NATION AUTO SALES, LLC F/K/A SYNERGY MOTOR COMPANY; CREDIT NATION LENDING SERVICES LLC; JARO LLC; NATIONAL VIATICAL, INC.; RIVER GREEN INVESTMENT MANAGEMENT LLC; and RIVER GREEN LLC

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re: | No. 11-31712-HLB-7 |
| SYNERGY ACCEPTANCE CORP. | Chapter 7 |
| Debtor. | |
| E. LYNN SCHOENMANN, Trustee of the Bankruptcy Estate of Synergy Acceptance Corporation, | Adv. Pro. No. 12-03156-HLB |
| Plaintiff, | **DECLARATION OF BRITTON D. MCCLUNG IN SUPPORT OF DEFENDANTS' RESPONSE TO TRUSTEE'S OBJECTION TO PREVIOUSLY UNDISCLOSED EXHIBITS AND UNAUTHORIZED OVERSIZE BRIEF** |
| vs. | |
| JAMES A. TORCHIA, et al., | |
| Defendants. | Hon. Hannah L. Blumenstiel |

Britton D. McClung declares as follows:

1. My name is Britton D. McClung. I am over the age of 18 and am competent to make this Declaration. I have personal knowledge of the facts herein, all of which are true and correct, and I can testify competently to the same.

2. I am an attorney employed at the law firm of Quilling, Selander, Lownds, Winslett, & Moser, P.C. and one of the lawyers working on the litigation pending before this Court. Specifically, I have been in charge of monitoring and reviewing documents produced by the Trustee and producing documents to the Trustee.

3. Attached hereto marked **Exhibit "A"** is a true and correct copy of a letter dated February 13, 2014, which I prepared and sent to Loren Kieve, counsel for the Trustee, whereby I sent him a disk containing electronic documents relating to GreatAmerica Financial Services Corporation labeled GAFS 00001 through GAFS 00135.

4. Attached hereto marked **Exhibit "B"** is a true and correct copy of a letter dated February 13, 2014, which I prepared and sent to Loren Kieve, counsel for the Trustee, whereby I sent him a disk containing electronic documents relating to Chamberlain Hrdlicka White Williams & Aughtry labeled CHWWA 000001 through CHWWA 000892. These documents were sent to Mr. Kieve by me the same day I received them from Chamberlain Hrdlicka.

5. Attached hereto marked **Exhibit "C"** is a true and correct copy of an email (without exhibits) dated February 13, 2014, which I prepared and sent to Loren Kieve, counsel for the Trustee, whereby I sent him electronic documents relating to records from the Bank of North Georgia labeled TOR-F000001 through TOR-F000005. These documents were produced by Bank of North Georgia to the Defendants.

6. Attached hereto marked **Exhibit "D"** is a true and correct copy of a letter dated February 18, 2014, which I prepared and sent to Loren Kieve, counsel for the Trustee, whereby I sent him two disks containing electronic documents labeled TOR-G000001 through TOR-G001716. These documents were obtained from an old computer harddrive which the Defendants located. One of the disks contains the Quickbook database which I believe had actually been produced by the

Trustee to the Defendants. I did not take the time to compare in detail the database I sent to Mr. Kieve to the similar database the Trustee produced to the Defendants. The other disk contains documents relating to historical loan sales by the Debtor. Many of these documents bear the title "Auto Contracts Purchase Agreement."

7. Attached hereto marked **Exhibit "E"** is a true and correct copy of an email without exhibits dated March 10, 2014 which I prepared and sent to Loren Kieve, counsel for the Trustee, whereby I sent him electronic bank records of APAL labeled TOR-H000001 through TOR-H000049 which were provided to the Defendants by the Plaintiff in the Georgia Lawsuit on March 5, 2014.

8. Attached hereto marked **Exhibit "F"** is a true and correct copy of an email dated March 10, 2014 which I prepared and sent to Loren Kieve, counsel for the Trustee, whereby I transmitted to him the Defendants' Second Amended Initial Disclosures.

9. Attached hereto marked **Exhibit "G"** is a true and correct copy of a letter from the files of MacDonald Fernandez, then counsel for Defendants, dated July 17, 2013 and describing the document production to the Trustee labeled TOR000010 – TOR 003109 that accompanied the letter. Although I was not counsel for Defendants at the time when the letter was prepared, I have thoroughly reviewed the documents produced in discovery by my client, and this letter accurately reflects the contents and scope of the document production to the Trustee's counsel.

10. Attached hereto marked **Exhibit "H"** is a true and correct copy of a letter from the files of MacDonald Fernandez, then counsel for Defendants, dated July 31, 2013 and describing the document production to the Trustee labeled TOR 003124 – TOR 0003125 and the disc containing three Outlook data files that accompanied the letter. Although I was not counsel for Defendants at the time when the letter was prepared, I have thoroughly reviewed the documents produced in discovery by my client, and this letter accurately reflects the contents and scope of the document production to the Trustee's counsel.

11. Attached hereto marked **Exhibit "I"** are true and correct copies of documents produced by the Trustee's counsel to Defendants on or about May 23, 2012. The documents were not labeled in any fashion when produced.

12. Attached hereto marked **Exhibit "J"** is a true and correct copy of a Synergy Acceptance Corporation bank statement for July 2007 produced by the Trustee's counsel to Defendants on or about May 23, 2012. I have compared Exhibit J to Exhibit 12 of the Appendix in support of Defendants' Counter-Motion for Summary Judgment, and the information contained in each is identical.

13. Attached hereto marked **Exhibit "K"** is a true and correct copy of a letter from the files of MacDonald Fernandez, then counsel for Defendants, dated July 19, 2013 and describing the document production to the Trustee labeled TOR 003110 – TOR 003123 that accompanied the letter. Although I was not counsel for Defendants at the time when the letter was prepared, I have thoroughly reviewed the documents produced in discovery by my client, and this letter accurately reflects the contents and scope of the document production to the Trustee's counsel.

14. Attached hereto marked **Exhibit "L"** are true and correct copies of documents produced by the Trustee's counsel to Defendants on or about May 23, 2012. Although the documents were not originally labeled in any fashion when produced, these documents have been labeled "TRUSTEE 000003," "TRUSTEE 000752," and "TRUSTEE 000753" for convenience.

15. Attached hereto marked **Exhibit "M"** are true and correct copies of documents produced by the Trustee's counsel to Defendants on or about May 23, 2012. Although the documents were not originally labeled in any fashion when produced, these documents have been labeled "TRUSTEE 005298" and "TRUSTEE 005385" for convenience.

16. Attached hereto marked **Exhibit "N"** is a true and correct copy of documents produced by the Trustee's counsel to Defendants on or about May 23, 2012. Although the documents were not originally labeled in any fashion when produced, these documents have been labeled "TRUSTEE 009568" for convenience.

17. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: April 24, 2014.

_____
Britton D. McClung



# QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER

A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS
2001 BRYAN STREET, SUITE 1800
DALLAS, TEXAS 75201

BRITT McCLUNG
bmcclung@qslwm.com

TELEPHONE: (214) 871-2100
TELEFAX: (214) 871-2111

February 13, 2014

**_Via Federal Express #7979 0456 3662_**
Loren Kieve
Kieve Law Offices
5A Funston Avenue
The Presidio of San Francisco
San Francisco, California 94129-1110

Re:  *E. Lynn Schoenmann, Bankruptcy Trustee, v. James Torchia, et al.*
     Adversary Proceeding No. 12-3156 HLB

Dear Mr. Kieve:

Enclosed is a disc containing documents produced to Defendants by GreatAmerica Financial Services Corporation. It appears that these documents have already been produced to you in this litigation; however, as we have not been able to confirm this production, we are now producing these documents with labels GAFS 000001 - GAFS 001305 out of an abundance of caution. Please contact my office if you have any problems retrieving the enclosed documents.

Sincerely,

Britt McClung

Enclosure
5487.0000

4838-8115-6888, v. 1



E. Lynn Schoenmann, Bankruptcy Trustee,
v. James Torchia, et al.
Northern District of California, San Francisco Division

QSLWM

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100

Documents produced by Defendants
GAFS000001 – GAFS001305

February 13, 2014



# QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER

A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS
2001 BRYAN STREET, SUITE 1800
DALLAS, TEXAS 75201

BRITT McCLUNG
bmcclung@qslwm.com

TELEPHONE: (214) 871-2100
TELEFAX: (214) 871-2111

February 13, 2014

***Via Federal Express #7979 1584 3574***
Loren Kieve
Kieve Law Offices
5A Funston Avenue
The Presidio of San Francisco
San Francisco, California 94129-1110

Re: *E. Lynn Schoenmann, Bankruptcy Trustee, v. James Torchia, et al.*
Adversary Proceeding No. 12-3156 HLB

Dear Mr. Kieve:

Enclosed are a cover letter and CD containing documents labeled CHWWA 000001-CHWWA 000892 that we just received from Chamberlain Hrdlicka White Williams & Aughtry in connection with discovery in the pending Georgia litigation. We anticipate that these documents are responsive to one or more requests in the Trustee's First Document Requests to Defendants dated April 22, 2013, including but not limited to Nos. 177 and 193.

Please contact my office if you have any problems retrieving the enclosed documents.

Sincerely,

Britt McClung

cc: ***Via Federal Express 7979 1582 2473***
Marc A. Celello
Celello Law Group, LLC
9940 Highway 92, Suite 200
Woodstock, Georgia 30188

Enclosure
5487.0000

4824-3995-5736, v. 1

*E. Lynn Schoenmann, Bankruptcy Trustee,*
*v. James Torchia, et al.*
Northern District of California, San Francisco Division



2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100



**Chamberlain Documents produced
to Alston & Bird
CHWWA000001 to CHWWA000892**

Rec'd February 13, 2014

**EXHIBIT**

**C**



## Britt McClung

| | |
|---|---|
| **From:** | Britt McClung |
| **Sent:** | Thursday, February 13, 2014 10:18 AM |
| **To:** | 'Loren Kieve' |
| **Cc:** | Hudson Jobe; Michael Quilling; 'Marc Celello'; marlis@mcallisterlaw.net |
| **Subject:** | Schoenmann v. Torchia - Supplemental Document Production |
| **Attachments:** | TOR-F000001 - TOR-F000005.pdf |

Mr. Kieve,

Attached are documents that we have received from the Bank of North Georgia in connection with discovery in the pending Georgia litigation. These documents are responsive to Request Nos. 106, 154 and 193 in Trustee's First Document Requests to Defendants dated April 22, 2013, and accordingly they are hereby produced as a supplement to Defendants' prior production. Defendants will further supplement their production in the event that additional responsive non-privileged documents are received.

Regards,

Britt McClung
Attorney at Law
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street Suite 1800
Dallas, TX 75201
214-871-2100 (main)
214-880-1889 (direct)
214-871-2111 (fax)


EXHIBIT
D

# QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER

A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS
2001 BRYAN STREET, SUITE 1800
DALLAS, TEXAS 75201

BRITT McCLUNG
bmcclung@qslwm.com

TELEPHONE: (214) 871-2100
TELEFAX: (214) 871-2111

February 18, 2014

*Via Federal Express #7979 5712 4392*

Loren Kieve
Kieve Law Offices
5A Funston Avenue
The Presidio of San Francisco
San Francisco, California 94129-1110

Re: *E. Lynn Schoenmann, Bankruptcy Trustee, v. James Torchia, et al.*
Adversary Proceeding No. 12-3156 HLB

Dear Mr. Kieve:

In connection with discovery in the pending Georgia litigation, we have located an old computer server containing documents that appear to be relevant in the above-styled litigation. We believe that you already have these documents and in fact may have produced them to us as a part of the Trustee's document production. However, out of an abundance of caution, these documents have been labeled "TOR-G000001 -- TOR-G001716" and loaded onto the enclosed CDs for your review.

To the extent that a password is required to view any of the enclosed documents, use the following password: "harley99". Please contact my office if you have questions or have any problems retrieving the enclosed documents.

Sincerely,

Britt McClung

Enclosures
5487.0000

4814-4238-1848, v. 1



*E. Lynn Schoenmann, Bankruptcy Trustee,*
*v. James Torchia, et al.*
Northern District of California, San Francisco Division



2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100

**Documents produced by Defendants**
**TOR-G000001 – TOR-G001715**

February 18, 2014

---

*E. Lynn Schoenmann, Bankruptcy Trustee,*
*v. James Torchia, et al.*
Northern District of California, San Francisco Division



2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100



# TOR-G001716

QuickBooks 2006-2007 Native File
SynergyAcceptanceCorporation.8170.qbw

February 18, 2014



| | |
|---|---|
| **From:** | Britt McClung |
| **Sent:** | Monday, March 10, 2014 5:31 PM |
| **To:** | Loren Kieve (lk@kievelaw.com) |
| **Cc:** | Marc Celello (marc@celello.com); Michael Quilling; Hudson Jobe; marlis@mcallisterlaw.net; Dale Bratton; Michael A. Sweet |
| **Subject:** | Schoenmann v. Torchia - Supplemental Document Production |
| **Attachments:** | Bates Labeled Docs TOR-H000001 - TOR-H000049.pdf |

Counsel,

Attached are documents that we have received in connection with the March 6 deposition of Charles Hall in the course of discovery in the pending Georgia litigation. We believe that these documents are already in your possession, but out of an abundance of caution, we are producing them with Bates labels TOR-H000001 through TOR-H000049.

Regards,

Britt McClung
Attorney at Law
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street Suite 1800
Dallas, TX 75201
214-871-2100 (main)
214-880-1889 (direct)
214-871-2111 (fax)



| | |
|---|---|
| **From:** | Britt McClung |
| **Sent:** | Monday, March 10, 2014 6:15 PM |
| **To:** | Loren Kieve (lk@kievelaw.com); Michael A. Sweet (MSweet@foxrothschild.com); Dale Bratton (DBratton@foxrothschild.com) |
| **Cc:** | Marc Celello (marc@celello.com); Michael Quilling; Hudson Jobe; marlis@mcallisterlaw.net |
| **Subject:** | Schoenmann v. Torchia - Second Amended Disclosures |
| **Attachments:** | Second Amended Initial Disclosures.pdf |

Counsel,

Attached are Defendants' Second Amended Initial Disclosures.  A certificate of service is being filed with the Court showing delivery of same.  Please let me know if you cannot access the document or if you have any questions.

Regards,

Britt McClung
Attorney at Law
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street Suite 1800
Dallas, TX  75201
214-871-2100 (main)
214-880-1889 (direct)
214-871-2111 (fax)

CELELLO LAW GROUP, LLC
MARC A. CELELLO (Georgia Bar No. 950497) (Admitted *Pro Hac Vice*)
BRANDON T. BRYSON (Georgia Bar No. 940663) (Admitted *Pro Hac Vice*)
9940 Highway 92, Suite 200
Woodstock, Georgia 30188
Telephone: (404) 897-6000
Facsimile: (404) 897-7879
MCALLISTER LAW GROUP
MARLIS MCALLISTER (State Bar No. 124265)
141 First Street
Los Altos, California 94022
Telephone: (650) 948-7536
Facsimile: (650) 948-7502

Attorneys for Defendants,
JAMES A. TORCHIA; MARC A. CELELLO; THE
CLEAR SKIES HOLDING COMPANY LLC;
CARS 1ST LLC; CREDIT NATION AUTO
SALES, LLC; CREDIT NATION LENDING
SERVICES LLC; JARO LLC; NATIONAL
VIATICAL, INC.; RIVER GREEN INVESTMENT
MANAGEMENT LLC; and RIVER GREEN LLC

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re:<br><br>SYNERGY ACCEPTANCE CORP.<br><br>Debtor. | No. 11-31712-HLB-7<br><br>Chapter 7 |
| E. LYNN SCHOENMANN, Trustee of the Bankruptcy Estate of Synergy Acceptance Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES A. TORCHIA, et al.,<br><br>Defendants. | Adv. Pro. No. 12-03156-HLB<br><br>**DEFENDANTS' SECOND AMENDED INITIAL DISCLOSURES**<br><br>Hon. Hannah L. Blumenstiel |

COME NOW James A. Torchia; Marc A. Celello (sued herein as *Mark A. Celello*); The

Clear Skies Holding Company LLC; Synergy Motor Company; Cars 1st LLC; Credit Nation Auto

Sales LLC; Credit Nation Lending Services LLC; Jaro LLC; National Viatical, Inc.; River Green

Investment Management LLC; and River Green LLC, whom make the following initial disclosures

1

DEFENDANTS' SECOND AMENDED INITIAL DISCLOSURES

pursuant to Federal Rule of Civil Procedure 26(a), as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7026, and the Court's Amended Order Re: Initial Disclosures and Discovery Conference (Docket No. 51):

## I. Witnesses

1. Ben Chui. *Whereabouts unknown.*

   Course of dealing, negotiation of the sale, the Stock Purchase Agreement ("SPA"), the Amended Stock Purchase Agreement ("ASPA"), payment of funds to Clear Skies Holding Company, LLC ("Clear Skies"), creation of Synergy Equity LLC ("Synergy Equity"), buyers' development of financing plan to fund purchase, management of the Debtor following sale, and the Debtors' books and records after sale.

2. Charles Hall. *145 Lincoln Street, Carlisle, PA 17013; (717) 258-0701.*

   Course of dealing, negotiation of the sale, the SPA, the ASPA, payment of funds to Clear Skies, creation of Synergy Equity, buyers' development of financing plan to fund purchase, management of the Debtor following sale, and the Debtors' books and records after sale.

3. Triffany Mok. *Whereabouts unknown.*

   Buyers' development of financing plan to fund purchase, management of the Debtor following sale, and the Debtors' books and records after sale.

4. James Torchia. *c/o Celello Law Group, 9940 Highway 92, Suite 200, Woodstock, GA 30188; (404) 897-6000.*

   Course of dealing, negotiation of the sale, the SPA, the ASPA, payment of funds to Clear Skies, management of the Debtor prior to sale, and the Debtors' books and records prior to sale.

5. Marc Celello. *c/o Celello Law Group, 9940 Highway 92, Suite 200, Woodstock, GA 30188; (404) 897-6000.*

   Course of dealing, negotiation of the sale, the SPA, the ASPA, payment of funds to Clear Skies, management of the Debtor prior to sale, and the Debtors' books and records prior to sale.

2

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 15 of 104

1    6.  Brandy Ouzts Biggs. *ADP, Inc., Mail Stop A-425, 5800 Windward Parkway,*
2        *Alpharetta, GA 30005; (770) 360-2753.*
3        The ASPA and payment of funds to Clear Skies.
4    7.  Thomas E. Jones, Jr. *Chamberlain, Hrdlicka, White, Williams & Aughtry,*
5        *191 Peachtree Street, N.E., Thirty-Fourth Floor, Atlanta, GA 30303; (404) 658-5432.*
6        The ASPA and payment of funds to Clear Skies.
7    8.  Nicholas S. Papleacos. *Chamberlain, Hrdlicka, White, Williams & Aughtry,*
8        *191 Peachtree Street, N.E., Thirty-Fourth Floor, Atlanta, GA 30303; (404) 658-5432.*
9        The ASPA and payment of funds to Clear Skies.
10   9.  Jason Graham. *Graham and Penman, LLP, 17 Executive Park Drive, Suite 115,*
11       *Atlanta, GA 30329; (404)842-9380.*
12       Payment of funds to Clear Skies.
13   10. Kim Kruse. *285 Parkway 575, Woodstock, Georgia 30188; (678) 213-5626.*
14       Payment of funds to Clear Skies; management of the Debtor before and after sale, and
15       the Debtors' books and records before and after sale.
16   11. Rob Smith. *6000 Meridian Avenue, Acworth, GA 30101; (770) 335-5670.*
17       Course of dealing, negotiation of the sale, the SPA, the ASPA, and payment of funds to
18       Clear Skies.
19   12. Angela Tagliapietra. *c/o Celello Law Group, 9940 Highway 92, Suite 200, Woodstock,*
20       *GA 30188; (404) 897-6000.*
21       Limited knowledge of negotiation of the sale and preparation of the SPA.
22   13. Ricky Quick. *Whereabouts unknown.*
23       Limited knowledge of negotiation of the sale and preparation of the SPA.
24   14. Matt Bohn. *c/o Credit Nation Lending Services LLC, 9940 Highway 92, Woodstock,*
25       *GA 30188; (770) 516-1999.*
26       Course of dealing and management of the Debtor before and after sale.
27   15. Melissa York. *285 Parkway 575, Woodstock, Georgia 30188; (678) 213-5626.*
28       Course of dealing and management of the Debtor before and after sale.

3

DEFENDANTS' SECOND AMENDED INITIAL DISCLOSURES

16. <u>Kedi Chang.</u> *Circle Partners, Bon Bini Business Center, Units 2B2K/2B2L,*

   *Schottegatweg Oost 10, Curaçao; +599 (9) 73 81 351.*

   Funding by American Pegasus Auto Loan Fund Segregated Portfolio ("APAL").

17. <u>Former Synergy Acceptance Corp. Investors.</u> *Identified on Exhibit "<u>A</u>" attached*

   *hereto.*

   Course of dealing as noteholder, repayment of note, and management of Debtor prior to

   sale.

**II.    Disclosure of Expert Testimony**

   1. <u>Richard L. Morgan.</u> *Consumer Finance Asset Management. 8333 Douglas Avenue,*

      *Suite 950, Dallas, Texas 75225; (214) 244-3537.*

   Industry expert regarding valuation of auto loan portfolios.

   2. <u>James Hart.</u> *Lightfoot Group, LLC. 1730 Mount Vernon Road, Suite G, Dunwoody,*

      *Georgia 30338; (678) 320-0079.*

   Valuation expert regarding solvency of Synergy at time of transfer and equivalent value

   exchanged in the transfer.

Defendants reserve the right to supplement this disclosure to the extent that new information

becomes available.

**3.    Documents, Tangible Things, and Electronically-Stored Information**

   1. Stock Purchase Agreement and related transaction documents.

   2. Amended Stock Purchase Agreement and related transaction documents.

   3. Loan portfolio information from the AMS computer program.

   4. Emails in the possession of Marc Celello.

   5. Documents relating to Synergy's business operations before and after the sale.

Defendants reserve the right to supplement this disclosure to the extent that new information

becomes available.

**4.    Damages**

   Not applicable.

4

DEFENDANTS' SECOND AMENDED INITIAL DISCLOSURES

**5.   Insurance**

   None.


DATED:  March 10, 2014

QUILLING SELANDER LOWNDS
WINSLETT & MOSER, P.C.


By: /s/ Hudson M. Jobe
    Hudson M. Jobe (TX Bar No. 24041189)
    Admitted *Pro Hac Vice*


CELELLO LAW GROUP, LLC


By: /s/ Marc A. Celello
    Marc A. Celello (GA Bar No. 950497)
    Admitted *Pro Hac Vice*
    Brandon T. Bryson (GA Bar No. 940663)
    Admitted *Pro Hac Vice*


    Attorneys for Defendants,
    JAMES A. TORCHIA; MARC A.
    CELELLO; THE CLEAR SKIES
    HOLDING COMPANY LLC; CARS 1ST
    LLC; CREDIT NATION AUTO SALES,
    LLC; CREDIT NATION LENDING
    SERVICES LLC; JARO LLC;
    NATIONAL VIATICAL, INC.; RIVER
    GREEN INVESTMENT MANAGEMENT
    LLC; and RIVER GREEN LLC


    4835-4967-1449, v. 1

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 18 of 104



LAW OFFICES

MACDONALD | FERNANDEZ LLP

221 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94104-2323

TELEPHONE (415) 362-0449
FACSIMILE (415) 394-5544
WWW.MACFERN.COM

IAIN A. MACDONALD
RENO F.R. FERNANDEZ III
MATTHEW J. OLSON

CENTRAL VALLEY OFFICE
914 THIRTEENTH STREET
MODESTO, CALIFORNIA 95354
TELEPHONE: (209) 549-7949
FACSIMILE: (209) 236-0172

IAIN A. MACDONALD
EXT. 203
IAIN@MACFERN.COM

July 17, 2013

**VIA ELECTRONIC MAIL - lk@kievelaw.com**

Loren Kieve, Esq.
Kieve | Law Offices
5A Funston Avenue
The Presidio of San Francisco
San Francisco, CA 94129-1110

RE:     *Schoenmann v. Torchia (In re Synergy Acceptance Corp.),*
        Adv. Pro. No. 12-03156—Discovery Responses

Dear Mr. Kieve:

In reply to your letter of July 11, 2013, please find attached the first set of responses to the Plaintiff's request for the production of documents. You will note the Defendants are producing documents that fall within some of the categories to which they have interposed objections. The Defendants' production of documents is not a waiver of those objections, which they specifically reserve.

The documents included are:

1. TOR 000010–TOR 000013 — Celello Personal Bank Statements and Celello Law Group Bank Statements (Request No. 176).
2. TOR 000014–TOR 000040 — Documents related to an escrow account established by the Amended Agreement (Request No. 152).
3. TOR 000041–TOR 000043 — Documents related to an "advance" to Synergy Motors (Request No. 124).
4. TOR 000044–TOR 000046 — Documents related to an "advance" to Dun Rite Automotive (Request No. 126).
5. TOR 000047–TOR 000050 — Documents related to an "advance" to National Viatical (Request No. 128).
6. TOR 000051–TOR 000056 — Documents related to an "advance" to Torchia (Request No. 130).
7. TOR 000057–TOR 000149 — Corporate records for Synergy Motor Company, predecessor in interest to Credit Nation Auto Sales, LLC (Request Nos. 33–40).

8. TOR 000150–TOR 000237 — Corporate records for JARO, LLC (Request Nos. 57–64).
9. TOR 000238–TOR 000428 — Corporate records for Credit Nation Auto Sales, LLC (Request Nos. 33–40).
10. TOR 000429–TOR 000526 — Corporate records for The Clear Skies Holding Company, LLC (Request Nos. 9–16).
11. TOR 000527–TOR 002677 — Documents related to entry into notes by the Unsecured Note Holders (Request No. 161).
12. TOR 002678–TOR 003109 — Documents related to the Amended Agreement (Request No. 152).

We are endeavoring to produce additional documents to you this week. Should you have any questions, please do not hesitate to call.

Very truly yours,

Iain A. Macdonald

cc:     Client

MACDONALD | FERNANDEZ LLP

221 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94104-2323

TELEPHONE (415) 362-0449
FACSIMILE (415) 394-5544
WWW.MACFERN.COM

IAIN A. MACDONALD
RENO F.R. FERNANDEZ III
MATTHEW J. OLSON



CENTRAL VALLEY OFFICE
914 THIRTEENTH STREET
MODESTO, CALIFORNIA 95354
TELEPHONE: (209) 549-7949
FACSIMILE: (209) 236-0172

MATTHEW J. OLSON
EXT. 205
MATT@MACFERN.COM

July 31, 2013

**VIA ELECTRONIC MAIL - lk@kievelaw.com**

Loren Kieve, Esq.
Kieve | Law Offices
5A Funston Avenue
The Presidio of San Francisco
San Francisco, CA 94129-1110

RE:     *Schoenmann v. Torchia (In re Synergy Acceptance Corp.)*,
         Adv. Pro. No. 12-03156—Discovery Responses & Additional Production

Dear Mr. Kieve:

In reply to your letters of July 22, 2013, and July 28, 2013, our prior letters are clear about the document requests to which we are responding. To clear up any confusion, however, we have responded to requests 1 through 16, 33 through 40, 57 through 64, 83, 86 through 91, 96 through 99, 104 through 106, 116 through 121, 124, 126, 128, 130, 151, 152, 154 through 157, 161, 164, 168, 173 through 177, and 180 through 184. As stated in our earlier letters, to the extent the Defendants are producing documents that fall within some of the categories to which they have interposed objections, the Defendants' production of documents is not a waiver of those objections, which they specifically reserve.

The Defendants engaged in an extensive search for records responsive to the request, including documents created after January 1, 2005. Their search is ongoing and if additional responsive documents are discovered, we will promptly supplement our production. The Defendants are withholding based upon the attorney–client privilege (1) emails between Mr. Torchia and Mr. Celello and (2) communications with Charles Hall from October 2010 to the present. As we indicated in our opposition to the motion to compel, the sheer volume of documents which are subject to the privilege makes production of a privilege log impracticable. *See* Adv. Comm. Notes to 1993 amended to Fed. R. Civ. P. 26(b).

As you know, Mr. Celello serves as counsel to Mr. Torchia and has served in that capacity since before January 1, 2005. They exchange multiple emails daily in furtherance of the representation. Additionally, Mr. Hall served as legal counsel to Torchia and River Green

regarding the formation and operation of River Green. These communications are unrelated to the allegations in the amended complaint and clearly subject to the attorney–client privilege.

As to the questions you raised in your July 28, 2013, letter:

Points 1–2

The Defendants produced the records in their possession or control for Credit Nation Auto Sales, LLC (and its predecessor, Synergy Motor Company); JARO LLC; and The Clear Skies Holding Company, LLC. Minutes of corporate meetings have not been produced because none exist; the Defendants advise us that all actions were taken by written resolution. *See, e.g.*, TOR 000080.

Point 3

The documents were produced in the manner in which they were kept. Copies of physical documents were Bates stamped and our cover letter clearly indicated what documents were produced in response to specific requests. Our production of electronic documents preserved the documents as they were kept in the ordinary course of business. The Defendants have met their obligations under the Federal Rules of Civil Procedure.

Point 4

The Defendants produced the copy of the "transaction binder" as provided by the Chamberlain law firm after the closing of the sale (Bates stamps TOR 002678–TOR 003109). The Defendants could not locate a hard copy of a "transaction binder" for the initial agreement, but produced electronic copies of documents in their possession on July 19, 2013. These documents were organized as they were kept in the ordinary course of business as required by Civil Rule 34(b)(2)(E)(i). As your request sought both original and drafts of documents, the Defendants produced everything in their possession.

Point 5

As to your request to specifically identify the documents that are being produced in response to a specific document requests, Civil Rule 34(b)(2)(E)(i) requires that the produced documents either be produced as they are kept in the ordinary course of business or grouped to correspond to the categories in the request. The electronic documents were produced to you as they were kept in the ordinary course as required by the Rule. The July 17, 2013 letter accompanying the Bates-stamped documents identified which pages were responsive to which requests. The Bates-stamped documents produced on July 19, 2013 (TOR 003110– TOR 003123) were responsive to request 176.

Points 6–10

TOR 000014 through TOR 000040 relate to release of funds escrowed pursuant to the Sims and Sweet lawsuit. These documents were provided to the Defendants by their attorneys in response to a request for an accounting of monies escrowed. There were no attachments to the documents when they were received.

Point 11

As stated in our July 17, 2013 letter, TOR 000041 is responsive to request number 124 for documents related to an "advance" to Synergy Motors.

Point 12

Yes, TOR 000057 through TOR 000149 constitutes all of the corporate records of Synergy Motor Company in the Defendants' possession and control.

Point 13

Yes, TOR 000150 through TOR 000237 constitutes all of the corporate records of JARO LLC in the Defendants' possession and control.

Points 14–16

Yes, as stated in our July 17, 2013 letter, TOR 000238 through TOR 000428 constitutes all of the corporate records of Credit Nation Auto Sales LLC in the Defendants' possession and control.

Point 17

Yes, TOR 000429 through TOR 000526 constitutes all of the corporate records of The Clear Skies Holding Company LLC in the Defendants' possession and control.

Point 18

As stated in our July 17, 2013 letter, TOR 000527 through TOR 002677 relate to request number 161 where you sought records relating to the entry into notes by the Unsecured Note Holders.

Point 19

For the remaining corporate defendants, we stand on our objections to the document requests. These entities were formed long after the events described in the amended complaint

and each has their own distinct corporate identity. We believe the requested documents are not discoverable.

Point 20

As an initial matter, Point 20 is unclear to what set of documents to which it refers. However, as the Defendants stated in our July 19, 2013 letter, they do not possess SAC's corporate records, including documents related to SAC's shareholder or share holdings, the issuance of shares by SAC, the consideration paid for issuance of SAC shares, the stock ledger of SAC, or SAC's board minutes, articles of incorporation, by-laws, or filings with regulatory authorities. If responsive documents are identified in the future, the Defendants will offer a supplemental response.

Point 21

TOR 002678 through TOR 003109 are the complete and final set of formal documents related to the October 2007 amended and restated Stock Purchase Agreement. The documents related to the initial agreement were produced on July 19, 2013.

**Additional Document Production**

Finally, enclosed herewith please find a compact disc containing electronic copies of emails responsive to your request and produced in accordance with the Defendants' initial disclosures. The attached emails are responsive to requests numbers 81, 82, 84, 85, 88, 152, and 168. As discussed above, the Defendants have not produced privileged emails between Mr. Torchia and Mr. Celello or communications with Mr. Hall related to his representation of River Green.

The emails are produced as they were kept in the ordinary course of business and are separated into three Outlook data files. One contains emails related to the sale transaction, one contains emails with Brandy Biggs, and a third contains emails to Brandy Biggs. Mr. Celello advises us that he does not have copies of emails he sent prior to December 3, 2007, and we are therefore unable to produce any emails sent by Mr. Celello prior to that date. Additionally, we are producing TOR 003124 thorough TOR 003125, an email containing both privileged information and non-privileged information. We redacted the privileged information.

We trust this resolves your concerns. Should you have any questions, please do not hesitate to call.

Very truly yours,

Matthew J. Olson

cc:    Client

 **Chamberlain Hrdlicka**
Attorneys at Law

 **EXHIBIT**
**1**

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
191 Peachtree Street N. E.
Thirty-Fourth Floor
**ATLANTA, GA  30303-1747**
404.659.1410    800.800.0745
Direct Dial: 404.658.5470
Direct Fax: 404.659.1852

300 CONSHOHOCKEN STATE RD.,
SUITE 570
WEST CONSHOHOCKEN PA 19428
Direct Dial:  610.772.2300

1200 SMITH ST, SUITE 1400
HOUSTON, TX 77002-4310
TELEPHONE 713.658.1818

## FACSIMILE TRANSMITTAL SHEET

Please deliver the following pages to:

| NAME | FACSIMILE | CONTACT# | TIME SENT | SENT BY |
|---|---|---|---|---|
| 1. **Charles E. Hall, Jr.** | 678-564-1210 | (   ) | | |
| 2. | (   ) | (   ) | | |
| 3. | (   ) | (   ) | | |
| 4. | (   ) | (   ) | | |

FROM: Brandy O. Biggs                DATE: November 8, 2007

CHWWM CLIENT NO. 008640-000000        Total Pages (Including This Page): 7

| Original Will Follow Via: |
|---|
| _X_ Original will not follow      ___ Certified Mail          ___ Messenger |
| ___ Regular Mail                  ___ Overnight Delivery |

RE:  **Articles of Incorporation and Articles of Merger of Synergy Acceptance Corp.**

NOTE:  THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address.  Thank you.

**IF YOU HAVE ANY PROBLEMS RECEIVING THIS FAX, PLEASE CALL (404) 659-1410, AS SOON AS POSSIBLE.**

TRUSTEE000077^SAC and Synga Certificate of Merger 5.16.06.pdf - Page 1

Control No. 0640694

# STATE OF GEORGIA

## Secretary of State
### Corporations Division
### 315 West Tower
### #2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

# CERTIFICATE
# OF
# INCORPORATION

I, **Cathy Cox**, the Secretary of State and the Corporations Commissioner of the State of Georgia, hereby certify under the seal of my office that

## SYNGA CORP.
### a Domestic Profit Corporation

has been duly incorporated under the laws of the State of Georgia on **05/16/2006** by the filing of articles of incorporation in the Office of the Secretary of State and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated.

WITNESS my hand and official seal of the City of Atlanta and the State of Georgia on May 16, 2006



Cathy Cox
Secretary of State

TRUSTEE000077^SAC and Synga Certificate of Merger 5.16.06.pdf - Page 2

Control No: 0640694
Date Filed: 05/16/2006 12:00 AM
Cathy Cox
Secretary of State

# ARTICLES OF INCORPORATION
## OF
## SYNGA Corp.

### Article I.

The name of the corporation is SYNGA Corp. ("Corporation").

### Article II.

The Company is authorized to issue one million (1,000,000) shares of common stock.

### Article III.

The registered office for the Corporation is 1170 Peachtree Street, N.E., Suite 275, Atlanta, Georgia, 30309.  The registered agent for the Corporation is Celello Law Group, LLC, 1170 Peachtree Street, N.E., Suite 275, Atlanta, Georgia, 30309.

### Article IV.

The name of the incorporator is Celello Law Group, LLC at 1170 Peachtree Street, N.E., Suite 275, Atlanta, Georgia, 30309.

### Article V.

The mailing address of the principal office of the Corporation is 200 North Street, Canton, Georgia, 30114.

## EXECUTION PAGE FOLLOWS

State of Georgia
Creation - Domestic Entity 3 Page(s)

TRUSTEE000077^SA                                                    3

T0615315511

IN WITNESS WHEREOF, the undersigned has executed these Articles of Incorporation.

This ___15th___ day of May, 2006.

CELELLO LAW GROUP, LLC
Incorporator

By: _____
Marc A. Celello
1170 Peachtree Street, NE, Suite 875
Atlanta, Georgia 30309
T: 404-897-6000
F: 404-897-7879

Control No. 0640694

# STATE OF GEORGIA

## Secretary of State

### Corporations Division
### 315 West Tower
### #2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia  30334-1530

# CERTIFICATE
# OF
# MERGER

## NAME CHANGE

I, **Cathy Cox**, the Secretary of State and the Corporations Commissioner of the State of Georgia, do hereby issue this certificate pursuant to Title 14 of the Official Code of Georgia annotated certifying that articles or a certificate of merger and fees have been filed regarding the merger of the below entities, effective as of 06/23/2006. Attached is a true and correct copy of the said filing.

Surviving Entity:
**SYNGA CORP.**, a Georgia Profit Corporation

Changing its Name to:
**SYNERGY ACCEPTANCE CORP.**, a Georgia Profit Corporation

Nonsurviving Entity/Entities:
**SYNERGY ACCEPTANCE CORP.**, a California Profit Corporation

WITNESS my hand and official seal of the City of Atlanta and the State of Georgia on June 23, 2006



Cathy Cox
Secretary of State

TRUSTEE000077^SAC and Synga Certificate of Merger 5.16.06.pdf - Page 5

Control No: 0640694
Date Filed: 06/26/2006 12:00 AM
Cathy Cox
Secretary of State

# CERTIFICATE OF MERGER OF
## SYNERGY ACCEPTANCE CORP., A CALIFORNIA CORPORATION
### WITH AND INTO
### SYNGA CORP., A GEORGIA CORPORATION  64694

0325101

Pursuant to O.C.G.A § 14-2-1105 (b), SYNGA Corp. files this Certificate of Merger setting forth the following:

(1)     Synergy Acceptance Corp., a California Corporation ("Synergy") is merging with and into SYNGA Corp., a Georgia Corporation ("SYNGA" or "Surviving Corporation").  From and after the Effective Date of the merger, as defined by Plan of Merger of Synergy Acceptance Corp., A California Corporation with and into SYNGA Corp., A Georgia Corporation, the Surviving Corporation will assume the name "Synergy Acceptance Corp.";

(2)     From and after the effective date of the merger, the Articles of Incorporation of SYNGA Corp. shall be amended as follows:  Article I shall be amended to read as follows:  "The name of the corporation is Synergy Acceptance Corp.";

(3)     The executed Plan of Merger of Synergy Acceptance Corp., a California Corporation With and Into SYNGA Corp., a Georgia Corporation ("Plan") is on file at the principal place of business of the Surviving Corporation, located at 200 North Street, Canton, Cherokee County, Georgia 30114;

(4) A copy of the Plan will be furnished by the Surviving Corporation, on request and without cost, to any shareholder of Synergy or SYNGA;



State of Georgia
Merger 3 Page(s)

TRUSTEE000077 SAC and Synga

T0617723016                                    - Page 6

5048

TRUSTEE000077^SAC and Synga Certificate of Merger 5.16.06.pdf - Page 7

**CERTIFICATE OF MERGER OF
SYNERGY ACCEPTANCE CORP., A CALIFORNIA CORPORATION
WITH AND INTO
SYNGA CORP., A GEORGIA CORPORATION**

(5)  In accordance with the Georgia Business Corporations Code and the

California Corporations Code, the Plan was duly approved by the shareholders of

Synergy and the Surviving Corporation.


Dated: June 22nd, 2006


                                    SYNGA Corp., a Georgia Corporation

                          By: _____
                                    Marc A. Celello
                                    Its: Secretary

TRUSTEE000077^SAC and Synga Certificate of Merger 5.16.06.pdf - Page 8



### Bank of North Georgia
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

## Statement of Account



EXHIBIT
J

| | |
|---|---|
| Last statement: | June 30, 2007 |
| This statement: | July 31, 2007 |

Total days in statement period: 31
010-001-108-9     031     286
Page 1 of 84

SYNERGY ACCEPTANCE CORP.
9940 HWY 92
WOODSTOCK GA 30188-6417

Direct inquiries to:
770-576-4471

## Summary of Account Balance

| Account | Number | Ending Balance |
|---|---|---|
| Commercial Checking | 010-001-108-9 | $1,431,390.12 |

## Commercial Checking    Account Number 010-001-108-9    835 Enclosures

| | | | |
|---|---|---|---|
| Beginning balance | 201,388.01 | | |
| Deposits/Credits | 12,512,081.44 | Low balance | -85,864.66 |
| Withdrawals/Debits | 11,282,079.33 | Average balance | 3,013,870.82 |
| Ending balance | 1,431,390.12 | Average collected balance | 3,012,023.00 |

### Checks

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 0 | 07-02 | 1,000.00 | 27518 * | 07-02 | 354.78 |
| 24939 | 07-24 | 850.00 | 27519 | 07-03 | 262.80 |
| 26379 * | 07-11 | 699.00 | 27521 * | 07-03 | 312.05 |
| 26472 * | 07-20 | 10,216.00 | 27523 * | 07-06 | 71.90 |
| 26474 * | 07-13 | 790.00 | 27525 * | 07-02 | 60.00 |
| 26484 * | 07-18 | 9,637.00 | 27527 * | 07-03 | 64.00 |
| 27001 * | 07-19 | 27,095.00 | 27528 | 07-02 | 31.84 |
| 27059 * | 07-03 | 12,978.00 | 27535 * | 07-12 | 7,111.00 |
| 27131 * | 07-16 | 6,462.00 | 27549 * | 07-18 | 125.00 |
| 27141 * | 07-06 | 827.99 | 27557 * | 07-02 | 350.00 |
| 27165 * | 07-02 | 6,744.21 | 27560 * | 07-02 | 500.80 |
| 27215 * | 07-23 | 9,375.00 | 27575 * | 07-03 | 284.01 |
| 27270 * | 07-05 | 275.00 | 27581 * | 07-02 | 7,037.00 |
| 27305 * | 07-24 | 9,364.00 | 27584 * | 07-03 | 7,780.00 |
| 27318 * | 07-05 | 7,991.00 | 27586 * | 07-13 | 7,410.00 |
| 27323 * | 07-18 | 7,170.00 | 27587 | 07-03 | 7,524.00 |
| 27400 * | 07-09 | 8,114.00 | 27588 | 07-03 | 6,672.00 |
| 27419 * | 07-12 | 4,118.00 | 27590 * | 07-02 | 8,033.00 |
| 27425 * | 07-10 | 200.00 | 27593 * | 07-13 | 9,595.00 |
| 27445 * | 07-10 | 3,992.00 | 27594 | 07-18 | 7,284.00 |
| 27464 * | 07-02 | 1,000.00 | 27601 * | 07-17 | 12,908.00 |
| 27481 * | 07-02 | 6,874.00 | 27607 * | 07-16 | 7,551.00 |
| 27502 * | 07-20 | 4,979.00 | 27611 * | 07-02 | 7,733.00 |
| 27503 | 07-10 | 12,420.00 | 27613 * | 07-02 | 11,023.00 |
| 27504 | 07-03 | 9,516.00 | 27615 * | 07-05 | 4,025.00 |

Case: 27-08156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 33 of 104

TRUSTEE009565^BNG SAC OP 07_2007.pdf - 1



| Checks and Debits Outstanding | |
|---|---|
| Check No. | Amount |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| Total | |

**Follow these easy steps to reconcile your checkbook to the "Ending Balance" shown on the front of this statement:**

1) Make sure that all the transactions listed on this statement have also been entered in your checkbook register, including all deposits, credits, checks, check card transactions, ATM transactions and other debits. Make sure the amounts are the same in both places.

2) Mark the checks and other debits in your checkbook that have been paid by the bank; mark the credits in your checkbook that have cleared the bank.

3) Enter all the items that have not yet been paid by the bank and are still outstanding. These are items that are not shown on this statement and have not appeared on any previous statement.

4) Enter the "Ending Balance" shown on this statement. $ _____

5) **Add (+)**
Deposits not shown on this statement (if any) $ _____

6) **Subtract (-)**
Checks and/or other debits still outstanding $ _____
**Balance** $ _____
Should equal the balance in your checkbook.

**If your account does not balance, please check the following:**

- Have you added and subtracted correctly – both in your checkbook register and in steps 3-6 above?
- Have you correctly entered the amounts of each deposit, credit, check or other debit in your checkbook?
- Do all checks and other debits you have marked as paid appear on this statement? Are any still outstanding that you have marked as paid?
- Have all deposits been added to your checkbook record and do the amounts agree with the amounts on this statement?
- Have you carried the correct balance forward from one checkbook register page to the next?
- Are you sure that all items you show as outstanding are not on this statement or any previous statement?

**Electronic Fund Transfers Preauthorized Credits**

If you have arranged to have direct deposits made to your account, you can call us at the telephone number indicated on the reverse side of this statement to find out whether or not the deposits have been made.

**Electronic Fund Transfer Disclosure**
**In case of errors or questions about your electronic transfers:**

If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, please telephone us at the number or write us at the address indicated on the reverse side of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1) Tell us your name and account number.
(2) Describe the error or the transfer you are unsure about Explain as clearly as you can why you believe there is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly. For Consumer/Personal accounts if we take more than 10 business days to do this, we will recredit your account for the amount you think is in error so that you may have use of the money during the time it takes us to complete the investigation.

**Order of Payments**

Checks or other items and charges drawn on or made to your account may be paid in any order we determine. We may do so even if it results in an insufficient balance in your account or more service charges by paying a particular item before others that otherwise could have been paid. However, our customary practice is to pay transactions presented at the same time in descending order of amount.

**Billing Rights Summary**
**(Personal Reserve Account Only)**
**In case of errors or questions about your statement:**

If you think your statement is wrong or if you need more information about a transaction on the statement, write us (on a separate sheet) at the address indicated on the reverse side of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

(1) Your name and account number.
(2) Describe the error and explain as clearly as you can why you believe there is an error. If you need more information, describe the item you are unsure about.
(3) Tell us the dollar amount of the suspected error.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 34 of 104
TRUSTEE009565^BNG SAC OP 07_2007.pdf - 2



**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|---|---|---|
| 27618 | 07-19 | 1,000.00 |
| 27622 * | 07-12 | 75.00 |
| 27623 | 07-13 | 70.00 |
| 27626 * | 07-03 | 1,440.00 |
| 27628 * | 07-02 | 31,908.00 |
| 27631 * | 07-02 | 319.20 |
| 27632 | 07-23 | 762.00 |
| 27644 * | 07-23 | 7,477.00 |
| 27645 | 07-05 | 8,145.00 |
| 27646 | 07-03 | 7,363.00 |
| 27647 | 07-03 | 7,668.00 |
| 27648 | 07-02 | 8,090.00 |
| 27649 | 07-13 | 965.00 |
| 27651 * | 07-02 | 4,203.00 |
| 27653 * | 07-05 | 9,596.00 |
| 27654 | 07-03 | 12,871.00 |
| 27658 * | 07-10 | 8,438.00 |
| 27659 | 07-03 | 10,672.00 |
| 27660 | 07-09 | 8,764.00 |
| 27661 | 07-02 | 6,829.00 |
| 27662 | 07-02 | 7,867.00 |
| 27665 * | 07-02 | 6,426.00 |
| 27666 | 07-03 | 10,943.00 |
| 27669 * | 07-09 | 525.00 |
| 27671 * | 07-02 | 10,503.00 |
| 27674 * | 07-11 | 7,846.00 |
| 27677 * | 07-02 | 17,244.00 |
| 27678 | 07-05 | 18,647.00 |
| 27679 | 07-03 | 1,562.49 |
| 27680 | 07-06 | 250.52 |
| 27681 | 07-05 | 750.00 |
| 27682 | 07-05 | 330.92 |
| 27683 | 07-09 | 765.00 |
| 27684 | 07-06 | 416.67 |
| 27685 | 07-16 | 750.00 |
| 27686 | 07-05 | 455.21 |
| 27687 | 07-06 | 395.83 |
| 27688 | 07-02 | 562.50 |
| 27689 | 07-06 | 1,200.00 |
| 27690 | 07-02 | 208.33 |
| 27691 | 07-03 | 250.00 |
| 27692 | 07-06 | 166.67 |
| 27693 | 07-03 | 1,102.29 |
| 27694 | 07-06 | 1,677.09 |
| 27695 | 07-05 | 360.00 |
| 27696 | 07-03 | 641.67 |
| 27697 | 07-03 | 208.33 |
| 27698 | 07-05 | 427.08 |
| 27699 | 07-06 | 112.50 |
| 27700 | 07-05 | 375.00 |
| 27701 | 07-05 | 982.50 |
| 27702 | 07-03 | 208.80 |

| Number | Date | Amount |
|---|---|---|
| 27703 | 07-05 | 375.00 |
| 27704 | 07-03 | 725.00 |
| 27705 | 07-05 | 187.50 |
| 27706 | 07-10 | 1,250.00 |
| 27707 | 07-03 | 761.58 |
| 27708 | 07-05 | 1,256.25 |
| 27709 | 07-05 | 395.83 |
| 27710 | 07-05 | 75.00 |
| 27711 | 07-05 | 205.83 |
| 27712 | 07-06 | 1,500.00 |
| 27713 | 07-09 | 262.50 |
| 27714 | 07-03 | 130.00 |
| 27715 | 07-02 | 3,623.00 |
| 27716 | 07-02 | 5,372.00 |
| 27717 | 07-09 | 50.00 |
| 27718 | 07-11 | 18,000.00 |
| 27719 | 07-03 | 59.54 |
| 27720 | 07-06 | 15,625.13 |
| 27721 | 07-02 | 1,383.00 |
| 27722 | 07-06 | 65.00 |
| 27723 | 07-11 | 600.00 |
| 27724 | 07-06 | 203.18 |
| 27725 | 07-02 | 1,635.97 |
| 27726 | 07-10 | 838.52 |
| 27727 | 07-05 | 820.00 |
| 27729 * | 07-05 | 156.00 |
| 27730 | 07-02 | 63.63 |
| 27731 | 07-13 | 30.00 |
| 27732 | 07-03 | 615.00 |
| 27733 | 07-02 | 4,312.59 |
| 27734 | 07-06 | 235.74 |
| 27735 | 07-05 | 557.97 |
| 27736 | 07-05 | 180.50 |
| 27737 | 07-03 | 60.00 |
| 27738 | 07-05 | 2,966.36 |
| 27739 | 07-03 | 5,264.64 |
| 27740 | 07-03 | 839.14 |
| 27741 | 07-06 | 88.18 |
| 27743 * | 07-02 | 225.00 |
| 27746 * | 07-10 | 4,306.00 |
| 27747 | 07-16 | 8,167.00 |
| 27749 * | 07-13 | 874.00 |
| 27750 | 07-03 | 6,461.00 |
| 27751 | 07-05 | 10,000.00 |
| 27753 * | 07-02 | 13,028.00 |
| 27753 * | 07-03 | 13,028.00 |
| 27754 | 07-16 | 14,937.00 |
| 27755 | 07-02 | 19,347.00 |
| 27756 | 07-02 | 869.95 |
| 27756 * | 07-03 | 869.95 |
| 27757 | 07-05 | 8,669.00 |
| 27758 | 07-02 | 9,388.00 |

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount | | Number | Date | Amount |
|--------|------|--------|---|--------|------|--------|
| 27759 | 07-12 | 10,974.00 | | 27802 * | 07-09 | 9,658.00 |
| 27760 | 07-26 | 12,259.00 | | 27803 | 07-13 | 6,654.00 |
| 27761 | 07-03 | 6,374.00 | | 27804 | 07-26 | 5,698.00 |
| 27762 | 07-02 | 13,012.00 | | 27805 | 07-13 | 8,343.00 |
| 27762 * | 07-03 | 13,012.00 | | 27806 | 07-11 | 4,931.00 |
| 27763 | 07-02 | 10,092.00 | | 27807 | 07-13 | 11,456.00 |
| 27764 | 07-02 | 6,404.00 | | 27808 | 07-13 | 9,244.00 |
| 27765 | 07-02 | 7,650.00 | | 27810 * | 07-11 | 11,103.00 |
| 27765 * | 07-03 | 7,650.00 | | 27811 | 07-10 | 7,953.00 |
| 27766 | 07-05 | 6,101.00 | | 27812 | 07-13 | 6,077.00 |
| 27767 | 07-03 | 8,993.00 | | 27813 | 07-10 | 10,323.00 |
| 27769 * | 07-02 | 9,750.00 | | 27814 | 07-12 | 9,509.00 |
| 27769 * | 07-03 | 9,750.00 | | 27815 | 07-12 | 9,874.00 |
| 27770 | 07-02 | 12,958.00 | | 27816 | 07-27 | 7,413.00 |
| 27770 * | 07-03 | 12,958.00 | | 27817 | 07-12 | 895.00 |
| 27771 | 07-13 | 4,523.00 | | 27818 | 07-24 | 8,165.00 |
| 27772 | 07-13 | 9,406.00 | | 27819 | 07-12 | 11,076.00 |
| 27773 | 07-03 | 5,381.00 | | 27820 | 07-17 | 736.52 |
| 27774 | 07-02 | 9,098.00 | | 27821 | 07-02 | 11,524.00 |
| 27775 | 07-17 | 7,874.00 | | 27821 * | 07-03 | 11,524.00 |
| 27776 | 07-03 | 6,845.00 | | 27822 | 07-27 | 10,642.00 |
| 27777 | 07-03 | 10,000.00 | | 27823 | 07-12 | 9,875.00 |
| 27778 | 07-03 | 7,023.00 | | 27824 | 07-09 | 7,986.00 |
| 27779 | 07-03 | 6,633.00 | | 27825 | 07-11 | 11,694.00 |
| 27780 | 07-18 | 7,575.00 | | 27826 | 07-11 | 12,755.00 |
| 27781 | 07-25 | 5,294.00 | | 27827 | 07-09 | 19,155.00 |
| 27782 | 07-02 | 5,821.00 | | 27829 * | 07-09 | 11,565.00 |
| 27782 * | 07-03 | 5,821.00 | | 27830 | 07-13 | 11,215.00 |
| 27783 | 07-02 | 1,888.51 | | 27831 | 07-12 | 11,210.00 |
| 27783 * | 07-03 | 1,888.51 | | 27836 * | 07-09 | 130.00 |
| 27784 | 07-13 | 6,799.00 | | 27837 | 07-09 | 477.13 |
| 27785 | 07-02 | 7,375.00 | | 27838 | 07-06 | 142.73 |
| 27785 * | 07-03 | 7,375.00 | | 27839 | 07-06 | 92.31 |
| 27787 * | 07-03 | 11,394.00 | | 27840 | 07-06 | 351.50 |
| 27788 | 07-26 | 11,370.00 | | 27841 | 07-03 | 7,564.00 |
| 27789 | 07-03 | 6,623.00 | | 27842 | 07-09 | 400.00 |
| 27791 * | 07-02 | 168.71 | | 27843 | 07-13 | 100.00 |
| 27792 | 07-06 | 398.75 | | 27845 * | 07-11 | 1,000.00 |
| 27793 | 07-02 | 150.00 | | 27846 | 07-23 | 300.00 |
| 27794 | 07-02 | 12,763.00 | | 27847 | 07-16 | 300.00 |
| 27794 * | 07-03 | 12,763.00 | | 27848 | 07-19 | 1,000.00 |
| 27795 | 07-02 | 11,162.00 | | 27850 * | 07-03 | 7,023.00 |
| 27795 * | 07-03 | 11,162.00 | | 27851 | 07-03 | 16,995.00 |
| 27796 | 07-02 | 2,270.92 | | 27852 | 07-03 | 7,152.00 |
| 27796 * | 07-03 | 2,270.92 | | 27853 | 07-03 | 7,437.00 |
| 27797 | 07-02 | 6,695.00 | | 27854 | 07-03 | 6,832.00 |
| 27797 * | 07-03 | 6,695.00 | | 27855 | 07-03 | 23,596.00 |
| 27798 | 07-02 | 2,211.58 | | 27856 | 07-03 | 2,164.61 |
| 27798 * | 07-03 | 2,211.58 | | 27857 | 07-03 | 2,088.51 |
| 27799 | 07-02 | 2,288.51 | | 27858 | 07-03 | 1,931.58 |
| 27799 * | 07-03 | 2,288.51 | | 27859 | 07-18 | 7,058.00 |
| 27800 | 07-02 | 2,241.58 | | 27860 | 07-13 | 11,128.00 |

TRUSTEE009565^BNG SAC OP 07_2007.pdf - 4



**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|---|---|---|
| 27862 | 07-12 | 5,702.00 |
| 27864 * | 07-11 | 9,723.00 |
| 27865 | 07-23 | 4,646.00 |
| 27866 | 07-10 | 6,728.00 |
| 27867 | 07-26 | 6,975.00 |
| 27868 | 07-17 | 685.00 |
| 27869 | 07-18 | 8,419.00 |
| 27870 | 07-23 | 7,563.00 |
| 27871 | 07-11 | 6,515.00 |
| 27872 | 07-10 | 2,847.60 |
| 27873 | 07-10 | 780.00 |
| 27875 * | 07-10 | 1,421.09 |
| 27876 | 07-11 | 3,539.49 |
| 27877 | 07-11 | 510.84 |
| 27878 | 07-03 | 1,294.00 |
| 27879 | 07-11 | 897,92 |
| 27880 | 07-09 | 1,127.64 |
| 27881 | 07-11 | 69.00 |
| 27882 | 07-11 | 125.00 |
| 27883 | 07-10 | 846.95 |
| 27884 | 07-09 | 702.68 |
| 27885 | 07-17 | 12,692.00 |
| 27886 | 07-17 | 1,943.00 |
| 27887 | 07-11 | 130.00 |
| 27888 | 07-10 | 2,601.88 |
| 27889 | 07-11 | 378.49 |
| 27890 | 07-17 | 262.16 |
| 27891 | 07-12 | 11,610.00 |
| 27892 | 07-09 | 500.00 |
| 27893 | 07-18 | 3,443.00 |
| 27894 | 07-12 | 10,982.00 |
| 27895 | 07-13 | 9,244.00 |
| 27896 | 07-17 | 6,017.00 |
| 27897 | 07-30 | 8,941.00 |
| 27898 | 07-16 | 8,208.00 |
| 27899 | 07-16 | 10,101.00 |
| 27900 | 07-13 | 6,745.00 |
| 27901 | 07-12 | 7,230.00 |
| 27903 * | 07-23 | 6,081.00 |
| 27904 | 07-17 | 6,916.00 |
| 27905 | 07-18 | 10,009.00 |
| 27906 | 07-18 | 6,597.00 |
| 27907 | 07-13 | 851.25 |
| 27908 | 07-23 | 8,726.00 |
| 27909 | 07-13 | 9,272.00 |
| 27910 | 07-17 | 11,260.00 |
| 27911 | 07-17 | 7,702.00 |
| 27912 | 07-16 | 16,190.00 |
| 27914 * | 07-11 | 7,841.00 |
| 27916 * | 07-17 | 10,504.00 |
| 27917 | 07-16 | 7,973.00 |

| Number | Date | Amount |
|---|---|---|
| 27919 | 07-09 | 24,219.00 |
| 27921 * | 07-09 | 7,122.00 |
| 27922 | 07-09 | 9,218.00 |
| 27923 | 07-09 | 1,869.95 |
| 27924 | 07-09 | 4,899.00 |
| 27925 | 07-09 | 15,093.00 |
| 27926 | 07-09 | 2,127.82 |
| 27927 | 07-09 | 1,853.88 |
| 27928 | 07-09 | 7,958.00 |
| 27929 | 07-09 | 4,028.00 |
| 27930 | 07-09 | 6,610.00 |
| 27931 | 07-09 | 1,871.80 |
| 27932 | 07-09 | 2,013.51 |
| 27933 | 07-09 | 16,007.00 |
| 27934 | 07-18 | 11,708.00 |
| 27935 | 07-12 | 12,196.00 |
| 27936 | 07-12 | 7,448.00 |
| 27937 | 07-13 | 6,179.00 |
| 27939 * | 07-16 | 9,619.00 |
| 27940 | 07-13 | 9,296.00 |
| 27942 * | 07-20 | 8,708.00 |
| 27943 | 07-11 | 7,827.00 |
| 27944 | 07-16 | 6,969.00 |
| 27945 | 07-16 | 6,929.00 |
| 27946 | 07-20 | 6,527.00 |
| 27947 | 07-12 | 7,232.00 |
| 27948 | 07-12 | 9,234.00 |
| 27949 | 07-16 | 5,664.00 |
| 27950 | 07-13 | 8,399.00 |
| 27951 | 07-13 | 8,383.00 |
| 27952 | 07-13 | 8,555.00 |
| 27953 | 07-16 | 10,801.00 |
| 27954 | 07-13 | 9,803.00 |
| 27955 | 07-16 | 11,340.00 |
| 27956 | 07-12 | 7,645.00 |
| 27957 | 07-30 | 12,633.00 |
| 27958 | 07-12 | 7,190.00 |
| 27959 | 07-24 | 5,076.00 |
| 27962 * | 07-11 | 470.00 |
| 27963 | 07-17 | 71.00 |
| 27964 | 07-16 | 63,178.71 |
| 27965 | 07-18 | 25,000.00 |
| 27966 | 07-16 | 32,525.00 |
| 27967 | 07-11 | 1,725.00 |
| 27968 | 07-12 | 10,056.00 |
| 27969 | 07-12 | 1,669.95 |
| 27970 | 07-12 | 40,308.00 |
| 27971 | 07-12 | 7,190.00 |
| 27972 | 07-12 | 16,526.00 |
| 27973 | 07-12 | 11,240.00 |
| 27974 | 07-12 | 2,218.51 |
| 27975 | 07-11 | 2,927.00 |

Case 2:12-bk-03156  Doc# 227  Filed 04/24/14  Entered 04/24/14 16:46:00  Page 37 of 104
TRUSTEE009565^BNG SAC OP 07_2007.pdf - 5

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|--------|------|--------|
| 27976 | 07-12 | 7,162.00 |
| 27977 | 07-12 | 10,329.00 |
| 27978 | 07-12 | 7,588.00 |
| 27979 | 07-12 | 2,250.36 |
| 27980 | 07-20 | 8,924.00 |
| 27981 | 07-13 | 13,938.00 |
| 27982 | 07-13 | 8,152.00 |
| 27983 | 07-13 | 6,833.00 |
| 27984 | 07-18 | 7,290.00 |
| 27985 | 07-13 | 6,863.00 |
| 27987 * | 07-17 | 9,549.00 |
| 27988 | 07-23 | 5,414.00 |
| 27989 | 07-16 | 7,623.00 |
| 27990 | 07-19 | 8,682.00 |
| 27991 | 07-20 | 1,122.50 |
| 27992 | 07-23 | 10,419.00 |
| 27993 | 07-18 | 10,077.00 |
| 27994 | 07-18 | 4,269.00 |
| 27995 | 07-18 | 12,687.00 |
| 27996 | 07-17 | 7,733.00 |
| 27998 * | 07-18 | 11,183.00 |
| 27999 | 07-18 | 7,022.00 |
| 28000 | 07-24 | 8,120.00 |
| 28001 | 07-17 | 6,212.00 |
| 28002 | 07-16 | 7,055.00 |
| 28003 | 07-16 | 7,664.00 |
| 28004 | 07-24 | 5,779.00 |
| 28005 | 07-19 | 8,052.00 |
| 28006 | 07-23 | 923.00 |
| 28007 | 07-13 | 12,580.00 |
| 28008 | 07-20 | 6,436.00 |
| 28009 | 07-23 | 10,763.00 |
| 28010 | 07-16 | 9,479.00 |
| 28011 | 07-18 | 4,123.00 |
| 28012 | 07-17 | 6,981.00 |
| 28013 | 07-13 | 8,952.00 |
| 28014 | 07-16 | 15,250.00 |
| 28015 | 07-12 | 1,301.60 |
| 28016 | 07-17 | 130.00 |
| 28017 | 07-17 | 355.23 |
| 28018 | 07-18 | 29.17 |
| 28019 | 07-19 | 5,630.00 |
| 28020 | 07-19 | 166.89 |
| 28021 | 07-20 | 84.96 |
| 28023 * | 07-19 | 100.00 |
| 28024 | 07-18 | 412.34 |
| 28025 | 07-24 | 40.00 |
| 28026 | 07-18 | 1,061.46 |
| 28028 * | 07-16 | 4,165.00 |
| 28029 | 07-17 | 1,939.00 |
| 28030 | 07-17 | 12,231.00 |
| 28031 | 07-23 | 5,544.74 |
| 28032 | 07-26 | 5,906.00 |

| Number | Date | Amount |
|--------|------|--------|
| 28033 | 07-20 | 185.00 |
| 28034 | 07-20 | 346.53 |
| 28035 | 07-19 | 130.89 |
| 28036 | 07-13 | 7,297.00 |
| 28037 | 07-13 | 11,163.00 |
| 28038 | 07-13 | 1,888.51 |
| 28039 | 07-13 | 6,916.00 |
| 28040 | 07-13 | 9,839.00 |
| 28041 | 07-13 | 2,088.51 |
| 28042 | 07-13 | 2,307.58 |
| 28043 | 07-13 | 15,279.00 |
| 28044 | 07-13 | 7,122.00 |
| 28045 | 07-13 | 6,748.00 |
| 28046 | 07-18 | 11,602.00 |
| 28047 | 07-17 | 11,945.00 |
| 28048 | 07-17 | 11,541.00 |
| 28049 | 07-19 | 5,595.00 |
| 28050 | 07-24 | 9,993.00 |
| 28051 | 07-18 | 6,752.00 |
| 28052 | 07-17 | 8,957.00 |
| 28053 | 07-19 | 4,355.00 |
| 28054 | 07-17 | 5,273.00 |
| 28055 | 07-26 | 4,589.00 |
| 28056 | 07-20 | 8,497.00 |
| 28057 | 07-19 | 8,717.00 |
| 28058 | 07-17 | 6,374.00 |
| 28060 * | 07-18 | 4,611.00 |
| 28061 | 07-26 | 5,182.00 |
| 28062 | 07-24 | 8,352.00 |
| 28063 | 07-17 | 12,747.00 |
| 28064 | 07-20 | 9,232.00 |
| 28065 | 07-18 | 979.00 |
| 28066 | 07-24 | 5,556.00 |
| 28067 | 07-20 | 6,844.00 |
| 28068 | 07-19 | 12,144.00 |
| 28069 | 07-23 | 4,783.00 |
| 28070 | 07-17 | 944.00 |
| 28071 | 07-26 | 3,071.00 |
| 28073 * | 07-16 | 6,006.00 |
| 28075 * | 07-24 | 5,345.00 |
| 28076 | 07-18 | 9,750.00 |
| 28077 | 07-18 | 8,758.00 |
| 28078 | 07-17 | 5,952.00 |
| 28079 | 07-23 | 7,226.00 |
| 28080 | 07-16 | 5,731.00 |
| 28081 | 07-17 | 15,406.00 |
| 28082 | 07-26 | 6,321.00 |
| 28083 | 07-19 | 10,344.00 |
| 28084 | 07-23 | 5,780.00 |
| 28085 | 07-16 | 8,490.00 |
| 28086 | 07-20 | 9,041.00 |
| 28087 | 07-24 | 6,616.00 |
| 28088 | 07-24 | 12,440.00 |

Case: 13-03156    Doc# 227    Filed: 04/14    Entered: 04/24/14 16:46:00    Page 38 of
104

TRUSTEE009565^BNG SAC OP 07_2007.pdf - 6



**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|---|---|---|
| 28089 | 07-19 | 600.00 |
| 28090 | 07-13 | 3,135.27 |
| 28091 | 07-20 | 3,154.64 |
| 28092 | 07-30 | 1,177.23 |
| 28093 | 07-19 | 1,705.97 |
| 28094 | 07-19 | 5,038.52 |
| 28095 | 07-24 | 284.52 |
| 28096 | 07-16 | 1,903.58 |
| 28097 | 07-16 | 6,856.00 |
| 28098 | 07-16 | 5,528.00 |
| 28099 | 07-16 | 7,613.00 |
| 28100 | 07-16 | 8,367.00 |
| 28101 | 07-16 | 6,919.00 |
| 28102 | 07-16 | 2,069.95 |
| 28103 | 07-16 | 7,505.00 |
| 28104 | 07-19 | 9,946.00 |
| 28105 | 07-25 | 7,590.00 |
| 28106 | 07-20 | 5,594.00 |
| 28107 | 07-18 | 8,335.00 |
| 28108 | 07-20 | 12,525.00 |
| 28109 | 07-20 | 7,793.00 |
| 28111 * | 07-27 | 8,309.00 |
| 28112 | 07-19 | 8,804.00 |
| 28113 | 07-23 | 931.88 |
| 28115 * | 07-23 | 13,723.00 |
| 28116 | 07-19 | 5,566.00 |
| 28117 | 07-20 | 13,609.00 |
| 28118 | 07-25 | 835.00 |
| 28119 | 07-17 | 2,304.00 |
| 28120 | 07-16 | 10,745.00 |
| 28121 | 07-16 | 14,223.00 |
| 28122 | 07-16 | 2,088.51 |
| 28123 | 07-16 | 18,446.00 |
| 28124 | 07-23 | 11,938.00 |
| 28125 | 07-20 | 5,766.00 |
| 28126 | 07-18 | 9,926.00 |
| 28127 | 07-19 | 5,430.00 |
| 28129 * | 07-24 | 10,494.00 |
| 28130 | 07-19 | 6,262.00 |
| 28131 | 07-19 | 14,301.00 |
| 28133 * | 07-25 | 986.00 |
| 28135 * | 07-27 | 10,552.00 |
| 28136 | 07-20 | 9,268.00 |
| 28137 | 07-20 | 6,735.00 |
| 28138 | 07-23 | 8,792.00 |
| 28139 | 07-20 | 8,233.00 |
| 28141 * | 07-19 | 250.00 |
| 28142 | 07-19 | 335.00 |
| 28143 | 07-19 | 350.00 |
| 28144 | 07-23 | 399.43 |
| 28145 | 07-19 | 500.00 |

| Number | Date | Amount |
|---|---|---|
| 28147 | 07-19 | 170.00 |
| 28148 | 07-16 | 10,287.79 |
| 28149 | 07-23 | 195.29 |
| 28150 | 07-27 | 102,765.00 |
| 28151 | 07-18 | 11,834.96 |
| 28152 | 07-17 | 2,271.58 |
| 28153 | 07-17 | 5,904.00 |
| 28154 | 07-17 | 8,299.00 |
| 28155 | 07-17 | 2,016.95 |
| 28156 | 07-17 | 12,313.00 |
| 28157 | 07-17 | 1,871.58 |
| 28158 | 07-17 | 5,939.00 |
| 28159 | 07-17 | 1,797.86 |
| 28160 | 07-17 | 7,663.00 |
| 28161 | 07-17 | 7,615.00 |
| 28162 | 07-17 | 2,069.95 |
| 28163 | 07-17 | 7,869.00 |
| 28164 | 07-17 | 1,869.95 |
| 28165 | 07-19 | 6,322.00 |
| 28166 | 07-30 | 536.21 |
| 28167 | 07-31 | 435.40 |
| 28168 | 07-23 | 8,728.00 |
| 28169 | 07-18 | 325.00 |
| 28171 * | 07-25 | 480.00 |
| 28174 * | 07-27 | 400.00 |
| 28175 | 07-24 | 1,000.00 |
| 28177 * | 07-26 | 500.00 |
| 28178 | 07-25 | 800.00 |
| 28179 | 07-23 | 300.00 |
| 28180 | 07-25 | 200.00 |
| 28181 | 07-23 | 500.00 |
| 28182 | 07-20 | 1,022.00 |
| 28183 | 07-31 | 6,504.00 |
| 28184 | 07-30 | 5,068.00 |
| 28185 | 07-20 | 7,725.00 |
| 28186 | 07-19 | 8,758.00 |
| 28187 | 07-30 | 6,849.00 |
| 28188 | 07-25 | 6,368.00 |
| 28189 | 07-23 | 5,859.00 |
| 28190 | 07-23 | 6,005.00 |
| 28191 | 07-23 | 6,128.00 |
| 28192 | 07-24 | 7,566.00 |
| 28193 | 07-24 | 8,733.00 |
| 28194 | 07-19 | 4,980.00 |
| 28195 | 07-20 | 4,550.00 |
| 28197 * | 07-26 | 8,002.00 |
| 28199 * | 07-23 | 6,611.00 |
| 28200 | 07-25 | 8,714.00 |
| 28201 | 07-25 | 3,490.00 |
| 28202 | 07-23 | 6,268.00 |
| 28203 | 07-24 | 9,857.00 |

Case 2:12-cv-63156 07-25 Doc# 227 Filed 04/24/14 Entered 04/24/14 16:46:00 Page 39 of 104
TRUSTEE009565^BNG SAC OP 07_2007.pdf - 7

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|--------|------|--------|
| 28206 | 07-25 | 7,114.00 |
| 28207 | 07-25 | 7,013.00 |
| 28209 * | 07-23 | 8,057.00 |
| 28210 | 07-20 | 5,539.00 |
| 28211 | 07-30 | 6,683.00 |
| 28212 | 07-23 | 7,708.00 |
| 28214 * | 07-26 | 12,732.00 |
| 28215 | 07-19 | 10,686.00 |
| 28216 | 07-23 | 1,028.00 |
| 28217 | 07-26 | 923.00 |
| 28218 | 07-25 | 12,930.00 |
| 28219 | 07-31 | 7,610.00 |
| 28220 | 07-20 | 6,792.00 |
| 28221 | 07-20 | 8,520.00 |
| 28222 | 07-24 | 6,561.00 |
| 28223 | 07-24 | 5,675.00 |
| 28224 | 07-25 | 8,497.00 |
| 28225 | 07-20 | 7,441.00 |
| 28226 | 07-27 | 5,197.00 |
| 28227 | 07-26 | 9,392.00 |
| 28228 | 07-20 | 4,708.00 |
| 28229 | 07-26 | 6,864.00 |
| 28230 | 07-20 | 8,007.00 |
| 28231 | 07-20 | 9,201.00 |
| 28232 | 07-20 | 11,552.00 |
| 28233 | 07-24 | 3,006.00 |
| 28234 | 07-20 | 273.90 |
| 28235 | 07-23 | 500.00 |
| 28236 | 07-23 | 2,862.00 |
| 28237 | 07-23 | 250.00 |
| 28238 | 07-25 | 1,122.49 |
| 28239 | 07-24 | 130.00 |
| 28240 | 07-23 | 2,739.00 |
| 28241 | 07-23 | 15,536.00 |
| 28242 | 07-27 | 50,692.00 |
| 28243 | 07-24 | 599.00 |
| 28244 | 07-25 | 600.00 |
| 28245 | 07-24 | 21.00 |
| 28246 | 07-26 | 26.10 |
| 28247 | 07-23 | 2,681.83 |
| 28248 | 07-24 | 84.80 |
| 28249 | 07-24 | 1,242.38 |
| 28250 | 07-27 | 439.44 |
| 28251 | 07-25 | 500.58 |
| 28253 * | 07-31 | 17,999.02 |
| 28254 | 07-31 | 43,834.69 |
| 28255 | 07-25 | 17.47 |
| 28256 | 07-30 | 155.00 |
| 28257 | 07-30 | 130.00 |
| 28258 | 07-26 | 442.58 |
| 28259 | 07-31 | 4,189.66 |
| 28260 | 07-27 | 286.20 |
| 28261 | 07-24 | 54.00 |

| Number | Date | Amount |
|--------|------|--------|
| 28262 | 07-25 | 26.49 |
| 28263 | 07-24 | 3,154.25 |
| 28264 | 07-30 | 592.00 |
| 28265 | 07-24 | 169.23 |
| 28266 | 07-26 | 88.18 |
| 28267 | 07-26 | 25.00 |
| 28269 * | 07-26 | 100.75 |
| 28270 | 07-24 | 100.00 |
| 28271 | 07-26 | 141.45 |
| 28272 | 07-26 | 700.00 |
| 28273 | 07-25 | 242.00 |
| 28274 | 07-24 | 227.81 |
| 28275 | 07-23 | 5,424.00 |
| 28276 | 07-27 | 200.00 |
| 28277 | 07-24 | 358.14 |
| 28278 | 07-25 | 173.45 |
| 28279 | 07-25 | 11,674.65 |
| 28280 | 07-25 | 825.00 |
| 28281 | 07-25 | 930.00 |
| 28283 * | 07-30 | 3,899.00 |
| 28284 | 07-24 | 8,658.00 |
| 28285 | 07-25 | 1,007.00 |
| 28286 | 07-24 | 7,664.00 |
| 28288 * | 07-20 | 8,037.00 |
| 28289 | 07-20 | 6,850.00 |
| 28290 | 07-20 | 7,356.00 |
| 28291 | 07-20 | 7,187.00 |
| 28292 | 07-20 | 1,809.95 |
| 28293 | 07-20 | 1,669.95 |
| 28294 | 07-20 | 1,669.95 |
| 28295 | 07-20 | 3,459.88 |
| 28296 | 07-20 | 2,348.51 |
| 28297 | 07-20 | 1,669.95 |
| 28298 | 07-20 | 6,819.00 |
| 28299 | 07-20 | 7,909.00 |
| 28300 | 07-20 | 10,510.00 |
| 28301 | 07-20 | 13,116.00 |
| 28302 | 07-24 | 6,959.00 |
| 28303 | 07-25 | 5,426.00 |
| 28304 | 07-25 | 6,508.00 |
| 28305 | 07-27 | 8,005.00 |
| 28306 | 07-25 | 6,638.00 |
| 28307 | 07-24 | 7,202.00 |
| 28308 | 07-26 | 3,831.00 |
| 28310 * | 07-25 | 100.00 |
| 28311 | 07-31 | 853.60 |
| 28312 | 07-30 | 3,257.35 |
| 28313 | 07-25 | 3,306.00 |
| 28314 | 07-24 | 500.00 |
| 28315 | 07-24 | 11,065.00 |
| 28316 | 07-26 | 3,991.00 |
| 28317 | 07-30 | 6,696.00 |
| 28318 | 07-31 | 7,204.00 |

TRUSTEE009565^BNG SAC OP 07_2007.pdf - 8


**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|---|---|---|
| 28319 | 07-24 | 5,433.00 |
| 28320 | 07-25 | 12,030.00 |
| 28321 | 07-30 | 10,516.00 |
| 28322 | 07-27 | 4,631.00 |
| 28323 | 07-27 | 5,301.00 |
| 28324 | 07-31 | 6,892.00 |
| 28325 | 07-27 | 4,075.00 |
| 28327 * | 07-26 | 7,380.00 |
| 28329 * | 07-30 | 8,486.00 |
| 28330 | 07-26 | 660.00 |
| 28332 * | 07-26 | 7,361.00 |
| 28333 | 07-31 | 10,550.00 |
| 28334 | 07-26 | 7,055.00 |
| 28336 * | 07-30 | 7,878.00 |
| 28337 | 07-26 | 8,861.00 |
| 28339 * | 07-27 | 7,186.00 |
| 28341 * | 07-30 | 7,438.00 |
| 28342 | 07-27 | 7,839.00 |
| 28343 | 07-26 | 7,508.00 |
| 28344 | 07-25 | 11,431.00 |
| 28347 * | 07-26 | 7,944.00 |
| 28348 | 07-25 | 9,104.00 |
| 28349 | 07-25 | 9,859.00 |
| 28350 | 07-25 | 8,402.00 |
| 28351 | 07-24 | 2,260.79 |
| 28352 | 07-24 | 1,861.36 |
| 28353 | 07-24 | 5,468.00 |
| 28354 | 07-24 | 10,061.00 |
| 28355 | 07-24 | 4,940.00 |
| 28356 | 07-24 | 2,358.51 |
| 28357 | 07-24 | 2,121.58 |
| 28358 | 07-24 | 11,494.00 |
| 28359 | 07-24 | 11,377.00 |
| 28360 | 07-24 | 12,924.00 |
| 28361 | 07-24 | 12,944.00 |
| 28362 | 07-24 | 5,518.00 |
| 28363 | 07-26 | 1,566.00 |
| 28364 | 07-26 | 6,103.00 |
| 28366 * | 07-30 | 104.37 |
| 28367 | 07-30 | 289.20 |
| 28368 | 07-27 | 800.00 |
| 28369 | 07-31 | 800.00 |
| 28370 | 07-30 | 300.00 |
| 28371 | 07-31 | 600.00 |
| 28372 | 07-30 | 100.00 |
| 28373 | 07-30 | 200.00 |
| 28374 | 07-31 | 200.00 |
| 28376 * | 07-30 | 200.00 |
| 28377 | 07-30 | 100.00 |
| 28379 * | 07-30 | 500.00 |
| 28380 | 07-27 | 900.00 |

| Number | Date | Amount |
|---|---|---|
| 28382 | 07-31 | 3,319.00 |
| 28386 * | 07-31 | 7,298.00 |
| 28387 | 07-30 | 12,172.00 |
| 28389 * | 07-27 | 7,929.00 |
| 28390 | 07-26 | 5,784.00 |
| 28391 | 07-31 | 6,338.00 |
| 28392 | 07-30 | 7,465.00 |
| 28393 | 07-26 | 7,577.00 |
| 28394 | 07-30 | 9,680.00 |
| 28396 * | 07-30 | 5,530.00 |
| 28397 | 07-27 | 9,479.00 |
| 28398 | 07-26 | 18,000.00 |
| 28400 * | 07-30 | 13,904.00 |
| 28401 | 07-26 | 4,701.00 |
| 28402 | 07-27 | 733.93 |
| 28407 * | 07-27 | 8,501.00 |
| 28408 | 07-31 | 7,783.00 |
| 28409 | 07-26 | 6,513.00 |
| 28410 | 07-30 | 5,609.00 |
| 28411 | 07-30 | 4,438.00 |
| 28412 | 07-24 | 2,448.51 |
| 28413 | 07-24 | 13,666.00 |
| 28414 | 07-24 | 1,868.52 |
| 28415 | 07-24 | 2,164.61 |
| 28416 | 07-24 | 7,908.00 |
| 28417 | 07-31 | 152.00 |
| 28419 * | 07-25 | 2,000.00 |
| 28421 * | 07-31 | 2,230.82 |
| 28429 * | 07-30 | 455.21 |
| 28432 * | 07-31 | 1,200.00 |
| 28433 | 07-31 | 208.33 |
| 28436 * | 07-31 | 1,102.29 |
| 28439 * | 07-31 | 641.67 |
| 28445 * | 07-31 | 208.33 |
| 28457 * | 07-31 | 1,197.92 |
| 28460 * | 07-30 | 7,733.00 |
| 28463 * | 07-27 | 7,584.00 |
| 28467 * | 07-27 | 8,107.00 |
| 28469 * | 07-30 | 507.50 |
| 28470 | 07-31 | 5,272.00 |
| 28471 | 07-30 | 8,246.00 |
| 28472 | 07-30 | 7,922.00 |
| 28473 | 07-30 | 4,633.00 |
| 28474 | 07-30 | 3,502.00 |
| 28480 * | 07-30 | 5,712.00 |
| 28482 * | 07-30 | 7,785.00 |
| 28483 | 07-30 | 8,180.00 |
| 28484 | 07-27 | 7,755.00 |
| 28485 | 07-30 | 6,579.00 |
| 28486 | 07-30 | 9,843.00 |
| 28487 | 07-30 | 5,936.00 |

Case 2:13-cv-03156   Doc# 227   Filed 04/24/14   Entered 04/24/13 16:46:00, Page 41 of 104
TRUSTEE009565^BNG SAC OP 07_2007.pdf - 9

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount | | Number | Date | Amount |
|--------|------|--------|---|--------|------|--------|
| 28489 | 07-30 | 3,687.00 | | 28556 * | 07-27 | 9,295.00 |
| 28490 | 07-30 | 13,985.00 | | 28557 | 07-27 | 12,149.00 |
| 28492 * | 07-30 | 3,735.00 | | 28558 | 07-27 | 2,740.36 |
| 28493 | 07-27 | 6,941.00 | | 28559 | 07-27 | 6,222.00 |
| 28494 | 07-30 | 8,251.00 | | 28560 | 07-27 | 2,211.58 |
| 28496 * | 07-26 | 5,629.00 | | 28561 | 07-27 | 7,767.00 |
| 28497 | 07-26 | 1,859.95 | | 28562 | 07-27 | 2,372.58 |
| 28498 | 07-26 | 4,723.00 | | 28582 * | 07-31 | 4,882.00 |
| 28499 | 07-26 | 7,395.00 | | 28619 * | 07-31 | 9,301.00 |
| 28500 | 07-26 | 11,129.00 | | 28620 | 07-31 | 2,288.51 |
| 28501 | 07-26 | 14,163.00 | | 28621 | 07-31 | 10,255.00 |
| 28502 | 07-31 | 1,008.74 | | 28622 | 07-31 | 4,870.00 |
| 28503 | 07-27 | 855.00 | | 28623 | 07-31 | 13,490.00 |
| 28504 | 07-30 | 84.00 | | 28624 | 07-31 | 2,218.51 |
| 28505 | 07-30 | 275.00 | | 28625 | 07-31 | 2,288.51 |
| 28506 | 07-26 | 894.88 | | 28631 * | 07-31 | 11,059.00 |
| 28513 * | 07-30 | 27.65 | | 28632 | 07-31 | 9,495.00 |
| 28533 * | 07-31 | 56.65 | | 28635 * | 07-31 | 13,708.00 |
| 28536 * | 07-30 | 753.00 | | 28636 | 07-31 | 4,636.00 |
| 28539 * | 07-27 | 6,566.00 | | 28637 | 07-31 | 6,910.00 |
| 28540 | 07-30 | 7,964.00 | | 28638 | 07-31 | 1,669.95 |
| 28542 * | 07-30 | 8,200.00 | | 28639 | 07-31 | 5,825.00 |
| 28543 | 07-27 | 13,263.00 | | 28640 | 07-31 | 1,859.95 |
| 28544 | 07-30 | 6,359.00 | | 28641 | 07-31 | 12,833.00 |
| 28545 | 07-30 | 4,604.00 | | | | |

*\* Skip in check sequence*

## Other Debits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 07-02 | Preauthorized Wd | CB&T/Bkcd Mnthly Merch Fees | 5,445.83 |
| | | 070629 000000010144193 | |
| 07-03 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-03 | Overdraft Fee | For Overdraft Check | 32.00 |
| | | 000000312056390 | |
| 07-03 | Overdraft Fee | For Overdraft Check # 27631 | 32.00 |
| 07-03 | Overdraft Fee | For Overdraft Check # 27743 | 32.00 |
| 07-03 | Overdraft Fee | For Overdraft Check # 27793 | 32.00 |
| 07-05 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-05 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-05 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax | 27,157.23 |
| | | 070705 392511310756GY6 | |
| 07-05 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax | 10,436.24 |
| | | 070705 15GY6 070627A01 | |
| 07-06 | Preauthorized Wd | Adp Payroll Fees Adp - Fees | 99.22 |
| | | 070706 10GY6 4803518 | |
| 07-06 | Service Charge | Stop Pay Charge | 32.00 |
| 07-06 | Service Charge | Stop Pay Charge | 32.00 |
| 07-06 | Service Charge | Stop Pay Charge | 32.00 |
| 07-09 | Db Adj/Correction | Same Item Included IN Dep Twice On | 293.12 |
| | | 5/14/07 ADJ#194840 | |
| | | OP070907-1500 | |
| 07-10 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-10 | Service Charge | Wire Transfer-IN | 15.00 |

TRUSTEE009565^BNG SAC OP 07_2007.pdf - 10


**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Other Debits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 07-10 | Transfer Debit | Transfer To Deposit Account 0100011667 | 347,669.21 |
| 07-10 | Transfer Debit | Transfer To Deposit Account 0100010933 | 171,539.72 |
| 07-11 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-11 | Deposit Return Item | Rdi chargeback for seq 0143738330 | 500.00 |
| 07-11 | Service Charge | Deposit Return Ite | 5.00 |
| 07-12 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 070712 460006842874GY6 | 27,728.07 |
| 07-12 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 070712 15GY6 071328A01 | 11,132.02 |
| 07-13 | Transfer Debit | Transfer To Deposit Account 0100060011 | 3,096,940.00 |
| 07-13 | Transfer Debit | Transfer To Deposit Account 0300040144 | 2,000,000.00 |
| 07-13 | Preauthorized Wd | Adp Payroll Fees Adp - Fees 070713 10GY6 5019737 | 104.69 |
| 07-16 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-18 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-18 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-19 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-19 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 070719 567006221629GY6 | 26,779.71 |
| 07-19 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 070719 15GY6 072029A01 | 16,771.18 |
| 07-20 | Preauthorized Wd | Adp Payroll Fees Adp - Fees 070720 10GY6 5257458 | 124.69 |
| 07-21 | Transfer Debit | Transfer To Deposit Account 0100009646 | 424,221.91 |
| 07-23 | Deposit Return Item | Rdi chargeback for seq 0220557170 | 411.35 |
| 07-23 | Service Charge | Deposit Return Ite | 5.00 |
| 07-24 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-24 | POS Withdrawal | Bkcd Chargeback Chargeback SYNERGY ACCEPTANCE000000010144193 | 898.15 |
| 07-25 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-26 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-26 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 070726 753005255630GY6 | 29,391.18 |
| 07-26 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 070726 15GY6 072730A01 | 11,473.27 |
| 07-26 | Preauthorized Wd | Bellsouth Consumer 070726 0860323 | 158.49 |
| 07-27 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-27 | Preauthorized Wd | Adp Payroll Fees Adp - Fees 070727 10GY6 5508784 | 120.80 |
| 07-31 | Service Charge | Wire Transfer-IN | 15.00 |
| 07-31 | Preauthorized Wd | Orchard Bankcard 8882882188 070727 | 500.00 |
| 07-31 | Preauthorized Wd | Wash Mutual Web Validation 070730 000000353212259 | 0.78 |

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 43 of 104

TRUSTEE009565^BNG SAC OP 07_2007.pdf - 11

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 07-02 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 17,122.66 |
| 07-02 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20415495 | 11,738.70 |
| 07-02 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 10,494.21 |
| 07-02 | Remote Express Dep | | 7,352.09 |
| 07-02 | Preauthorized Credit | Adp TX/Fincl Svc Adp - Tax<br>070702 220012386164GY6 | 857.09 |
| 07-02 | Remote Express Dep | | 495.36 |
| 07-02 | Remote Express Dep | | 432.80 |
| 07-02 | Deposit | | 206.85 |
| 07-03 | Wire Transfer-IN | Ap Auto Loan Fund -Atcloan Purchase<br>AP AUTO LOAN FUND<br>SP-ATC | 1,743,696.58 |
| 07-03 | Transfer Credit | Transfer From Deposit Account<br>0000133611 | 184,000.00 |
| 07-03 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20430342 | 18,038.34 |
| 07-03 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 8,568.35 |
| 07-03 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20448522 | 6,316.18 |
| 07-03 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20461505 | 3,981.59 |
| 07-05 | Wire Transfer-IN | Ap Auto Loan Fund -Atcloan Purchase<br>AP AUTO LOAN FUND<br>SP-ATC | 6,000,000.00 |
| 07-05 | Wire Transfer-IN | Ap Auto Loan Fund -Atcloan Purchase<br>AP AUTO LOAN FUND<br>SP-ATC | 182,113.28 |
| 07-05 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20479010 | 8,851.08 |
| 07-05 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 3,555.94 |
| 07-05 | Deposit | | 651.00 |
| 07-06 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20497404 | 7,385.82 |
| 07-06 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20515800 | 1,826.54 |
| 07-06 | Remote Express Dep | | 990.33 |
| 07-06 | Remote Express Dep | | 886.00 |
| 07-06 | Remote Express Dep | | 841.03 |
| 07-09 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20525256 | 9,249.24 |
| 07-09 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 338.00 |
| 07-10 | Wire Transfer-IN | | 427,608.00 |
| 07-10 | Wire Transfer-IN | | 172,258.00 |
| 07-10 | Remote Express Dep | | 9,111.14 |
| 07-10 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20544063 | 7,573.58 |

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 44 of 104


**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 07-10 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20559055 | 4,356.17 |
| 07-10 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 2,894.80 |
| 07-10 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20569845 | 1,801.42 |
| 07-10 | Remote Express Dep | | 50.00 |
| 07-11 | Wire Transfer-IN | | 233,728.00 |
| 07-11 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 16,573.52 |
| 07-11 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20584379 | 7,151.93 |
| 07-11 | Remote Express Dep | | 2,968.00 |
| 07-11 | Deposit | | 812.00 |
| 07-12 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20601652 | 3,545.56 |
| 07-13 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20612801 | 5,945.74 |
| 07-13 | Preauthorized Credit | Adp TX/Fincl Svc Adp - Tax<br>070713 602006930101GY6 | 355.23 |
| 07-16 | Wire Transfer-IN | | 415,501.00 |
| 07-16 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20629628 | 6,676.35 |
| 07-17 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20639677 | 13,745.84 |
| 07-17 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20657465 | 8,200.58 |
| 07-17 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20674333 | 965.28 |
| 07-17 | Deposit | | 716.00 |
| 07-18 | Wire Transfer-IN | | 405,072.00 |
| 07-18 | Wire Transfer-IN | | 11,610.00 |
| 07-18 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20686420 | 7,731.96 |
| 07-18 | Remote Express Dep | | 411.35 |
| 07-18 | Remote Express Dep | | 80.00 |
| 07-19 | Wire Transfer-IN | | 290,382.00 |
| 07-19 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 74,002.17 |
| 07-19 | Remote Express Dep | | 24,447.60 |
| 07-19 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20697215 | 3,715.11 |
| 07-20 | Cr Adj/Correction | 196599 | 12,958.00 |
| 07-20 | Cr Adj/Correction | 196597 | 12,763.00 |
| 07-20 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 12,659.84 |
| 07-20 | Cr Adj/Correction | 196598 | 9,750.00 |
| 07-20 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20711680 | 4,728.81 |
| 07-23 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 17,497.27 |

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 07-23 | Cr Adj/Correction | To Cvr Dup PostingCk#27753<br>ADJ#196600 OP072307-1010 | 13,028.00 |
| 07-23 | Cr Adj/Correction | To Cvr Dup PostingCk#27762<br>ADJ#196600 OP072307-1016 | 13,012.00 |
| 07-23 | Cr Adj/Correction | To Cvr Dup Posting Ck#27821<br>ADJ#196597 OP072307-1001 | 11,524.00 |
| 07-23 | Cr Adj/Correction | To Cvr Dup Posting Ck#27795<br>ADJ#196597 OP072307-1007 | 11,162.00 |
| 07-23 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20726016 | 7,803.71 |
| 07-23 | Cr Adj/Correction | To Cvr Dup PostingCk#27765<br>ADJ#196600 OP072307-1011 | 7,650.00 |
| 07-23 | Cr Adj/Correction | To Cvr Dup PostingCk#27785<br>ADJ#196600 OP072307-1012 | 7,375.00 |
| 07-23 | Cr Adj/Correction | To Cvr Dup Posting Ck#27797<br>ADJ#196597 OP072307-1005 | 6,695.00 |
| 07-23 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 6,581.69 |
| 07-23 | Cr Adj/Correction | To Cvr Dup PostingCk#27782<br>ADJ#196600 OP072307-1013 | 5,821.00 |
| 07-23 | Cr Adj/Correction | To Cvr Dup Posting Ck#27799<br>ADJ#196597 OP072307-1003 | 2,288.51 |
| 07-23 | Cr Adj/Correction | To Cvr Dup Posting Ck#27796<br>ADJ#196597 OP072307-1006 | 2,270.92 |
| 07-23 | Cr Adj/Correction | To Cvr Dup Posting Ck#27800<br>ADJ#196597 OP072307-1002 | 2,241.58 |
| 07-23 | Cr Adj/Correction | To Cvr Dup Posting Ck#27798<br>ADJ#196597 OP072307-1004 | 2,211.58 |
| 07-23 | Cr Adj/Correction | To Cvr Dup PostingCk#27783<br>ADJ#196600 OP072307-1014 | 1,888.51 |
| 07-23 | Cr Adj/Correction | To Cvr Dup PostingCk#27756<br>ADJ#196600 OP072307-1015 | 869.95 |
| 07-24 | Wire Transfer-IN | | 344,188.00 |
| 07-24 | Remote Express Dep | | 30,350.79 |
| 07-24 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20740582 | 14,864.61 |
| 07-24 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20757817 | 9,436.81 |
| 07-24 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20778121 | 1,000.00 |
| 07-24 | Deposit | | 461.55 |
| 07-25 | Wire Transfer-IN | | 500,934.00 |
| 07-25 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 22,263.32 |
| 07-25 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 10,034.04 |
| 07-25 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20786546 | 5,469.07 |
| 07-26 | Wire Transfer-IN | | 193,140.00 |
| 07-26 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,20801039 | 6,119.17 |
| 07-27 | Wire Transfer-IN | | 522,257.00 |


**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

July 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|-----------------|-------------|--------|
| 07-27 | Credit Memo Bankcard | POS Deposits Deposits | 12,622.05 |
| | | SYNERGY ACCEPTANCE000000010144193 | |
| 07-27 | Preauthorized Credit | Moneygram P Sys Util Remit | 7,219.36 |
| | | 43547245,20812449 | |
| 07-30 | Credit Memo Bankcard | POS Deposits Deposits | 16,297.57 |
| | | SYNERGY ACCEPTANCE000000010144193 | |
| 07-30 | Preauthorized Credit | Moneygram P Sys Util Remit | 10,773.59 |
| | | 43547245,20827681 | |
| 07-30 | Credit Memo Bankcard | POS Deposits Deposits | 10,477.80 |
| | | SYNERGY ACCEPTANCE000000010144193 | |
| 07-30 | Credit Memo Bankcard | POS Deposits Deposits | 5,684.13 |
| | | SYNERGY ACCEPTANCE000000010144193 | |
| 07-31 | Wire Transfer-IN | | 183,943.00 |
| 07-31 | Preauthorized Credit | Moneygram P Sys Util Remit | 15,786.45 |
| | | 43547245,20842594 | |
| 07-31 | Remote Express Dep | | 14,028.07 |
| 07-31 | Preauthorized Credit | Moneygram P Sys Util Remit | 7,019.18 |
| | | 43547245,20862562 | |
| 07-31 | Preauthorized Credit | Moneygram P Sys Util Remit | 4,905.20 |
| | | 43547245,20877601 | |
| 07-31 | Remote Express Dep | | 46.14 |
| 07-31 | Preauthorized Credit | Wash Mutual Web Validation | 0.74 |
| | | 070730 000000353212259 | |
| 07-31 | Preauthorized Credit | Wash Mutual Web Validation | 0.04 |
| | | 070730 000000353212259 | |

## Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 06-30 | 201,388.01 | 07-12 | 7,247,469.98 | 07-23 | 1,156,659.50 |
| 07-02 | -85,864.66 | 07-13 | 1,827,279.14 | 07-24 | 1,252,193.10 |
| 07-03 | 1,476,501.76 | 07-16 | 1,858,049.74 | 07-25 | 1,628,106.40 |
| 07-05 | 7,559,743.64 | 07-17 | 1,598,695.66 | 07-26 | 1,540,296.74 |
| 07-06 | 7,547,656.45 | 07-18 | 1,778,231.25 | 07-27 | 1,726,155.26 |
| 07-09 | 7,381,877.66 | 07-19 | 1,944,195.97 | 07-30 | 1,469,545.63 |
| 07-10 | 7,423,345.80 | 07-20 | 1,687,367.21 | 07-31 | 1,431,390.12 |
| 07-11 | 7,574,736.93 | 07-21 | 1,263,145.30 | | |

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 47 of 104

TRUSTEE009565^BNG SAC OP 07_2007.pdf - 15

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 48 of 104

TRUSTEE009565^BNG SAC OP 07_2007.pdf - 16

EXHIBIT
K

LAW OFFICES

# MACDONALD | FERNANDEZ LLP

221 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94104-2323

TELEPHONE (415) 362-0449
FACSIMILE (415) 394-5544
WWW.MACFERN.COM

IAIN A. MACDONALD
RENO F.R. FERNANDEZ III
MATTHEW J. OLSON

CENTRAL VALLEY OFFICE
914 THIRTEENTH STREET
MODESTO, CALIFORNIA 95354
TELEPHONE: (209) 549-7949
FACSIMILE: (209) 236-0172

IAIN A. MACDONALD
EXT. 203
IAIN@MACFERN.COM

July 19, 2013

**VIA ELECTRONIC MAIL - lk@kievelaw.com**

Loren Kieve, Esq.
Kieve | Law Offices
5A Funston Avenue
The Presidio of San Francisco
San Francisco, CA 94129-1110

      RE:    *Schoenmann v. Torchia (In re Synergy Acceptance Corp.),*
           Adv. Pro. No. 12-03156—Discovery Responses & Additional Witness

Dear Mr. Kieve:

      In reply to your letter of July 11, 2013, please find attached the second set of responses to the Plaintiff's request for the production of documents. To the extent the Defendants are producing documents that fall within some of the categories to which they have interposed objections the Defendants' production of documents is not a waiver of those objections, which they specifically reserve.

      Specifically addressing the document requests:

1.     Each document that relates to the shareholders or share holdings of SAC.

      *The Defendants do not possess any documents responsive to this request.*

2.     Each document that relates to the issuance of any shares by SAC.

      *The Defendants do not possess any documents responsive to this request.*

3.     Each document that relates to the consideration paid or given for the issuance of any shares of SAC.

      *The Defendants do not possess any documents responsive to this request.*

4.     Each document that relates to the stock ledger or list of shareholders of SAC.

*The Defendants do not possess any documents responsive to this request.*

5.      Each document that relates to the board minutes of SAC.

*The Defendants do not possess any documents responsive to this request.*

6.      Each document that relates to the charter or articles of incorporation of SAC.

*The Defendants do not possess any documents responsive to this request.*

7.      Each document that relates to the by-laws of SAC.

*The Defendants do not possess any documents responsive to this request.*

8.      Each document that relates to any filings or submissions by SAC with or to any regulatory authority, including without limitation any state chartering or corporate regulatory authority.

*The Defendants do not possess any documents responsive to this request.*

83.      Each document that relates to any communication with Tiffany Mok.

*The Defendants do not possess any documents responsive to this request.*

86.      Each document that relates to the June 30, 2007 purchase by SAC of 600 shares of its own stock from Robert E. Smith.

*Responsive documents are produced herewith.*

87.      Each document that relates to the share holdings of SAC stock of David A. Kagel.

*Responsive documents are produced herewith.*

88.      Each document that relates to the June 30, 2007 "Stock Purchase Agreement" (the "Initial Agreement").

*Responsive documents are produced herewith.*

89.      Each document that relates to the closing of the Initial Agreement.

*Responsive documents are produced herewith.*

90.      Each document that relates to the transfer of any shares as a result of or pursuant to the Initial Agreement.

*Responsive documents are produced herewith.*

91.   Each document that relates to the transfer of funds as a result of or pursuant to the Initial Agreement.

*Responsive documents are produced herewith.*

96.   Each document that relates to Synergy Equity.

*Responsive documents are produced herewith.*

97.   Each document that relates to any transaction between Synergy Equity and SAC.

*Responsive documents are produced herewith.*

98.   Each document that relates to any communication between Synergy Equity and SAC.

*Responsive documents are produced herewith.*

99.   Each document that relates to any transfer of funds between Synergy Equity and SAC.

*The Defendants do not possess any documents responsive to this request.*

104.   Each document that relates to any transaction between Synergy Equity and Clear Skies.

*Responsive documents are produced herewith.*

105.   Each document that relates to any communication between Synergy Equity and Clear Skies.

*Responsive documents are produced herewith.*

106.   Each document that relates to any transfer of funds between Synergy Equity and Clear Skies.

*Responsive documents are produced herewith.*

116.   Each document that relates to any transaction between Synergy Equity and Torchia.

*Responsive documents are produced herewith.*

117.   Each document that relates to any communication between Synergy Equity and Torchia.

*Responsive documents are produced herewith.*

118.   Each document that relates to any transfer of funds between Synergy Equity and Torchia.

*Responsive documents are produced herewith.*

119.   Each document that relates to any transaction between Synergy Equity and Celello.

*Responsive documents are produced herewith.*

120.   Each document that relates to any communication between Synergy Equity and Celello.

*Responsive documents are produced herewith.*

121.   Each document that relates to any transfer of funds between Synergy Equity and Celello.

*The Defendants do not possess any documents responsive to this request.*

151.   Each document that relates to the transfer of all shares of SAC to Synergy Equity as part of the June 30, 2007 transfer.

*Responsive documents are produced herewith.*

152.   Each document that relates to the Amended and Restated Stock Purchase Agreement dated October 15, 2007 ("Amended Agreement").

*Responsive documents are produced herewith.*

154.   Each document that relates to any payment made to or received by Clear Skies directly or indirectly as a result of or pursuant to the Amended Agreement.

*Responsive documents showing are produced herewith.*

155.   Each document that relates to any payment made to or received by Celello directly or indirectly as a result of or pursuant to the Amended Agreement.

*Responsive documents are produced herewith.*

156.  Each document that relates to any payment made to or received by Torchia directly or indirectly as a result of or pursuant to the Amended Agreement.

*Responsive documents are produced herewith.*

157.  Each document that relates to any payment made to or received by any person or entity as a result of or pursuant to the Amended Agreement.

*Responsive documents are produced herewith.*

164.  Each document that relates to the issuance on or about October 15, 2007 by SAC of 999,300 shares of SAC stock to Synergy Equity.

*Responsive documents are produced herewith.*

168.  Each document that relates to a "First Amendment" to the October 15, 2007 "Amended Agreement" entered into in or about December 2007.

*Responsive documents are produced herewith.*

173.  Each document that relates to the 10-year 10% notes from Synergy Equity to APAL.

*The Defendants do not possess any documents responsive to this request.*

174.  Each document that relates to the transfers by APAL on or about the following dates of the following amounts to Synergy Equity:

| Date: | Amount: |
|---|---|
| 10/11/2007 | $7,500,000 |
| 12/03/2007 | $2,875,000 |
| 01/28/2008 | $3,200,000 |
| Total: | $13,575,000 |

*The Defendants do not possess any documents responsive to this request.*

175.  Each document that relates to the transfers on or about the following dates through or by Synergy Equity and SAC to Clear Skies:

| | |
|---|---|
| 7/13/2007 | $5,096,940 |
| 10/10/2007 | $7,500,000 |
| 12/03/2007 | $2,875,000 |
| 1/29/2008 | $3,200,000 |

*Responsive documents are produced herewith.*

176.    Each document that relates to any receipt, directly by Torchia, Celello or any
        defendant of any of the funds transferred on the following dates by Synergy
        Equity and SAC to Clear Skies:

|            |             |
|------------|-------------|
| 7/13/2007  | $5,096,940  |
| 10/10/2007 | $7,500,000  |
| 12/03/2007 | $2,875,000  |
| 1/29/2008  | $3,200,000  |

*Responsive documents are produced herewith.*

177.    Each document that relates to the receipt, directly, indirectly, mediately or
        subsequently, by Torchia of any of the roughly $20 million paid to an Atlanta,
        Georgia law firm by the name of Chamberlain (and an attorney at that firm,
        Nicholas Papleacos).

*Responsive documents are produced herewith.*

180.    Each document that relates to the repayment of $13,575,000 in notes by SAC to
        APAL.

*The Defendants do not possess any documents responsive to this request.*

181.    Each document that relates to whether or not $13,575,000 in notes were repaid by
        SAC to APAL.

*The Defendants do not possess any documents responsive to this request.*

182.    Each document that relates to a December 31, 2008 "Auto Contracts Purchase
        Agreement" between Synergy Equity and APAL.

*The Defendants do not possess any documents responsive to this request.*

183.    Each document that relates to the purchase in or about February 2009 by SAC of
        an auto loan portfolio for approximately $12 million.

*The Defendants do not possess any documents responsive to this request.*

184.    Each document that relates to the sale in or about February 2009 by SAC to
        APAL of an auto loan portfolio for approximately $38.2 million.

*The Defendants do not possess any documents responsive to this request.*

We are expecting an additional tranche of documents early next week and will promptly produce those documents once they are received.

Additionally, in reviewing our initial disclosures we realized that one potential witness was unintentionally omitted. This additional witness is Michael R. Stresser, CPA, CFE. Mr. Stresser may have information about the Debtor's financial statements, the sale, and management of the Debtor before the sale. He may be contacted at:

Stresser & Associates, PC
8505 Dunwoody Place
Building 12
Atlanta, GA 30350
Telephone: (770) 640-6400

Should you have any questions, please do not hesitate to call.

Very truly yours,

Iain A. Macdonald

cc:     Client


## Auto Contracts Pre-Purchase Loan Origination Fees Agreement

THIS AGREEMENT, made June 22, 2007, by and between American Pegasus Auto Loan Fund SP, Curacao, Netherlands Antilles as "Buyer" and Synergy Acceptance Corp., a Georgia Corporation, located at 200 North Street, Canton, GA 30114, and all persons, whether corporate or individual, who have executed this agreement (the "Agreement"), as "Seller".

## RECITALS

WHEREAS, Seller wishes to sell to Buyer and Buyer wishes to buy from Seller installment sales contracts (the "Contracts") over the course of calendar year 2007 and 2008 and wishes to prepay Seller the loan origination fees in return for which Seller will give Buyer a 10% discount from Seller's usual and customary price (customary price is 4.5% of the principal balance of the Contracts) thereby permitting Buyer to pay 4.05% of the principal balance of the Contracts as to such loan origination fees; and

WHEREAS, the parties hereto agree that "Contracts" includes all security agreements, conditional sales contracts, commercial documents, other instruments, property rights and all additional rights, including but not limited to all rights Dealer Agreements with respect to the Contracts and security of every kind and nature pertaining to the Contracts.

NOW, THEREFORE, in consideration of the mutual promised and covenants contained herein, it hereby agreed by the parties hereto that:

## PARAGRAPH ONE

Seller hereby agrees to sell to Buyer, its successors and assigns, during calendar year 2007 and 2008, Contracts which have a total Principal Value of US$148,148,148.

## PARAGRAPH TWO

The purchase price to be paid by Buyer to Seller for the prepayment of the Contracts is Six Million Dollars (US$6,000,000). In the event of any error in computation in arriving at the purchase price or in the final accounting, the party benefiting from the error shall reimburse the other for any sum due thereunder upon submission of satisfactory evidence of such error.

## PARAGRAPH THREE

a) With respect to each Contract, Seller hereby represents, warrants and covenants unto Buyer as follows:

1. Buyer, upon acquisition of the Contracts from Seller will be the lawful owner thereof, free and clear of all claims, liens or encumbrances, whatsoever.
2. Each Contract will be valid and existing as of the time of delivery, will be an unconditional obligation of the obligor thereof and free of all defenses, real or alleged, whether in law or equity; and all persons and/or entities executing the Contracts will have had authority and capacity to so contract.
3. Each Contract will comply with all applicable legal requirements of federal, state, and municipal governments or agencies thereof, including the Federal Truth in Lending Act, the Federal Fair Credit Reporting Act, the Federal Equal Credit Opportunity Act, and all Federal Trade Commission administrative regulations, rules and in conformance with any other rules or regulations adopted by the Federal Trade Commission during calendar year 2007.
4. Neither Seller nor any of its agents or employees will in any manner have been guilty of any civil or criminal fraud or misrepresentation with respect to the creation or servicing of the Contracts or the transfer or assignment to Buyer.
5. None of the credit relating to any of the Contracts will be of a gratuitous nature or will be given in consideration other than for payment or money will be given for a payment made by any corporate parent, affiliate or subsidiary, or by any employee or agent of Seller or its predecessor-in-interest or any prior holder thereof; and no Contract will arise from any renewal granted for the purpose of concealing a contractual delinquency.
6. None of the buyers, obligors, endorsers, sureties, or guarantors named in the Contracts will be deceased, the subject of any current proceeding in bankruptcy, or identified as a Specially Designated Person by the Office of Foreign Assets Control of the U.S. Department of Justice.
7. The creation, servicing, and sale of the Contracts will comply with all applicable state and federal consumer credit, motor vehicle sales, financing, auto dealer and consumer protection statutes and regulations promulgated thereunder as well as all other laws, regulations, and rules pertaining to the type of character of contract agreements and transactions represented by the Contracts.
8. Seller or its predecessor-in-interest, or their agents or affiliated agents, will have registered all vehicles described in the Contracts in compliance with the vehicle laws of the state in which the respective obligor resides, showing the obligor as registered owner and Seller as first perfected lien-holder (secured party).
9. To the best of Seller's knowledge, each vehicle to be financed under the Contracts will be covered by comprehensive and collision insurance, protecting Buyer's interest in the vehicle, and will be in a form and amount acceptable to Buyer.

TRUSTEE000003^2007.06.22 Sale Agreement APAL to SAC for $6M - Page 2

10. All goods and services included in the Contracts will be free from defects and will have been installed, delivered, and accepted by the subject obligor.
11. The descriptions of the vehicles, goods and services, in the Contracts will be true, accurate, and complete.
12. Each obligor's name in the Contracts will be bona fide. Each obligor will have had the legal capacity to enter into a Contract and each obligor's signature on each Contract will be genuine.
13. The down payment shown in the Contracts will have been made in cash or its equivalent trade-in-value by the obligor and no part of the down payment shown in the Contracts will have been lent to the obligor, directly or indirectly, by Seller, its predecessor-in-interest or any of their agents and affiliates.
14. The obligor under each Contract will have no right to rescind the purchase of the goods and services that are the subject of the Contract and will have made no attempt to rescind.
15. The Contracts will represent a consumer purpose credit sale of a motor vehicle.
16. The obligor's price paid for each vehicle and for any other goods or services sold in connection with the sale of any vehicle and so purchased under the Contracts will not in any manner have been increased to recoup, adjust or compensate for any dealer discounts charged by anyone, including Seller.
17. Neither Seller, nor any of its agents or employees will have any reason to believe that as of the date of each of the Contracts that the odometer reading on the related vehicle is inaccurate.
18. All legally required notices regarding the Contracts including, but not limited to, notices of all prior incidences of the subject vehicle's involvement in traffic or other accidents, the vehicle's prior use or physical damage, including flood damage, to the vehicle will have been provided to the respective obligor.
19. Seller acknowledges that Buyer will rely upon information appearing in the Contracts, the records of Seller for each Contract, and upon other pertinent records maintained by or under the control of Seller and to be delivered to Buyer and, in the light of such acknowledgment Seller specifically warrants that each item of information contained in and appearing upon said records and documents will accurately and truthfully reflects the true status of the Contracts and indebtedness to which said records and documents are related.
20. Notwithstanding any other provision hereof, Seller warrants that each Contract will be secured by a valid and legal perfected first lien upon the collateral described therein unless a different type or rank of lien is described in specific detail upon Seller's Payment History Ledger Card.
21. Nothwithstanding any other representations, warranties, or covenants herein, Seller covenants that as of the delivery date of each Contract, Buyer shall have received all of the respective obligor's scheduled

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 58 of 104

payments on each Contract that are due and payable as of such delivery date. Seller further agrees that any payments received by Seller from the Contracts from and after the delivery date shall be turned over immediately to Buyer in the form of received or certified funds.

22. Seller will not take any action and will refrain from taking any action that would cause or tend to cause repossession from Buyer, or otherwise sell another vehicle to any previous obligor that will result in repossession from Buyer.

(b) It is hereby acknowledged that the Buyer shall have relied upon the representations and warranties expressed herein irrespective of any inspection or knowledge on its part of anything inconsistent with such representations and warranties. The representations and warranties contained herein shall survive the purchase of the Contracts and shall expire only upon the retirement of all the Contracts and expiration of all applicable statutes of limitations to any cause of action arising out of, or related to, the Contracts. For this purpose, the Contracts will not be deemed retired or paid in full if refinanced by Buyer or an affiliate or paid out of the proceeds of a new extension of credit from Buyer or an affiliate to the obligor, whether or not a new cash advance is made by Buyer or affiliate.

## PARAGRAPH IV

a) In the event any representation, warranty, or covenant made by Seller is incorrect in any material respect, Seller shall, no later than thirty (30) days after receiving a written notice from Buyer specifying the particular defect, pay Buyer in lawful money of the United States of America, the of the unpaid Principal Balance of such Contract as originally determined at the time of purchase. Upon payment by Seller to Buyer for such Contract, Buyer shall reassign and set the Contract over to Seller without recourse in recordable form.

b) Seller's obligation to repurchase as set forth in this Paragraph shall not be affected by any modification by Buyer of the terms of any Contract sold to Buyer, including any extension of the time payment deemed desirable by Buyer, any release or addition of any obligor, any release of substitution of collateral, with or without notice to Seller. Seller hereby waives presentment of any of said Contracts, demand of payment, protest, and notice of nonpayment or protest thereof.

c) Seller further waives any right to require Buyer to: (1) Proceed against any person; (2) Proceed against or exhaust any rights under the receivables as to the Contracts; or (3) pursue any other remedy in Buyer's power as against any other persons or property.

d) Seller shall also defend and hold Buyer harmless from any claims, liabilities, causes of action, and judgments arising out of, resulting from, or concerning any of the matters covered by the foregoing representations or warranties.

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 59 of 104

## PARAGRAPH V

The closing of this transaction shall occur on the Closing Date, at an hour to be mutually agreed upon, and such Closing Date shall occur on June 22, 2007 or such other date as may be mutually agreed upon. At the closing, when Seller buyer will cause to be delivered to Seller, or its order, the full amount of the pre-payment of loan origination price, except as otherwise provided for herein.

## PARAGRAPH VI

Seller shall do the following at the time of closing this purchase or at the time of the future delivery with respect to all Contracts:

1. Execute and deliver as part of this Agreement, a Limited Power of Attorney appointing Buyer to act as Seller's agent and attorney as therein stated, which Limited Power of Attorney is attached to this Agreement and made a part hereof.
2. Deliver to Buyer the original Contracts and all files and records relating to each Contract.
3. Seller agrees to furnish Buyer with, prior to or at the closing or at the time of delivery of any Contract, certified resolutions of its directors and consent of its stockholders, in form and in substance acceptable to Buyer, authorizing Seller to enter into the Agreement.

## PARAGRAPH VII

Seller agrees to repurchase each unverified Contract upon notice from Buyer that a Contract cannot be verified. The verification of a Contract shall consist of an acknowledgment by a person named as an obligor on the Contract which states that such person is indebted according to the Contract to the extent of the outstanding balance reflected on Seller's records, and the receipt of ONE FULL MONTH'S SCHEDULED PAYMENTS (or the contractual equivalent of one month's worth of payments) from an obligor on such contract by Buyer. Such acknowledgment and payment must be received by Buyer within thirty (30) days from the date of purchase of the Contracts. Buyer agrees to use reasonable efforts to verify the Contracts. Seller agrees to repurchase any unverified Contract at the same percentage Buyer paid therefore. Buyer's right to demand repurchase of any unverified Contract on the sole grounds that the Contract is unverified shall expire thirty (30) days from the date of this Agreement. However, nothing in this Paragraph shall affect, modify, replace, or abrogate any rights Buyer may have and any obligations Seller may have pursuant to Seller's other representations, warranties, and covenants herein. In the event Seller must repurchase an account from Buyer pursuant to the terms of this Paragraph, Seller shall repurchase said account within ten (10) business days of Seller's receipt of Buyer's written demand to repurchase such account.

## PARAGRAPH VIII

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 60 of 104

If any vehicle securing a Contract has been equipped with a starter interrupt device, GPS device, or other electronic device designed to aid in the location or repossession of the vehicle ("Device"), Seller assigns to Buyer the Device, all of Seller's rights in connection with the Device and all codes and/or software necessary to administer the Device. Seller understands and agrees that Buyer may administer such Device in accordance with the related Contract and in accordance with applicable law, and may remove the Device from the obligor's vehicle upon payment in full of the related Contract or upon repossession of the vehicle securing the related Contract. Alternatively, Buyer may direct Seller to administer the Device on Buyer's behalf. In such event, Seller unconditionally agrees not to activate any Device (thereby disabling said vehicle) unless directed to do so by Buyer in writing, or unless the related Contract has been reassigned in writing to Seller by Buyer. Seller agrees to give a customer as to any Contract, all necessary codes or service to prevent the activation of Devices, unless directed otherwise in writing by Buyer.

## PARAGRAPH IX

It is expressly agreed that Buyer is simply prepaying and therefore buying Contracts in the amount of the prepayment, and unless otherwise specifically provided for herein or in the Contracts, does not assume or incur any obligation or liability whatsoever of Seller which is in any way involved, either directly or indirectly, with the operation of Seller of its business or to which Seller may have become a party or liable by reason of its business or by the terms of the Contracts or with respect to the goods and services being purchased thereunder (except to release the security interest in the collateral when a Contract is paid in full). Seller hereby agrees to defend and hold Buyer harmless from any such liability and from any liability arising from the inclusion in the Contracts of the provision on assignee liability arising from the Federal Trade Commission Preservation of Consumer claims and Defenses Trade Regulation Rule.

## PARAGRAPH X

Seller covenants and agrees with Buyer that Seller will not disclose or furnish or permit or authorize the disclosure or furnishing of the name of any customers or obligors on the Contracts to any person, firm, or corporation whatsoever, other than to the Buyer or Buyer's affiliates, except to the extent required by law.

## PARAGRAPH XI

Seller shall, upon Buyer's request, executed, and deliver to Buyer any instruments or documents, and do all things reasonably necessary and advisable to effect the provisions of this Agreement and to facilitate the collection of the Contracts, including the execution of separate endorsements and assignments and powers of attorney.

## PARAGRAPH XII

The obligations, warranties, and covenants of Seller shall be joint and several.

## PARAGRAPH XIII

Seller represents that policies or certificates of credit life, credit disability, property insurance, service contracts, and mechanical breakdown insurance will have been issued on the Contracts when indicated on the Contracts, that such policies or certificates will have been issued by the companies identified on the Contracts, and Seller hereby sells, transfers, assigns, sets over and delivers to Buyer all rights, title, and interest in and to each of said policies, contracts, or insurance as a creditor, beneficiary or otherwise, and hereby constitutes and appoints Buyer, its agents, successors, and assigns, the true and lawful attorney of Seller, but for and on behalf of and for Buyer's benefit, to file such proofs of loss and to process all claims thereon. Seller further agrees to notify said insurance company of the sale and transfer of the Contracts to Buyer immediately after the date such Contracts are delivered to the Buyer, and agrees to cooperate with Buyer in processing any claims or proof of loss in connection with such insurance policies or certificates, all as may be required. The parties hereto agree that in the event of any cancellation or termination of any policies of insurance by reason of prepayment, renewal, or otherwise, as a result of which a rebate of the prepaid insurance premium is required to be made, that Buyer will make the rebate of such premium from its own funds and credit the account of the individual insured obligor for such amount. Immediately upon submission to Seller of proof of a cancellation or termination, Seller shall pay and remit to Buyer the full amount of the subject rebate of prepaid insurance premium Buyer credited to the account of the individual insured obligor.

## PARAGRAPH XIV

The parties hereto agree that the original or duplicate original of this Agreement may be microfilmed and a photo copy of such microfilm or original may be introduced in lieu of the original or duplicate original hereof and without further foundation. The parties hereto expressly waive the Secondary Evidence Rule.

## PARAGRAPH XV

Each party hereto assumes responsibility for any and all commissions it may have incurred as a result of this sale.

## PARAGRAPH XVI

Buyer covenants to Seller, that it will use the Limited Power of Attorney delivered to Buyer pursuant to Paragraph VI hereof only in connection with the pre-payment of the origination fees as to the Contracts purchased by Buyer pursuant hereto.

## PARAGRAPH XVII

TRUSTEE000003^2007.06.22 Sale Agreement APAL to SAC for $6M - Page 7

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. Buyer and Seller covenant and agree that any action instituted to enforce or interpret any of the terms and/or conditions of this Agreement shall be brought in a federal or state court of competent jurisdiction located in Cherokee County, Georgia and Buyer and Seller hereby willingly agree to submit to said court's venue and jurisdiction. Seller hereby waives any right it may have to a trial by jury.

### PARAGRAPH XVIII

In the event of a breach of any of the terms or conditions of this Agreement by either party, if a suit at law or equity is instituted, the prevailing party shall be entitled to reasonable attorneys' fees and costs and expenses incurred with respect thereto.

### PARAGRAPH XIX

Neither party to this Agreement will make any public announcement of this transaction without prior written approval of the other, which approval shall not be unreasonably withheld.

### PARAGRAPH XX

Any notice to be given or other documents to be delivered by any party to the other party may be delivered in person to such party, or may be deposited in the United States mail, duly certified, with postage thereon fully prepaid and addressed to the party for whom intended at the address shown at the beginning of this Agreement. Any party to this Agreement may from time to time by written notice to the other, designate a different address which shall be substituted for the one above.

### PARAGRAPH XXI

The provisions of this Agreement are binding upon and shall inure to the benefit of the respective successors and assigns of both parties hereto.

### PARAGRAPH XXII

It is understood and agreed to by the parties to this Agreement that subject to the terms herein, Buyer's purchase of the Contracts is without recourse as to Seller's repurchase of the Contracts except for the representations, warranties, and covenants set forth in this Agreement.

### PARAGRAPH XXIII

Any references to Schedules in this Agreement, refer to Schedules attached to this Agreement, and such Schedules are incorporated herein by reference. The singular includes the plural where applicable unless otherwise expressly stated.

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 63 of 104

TRUSTEE000003^2007.06.22 Sale Agreement APAL to SAC for $6M - Page 9

## PARAGRAPH XXIV

Synergy Acceptance Corp., for the consideration of discounted fee previously mentioned, agrees to service all the loans which have been pre-purchased under this Agreement by American Pegasus Auto Loan Fund to the end of the terms of the pre-purchased Contracts or the sale of the Contracts. Servicing of the loans includes, and is not limited to, collections of payments, sale of loan portfolios, repossession of contracts in default, sale of repossessed automobiles, and insurance claims. American Pegasus Auto Loan Fund agrees to pay all fees in connection with defaulted Contracts and the reconditioning of automobiles repossessed. Recondition of repossessed vehicles will be at the sole discretion of Synergy Acceptance Corp. American Pegasus Auto Loan Fund also herewith agrees to pay all fees related to forced-placed insurance.

IN WITNESS WHEREOF, the parties first listed above have caused this Agreement to be duly executed by persons who are authorized by the parties to enter into this Agreement this 22nd day of June 2007.

| For Seller: | For Buyer: |
|---|---|
| SYNERGY ACCEPTANCE CORP. | AMERICAN PEGASUS AUTO LOAN FUND SP |
| BY:_____ | BY: _____ |
| ITS:_____ | ITS: _____ |
| Witness: _____ | Witness: _____ |

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 65 of 104

Balance after voiding check. = -1897.46

9-5-08
voided credit
S/N/M 2361.17
cust # 56049

Credit voided

voided credit

56096

bc pontiac

VIN = 191554

1353.16

683508

8-28-08

#

TRUSTEE000003^2007.06.22 Sale Agreement APAL to SAC for $6M - Page 11

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 66 of 104

## Auto Contracts Pre-Purchase Loan Origination Fees Agreement

THIS AGREEMENT, made June __, 2007, by and between American Pegasus Auto Loan Fund SP, Curacao, Netherlands Antilles as "Buyer" and Synergy Acceptance Corp., a Georgia Corporation, located at 200 North Street, Canton, GA 30114, and all persons, whether corporate or individual, who have executed this agreement (the "Agreement"), as "Seller".

## <u>RECITALS</u>

WHEREAS, Seller wishes to sell to Buyer and Buyer wishes to buy from Seller installment sales contracts (the "Contracts") over the course of calendar year 2007 and 2008 and wishes to prepay Seller the loan origination fees in return for which Seller will give Buyer a 10% discount from Seller's usual and customary price (customary price is 4.5% of the principal balance of the Contracts) thereby permitting Buyer to pay 4.05% of the principal balance of the Contracts as to such loan origination fees; and

WHEREAS, the parties hereto agree that "Contracts" includes all security agreements, conditional sales contracts, commercial documents, other instruments, property rights and all additional rights, including but not limited to all rights Dealer Agreements with respect to the Contracts and security of every kind and nature pertaining to the Contracts.

NOW, THEREFORE, in consideration of the mutual promised and covenants contained herein, it hereby agreed by the parties hereto that:

## PARAGRAPH ONE

Seller hereby agrees to sell to Buyer, its successors and assigns, during calendar year 2007 and 2008, Contracts which have a total Principal Value of US$148,148,148.

## PARAGRAPH TWO

The purchase price to be paid by Buyer to Seller for the prepayment of the Contracts is Six Million Dollars (US$6,000,000). In the event of any error in computation in arriving at the purchase price or in the final accounting, the party benefiting from the error shall reimburse the other for any sum due thereunder upon submission of satisfactory evidence of such error.

## PARAGRAPH THREE

a) With respect to each Contract, Seller hereby represents, warrants and covenants unto Buyer as follows:

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 67 of 104

1. Buyer, upon acquisition of the Contracts from Seller will be the lawful owner thereof, free and clear of all claims, liens or encumbrances, whatsoever.
2. Each Contract will be valid and existing as of the time of delivery, will be an unconditional obligation of the obligor thereof and free of all defenses, real or alleged, whether in law or equity; and all persons and/or entities executing the Contracts will have had authority and capacity to so contract.
3. Each Contract will comply with all applicable legal requirements of federal, state, and municipal governments or agencies thereof, including the Federal Truth in Lending Act, the Federal Fair Credit Reporting Act, the Federal Equal Credit Opportunity Act, and all Federal Trade Commission administrative regulations, rules and in conformance with any other rules or regulations adopted by the Federal Trade Commission during calendar year 2007.
4. Neither Seller nor any of its agents or employees will in any manner have been guilty of any civil or criminal fraud or misrepresentation with respect to the creation or servicing of the Contracts or the transfer or assignment to Buyer.
5. None of the credit relating to any of the Contracts will be of a gratuitous nature or will be given in consideration other than for payment or money will be given for a payment made by any corporate parent, affiliate or subsidiary, or by any employee or agent of Seller or its predecessor-in-interest or any prior holder thereof; and no Contract will arise from any renewal granted for the purpose of concealing a contractual delinquency.
6. None of the buyers, obligors, endorsers, sureties, or guarantors named in the Contracts will be deceased, the subject of any current proceeding in bankruptcy, or identified as a Specially Designated Person by the Office of Foreign Assets Control of the U.S. Department of Justice.
7. The creation, servicing, and sale of the Contracts will comply with all applicable state and federal consumer credit, motor vehicle sales, financing, auto dealer and consumer protection statutes and regulations promulgated thereunder as well as all other laws, regulations, and rules pertaining to the type of character of contract agreements and transactions represented by the Contracts.
8. Seller or its predecessor-in-interest, or their agents or affiliated agents, will have registered all vehicles described in the Contracts in compliance with the vehicle laws of the state in which the respective obligor resides, showing the obligor as registered owner and Seller as first perfected lien-holder (secured party).
9. To the best of Seller's knowledge, each vehicle to be financed under the Contracts will be covered by comprehensive and collision

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 68 of 104

insurance, protecting Buyer's interest in the vehicle, and will be in a form and amount acceptable to Buyer.

10. All goods and services included in the Contracts will be free from defects and will have been installed, delivered, and accepted by the subject obligor.

11. The descriptions of the vehicles, goods and services, in the Contracts will be true, accurate, and complete.

12. Each obligor's name in the Contracts will be bona fide. Each obligor will have had the legal capacity to enter into a Contract and each obligor's signature on each Contract will be genuine.

13. The down payment shown in the Contracts will have been made in cash or its equivalent trade-in-value by the obligor and no part of the down payment shown in the Contracts will have been lent to the obligor, directly or indirectly, by Seller, its predecessor-in-interest or any of their agents and affiliates.

14. The obligor under each Contract will have no right to rescind the purchase of the goods and services that are the subject of the Contract and will have made no attempt to rescind.

15. The Contracts will represent a consumer purpose credit sale of a motor vehicle.

16. The obligor's price paid for each vehicle and for any other goods or services sold in connection with the sale of any vehicle and so purchased under the Contracts will not in any manner have been increased to recoup, adjust or compensate for any dealer discounts charged by anyone, including Seller.

17. Neither Seller, nor any of its agents or employees will have any reason to believe that as of the date of each of the Contracts that the odometer reading on the related vehicle is inaccurate.

18. All legally required notices regarding the Contracts including, but not limited to, notices of all prior incidences of the subject vehicle's involvement in traffic or other accidents, the vehicle's prior use or physical damage, including flood damage, to the vehicle will have been provided to the respective obligor.

19. Seller acknowledges that Buyer will rely upon information appearing in the Contracts, the records of Seller for each Contract, and upon other pertinent records maintained by or under the control of Seller and to be delivered to Buyer and, in the light of such acknowledgment Seller specifically warrants that each item of information contained in and appearing upon said records and documents will accurately and truthfully reflects the true status of the Contracts and indebtedness to which said records and documents are related.

20. Notwithstanding any other provision hereof, Seller warrants that each Contract will be secured by a valid and legal perfected first lien upon the collateral described therein unless a different type or rank of lien is described in specific detail upon Seller's Payment History Ledger Card.

TRUSTEE000752^Auto Contracts Purchase Agreement-6 14 2007.doc – Page 3

21. Nothwithstanding any other representations, warranties, or covenants herein, Seller covenants that as of the delivery date of each Contract, Buyer shall have received all of the respective obligor's scheduled payments on each Contract that are due and payable as of such delivery date. Seller further agrees that any payments received by Seller from the Contracts from and after the delivery date shall be turned over immediately to Buyer in the form of received or certified funds.

22. Seller will not take any action and will refrain from taking any action that would cause or tend to cause repossession from Buyer, or otherwise sell another vehicle to any previous obligor that will result in repossession from Buyer.

(b) It is hereby acknowledged that the Buyer shall have relied upon the representations and warranties expressed herein irrespective of any inspection or knowledge on its part of anything inconsistent with such representations and warranties. The representations and warranties contained herein shall survive the purchase of the Contracts and shall expire only upon the retirement of all the Contracts and expiration of all applicable statutes of limitations to any cause of action arising out of, or related to, the Contracts. For this purpose, the Contracts will not be deemed retired or paid in full if refinanced by Buyer or an affiliate or paid out of the proceeds of a new extension of credit from Buyer or an affiliate to the obligor, whether or not a new cash advance is made by Buyer or affiliate.

## PARAGRAPH IV

a) In the event any representation, warranty, or covenant made by Seller is incorrect in any material respect, Seller shall, no later than thirty (30) days after receiving a written notice from Buyer specifying the particular defect, pay Buyer in lawful money of the United States of America, the of the unpaid Principal Balance of such Contract as originally determined at the time of purchase. Upon payment by Seller to Buyer for such Contract, Buyer shall reassign and set the Contract over to Seller without recourse in recordable form.

b) Seller's obligation to repurchase as set forth in this Paragraph shall not be affected by any modification by Buyer of the terms of any Contract sold to Buyer, including any extension of the time payment deemed desirable by Buyer, any release or addition of any obligor, any release of substitution of collateral, with or without notice to Seller. Seller hereby waives presentment of any of said Contracts, demand of payment, protest, and notice of nonpayment or protest thereof.

c) Seller further waives any right to require Buyer to: (1) Proceed against any person; (2) Proceed against or exhaust any rights under the receivables as to the Contracts; or (3) pursue any other remedy in Buyer's power as against any other persons or property.

TRUSTEE000752^Auto Contracts Purchase Agreement-6 14 2007.doc – Page 4

d) Seller shall also defend and hold Buyer harmless from any claims, liabilities, causes of action, and judgments arising out of, resulting from, or concerning any of the matters covered by the foregoing representations or warranties.

## PARAGRAPH V

The closing of this transaction shall occur on the Closing Date, at an hour to be mutually agreed upon, and such Closing Date shall occur on _____, 2007 or such other date as may be mutually agreed upon. At the closing, when Seller buyer will cause to be delivered to Seller, or its order, the full amount of the pre-payment of loan origination price, except as otherwise provided for herein.

## PARAGRAPH VI

Seller shall do the following at the time of closing this purchase or at the time of the future delivery with respect to all Contracts:

1. Execute and deliver as part of this Agreement, a Limited Power of Attorney appointing Buyer to act as Seller's agent and attorney as therein stated, which Limited Power of Attorney is attached to this Agreement and made a part hereof.
2. Deliver to Buyer the original Contracts and all files and records relating to each Contract.
3. Seller agrees to furnish Buyer with, prior to or at the closing or at the time of delivery of any Contract, certified resolutions of its directors and consent of its stockholders, in form and in substance acceptable to Buyer, authorizing Seller to enter into the Agreement.

## PARAGRAPH VII

Seller agrees to repurchase each unverified Contract upon notice from Buyer that a Contract cannot be verified. The verification of a Contract shall consist of an acknowledgment by a person named as an obligor on the Contract which states that such person is indebted according to the Contract to the extent of the outstanding balance reflected on Seller's records, and the receipt of ONE FULL MONTH'S SCHEDULED PAYMENTS (or the contractual equivalent of one month's worth of payments) from an obligor on such contract by Buyer. Such acknowledgment and payment must be received by Buyer within thirty (30) days from the date of purchase of the Contracts. Buyer agrees to use reasonable efforts to verify the Contracts. Seller agrees to repurchase any unverified Contract at the same percentage Buyer paid therefore. Buyer's right to demand repurchase of any unverified Contract on the sole grounds that the Contract is unverified shall expire thirty (30) days from the date of this Agreement. However, nothing in this Paragraph shall affect, modify, replace, or abrogate any rights Buyer may have and any obligations Seller may have pursuant to

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 71 of 104

Seller's other representations, warranties, and covenants herein. In the event Seller must repurchase an account from Buyer pursuant to the terms of this Paragraph, Seller shall repurchase said account within ten (10) business days of Seller's receipt of Buyer's written demand to repurchase such account.

## PARAGRAPH VIII

If any vehicle securing a Contract has been equipped with a starter interrupt device, GPS device, or other electronic device designed to aid in the location or repossession of the vehicle ("Device"), Seller assigns to Buyer the Device, all of Seller's rights in connection with the Device and all codes and/or software necessary to administer the Device. Seller understands and agrees that Buyer may administer such Device in accordance with the related Contract and in accordance with applicable law, and may remove the Device from the obligor's vehicle upon payment in full of the related Contract or upon repossession of the vehicle securing the related Contract. Alternatively, Buyer may direct Seller to administer the Device on Buyer's behalf. In such event, Seller unconditionally agrees not to activate any Device (thereby disabling said vehicle) unless directed to do so by Buyer in writing, or unless the related Contract has been reassigned in writing to Seller by Buyer. Seller agrees to give a customer as to any Contract, all necessary codes or service to prevent the activation of Devices, unless directed otherwise in writing by Buyer.

## PARAGRAPH IX

It is expressly agreed that Buyer is simply prepaying and therefore buying Contracts in the amount of the prepayment, and unless otherwise specifically provided for herein or in the Contracts, does not assume or incur any obligation or liability whatsoever of Seller which is in any way involved, either directly or indirectly, with the operation of Seller of its business or to which Seller may have become a party or liable by reason of its business or by the terms of the Contracts or with respect to the goods and services being purchased thereunder (except to release the security interest in the collateral when a Contract is paid in full). Seller hereby agrees to defend and hold Buyer harmless from any such liability and from any liability arising from the inclusion in the Contracts of the provision on assignee liability arising from the Federal Trade Commission Preservation of Consumer claims and Defenses Trade Regulation Rule.

## PARAGRAPH X

Seller covenants and agrees with Buyer that Seller will not disclose or furnish or permit or authorize the disclosure or furnishing of the name of any customers or obligors on the Contracts to any person, firm, or corporation whatsoever, other than to the Buyer or Buyer's affiliates, except to the extent required by law.

## PARAGRAPH XI

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 72 of 104

Seller shall, upon Buyer's request, executed, and deliver to Buyer any instruments or documents, and do all things reasonably necessary and advisable to effect the provisions of this Agreement and to facilitate the collection of the Contracts, including the execution of separate endorsements and assignments and powers of attorney.

## PARAGRAPH XII

The obligations, warranties, and covenants of Seller shall be joint and several.

## PARAGRAPH XIII

Seller represents that policies or certificates of credit life, credit disability, property insurance, service contracts, and mechanical breakdown insurance will have been issued on the Contracts when indicated on the Contracts, that such policies or certificates will have been issued by the companies identified on the Contracts, and Seller hereby sells, transfers, assigns, sets over and delivers to Buyer all rights, title, and interest in and to each of said policies, contracts, or insurance as a creditor, beneficiary or otherwise, and hereby constitutes and appoints Buyer, its agents, successors, and assigns, the true and lawful attorney of Seller, but for and on behalf of and for Buyer's benefit, to file such proofs of loss and to process all claims thereon. Seller further agrees to notify said insurance company of the sale and transfer of the Contracts to Buyer immediately after the date such Contracts are delivered to the Buyer, and agrees to cooperate with Buyer in processing any claims or proof of loss in connection with such insurance policies or certificates, all as may be required. The parties hereto agree that in the event of any cancellation or termination of any policies of insurance by reason of prepayment, renewal, or otherwise, as a result of which a rebate of the prepaid insurance premium is required to be made, that Buyer will make the rebate of such premium from its own funds and credit the account of the individual insured obligor for such amount. Immediately upon submission to Seller of proof of a cancellation or termination, Seller shall pay and remit to Buyer the full amount of the subject rebate of prepaid insurance premium Buyer credited to the account of the individual insured obligor.

## PARAGRAPH XIV

The parties hereto agree that the original or duplicate original of this Agreement may be microfilmed and a photo copy of such microfilm or original may be introduced in lieu of the original or duplicate original hereof and without further foundation. The parties hereto expressly waive the Secondary Evidence Rule.

## PARAGRAPH XV

Each party hereto assumes responsibility for any and all commissions it may have incurred as a result of this sale.

TRUSTEE000752^Auto Contracts Purchase Agreement-6 14 2007.doc – Page 7

## PARAGRAPH XVI

Buyer covenants to Seller, that it will use the Limited Power of Attorney delivered to Buyer pursuant to Paragraph VI hereof only in connection with the pre-payment of the origination fees as to the Contracts purchased by Buyer pursuant hereto.

## PARAGRAPH XVII

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. Buyer and Seller covenant and agree that any action institiued to enforce or interpret any of the terms and/or conditions of this Agreement shall be brought in a federal or state court of competent jurisdiction located in Cherokee County, Georgia and Buyer and Seller hereby willingly agree to submit to said court's venue and jurisdiction. Seller hereby waives any right it may have to a trial by jury.

## PARAGRAPH XVIII

In the event of a breach of any of the terms or conditions of this Agreement by either party, if a suit at law or equity is instituted, the prevailing party shall be entitled to reasonable attorneys' fees and costs and expenses incurred with respect thereto.

## PARAGRAPH XIX

Neither party to this Agreement will make any public announcement of this transaction without prior written approval of the other, which approval shall not be unreasonably withheld.

## PARAGRAPH XX

Any notice to be given or other documents to be delivered by any party to the other party may be delivered in person to such party, or may be deposited in the United States mail, duly certified, with postage thereon fully prepaid and addressed to the party for whom intended at the address shown at the beginning of this Agreement. Any party to this Agreement may from time to time by written notice to the other, designate a different address which shall be substituted for the one above.

## PARAGRAPH XXI

The provisions of this Agreement are binding upon and shall inure to the benefit of the respective successors and assigns of both parties hereto.

## PARAGRAPH XXII

TRUSTEE000752^Auto Contracts Purchase Agreement-6 14 2007.doc – Page 8

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 74 of 104

It is understood and agreed to by the parties to this Agreement that subject to the terms herein, Buyer's purchase of the Contracts is without recourse as to Seller's repurchase of the Contracts except for the representations, warranties, and covenants set forth in this Agreement.

## PARAGRAPH XXIII

Any references to Schedules in this Agreement, refer to Schedules attached to this Agreement, and such Schedules are incorporated herein by reference.  The singular includes the plural where applicable unless otherwise expressly stated.

## PARAGRAPH XXIV

Synergy Acceptance Corp., for the consideration of discounted fee previously mentioned, agrees to service all the loans which have been pre-purchased under this Agreement by American Pegasus Auto Loan Fund to the end of the terms of the pre-purchased Contracts or the sale of the Contracts.  Servicing of the loans includes, and is not limited to, collections of payments, sale of loan portfolios, repossession of contracts in default, sale of repossessed automobiles, and insurance claims.  American Pegasus Auto Loan Fund agrees to pay all fees in connection with defaulted Contracts and the reconditioning of automobiles repossessed.   Recondition of repossessed vehicles will be at the sole discretion of Synergy Acceptance Corp.  American Pegasus Auto Loan Fund also herewith agrees to pay all fees related to forced-placed insurance.

IN WITNESS WHEREOF,  the parties first listed above have caused this Agreement to be duly executed by persons who are authorized by the parties to enter into this Agreement this _____ day of _____, 2007.

| For Seller: | For Buyer: |
|---|---|
| SYNERGY ACCEPTANCE CORP. | AMERICAN PEGASUS AUTO LOAN FUND SP |
| BY:_____ | BY: _____ |
| ITS:_____ | ITS: _____ |

TRUSTEE000752^Auto Contracts Purchase Agreement-6 14 2007.doc – Page 9

| | |
|---|---|
| Witness: _____ | Witness: _____ |

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 76 of 104

**Auto Contracts Pre-Purchase Loan Origination Fees Agreement**

THIS AGREEMENT, made June 22, 2007, by and between American Pegasus Auto Loan Fund SP, Curacao, Netherlands Antilles as "Buyer" and Synergy Acceptance Corp., a Georgia Corporation, located at 200 North Street, Canton, GA 30114, and all persons, whether corporate or individual, who have executed this agreement (the "Agreement"), as "Seller".

<u>**RECITALS**</u>

WHEREAS, Seller wishes to sell to Buyer and Buyer wishes to buy from Seller installment sales contracts (the "Contracts") over the course of calendar year 2007 and 2008 and wishes to prepay Seller the loan origination fees in return for which Seller will give Buyer a 10% discount from Seller's usual and customary price (customary price is 4.5% of the principal balance of the Contracts) thereby permitting Buyer to pay 4.05% of the principal balance of the Contracts as to such loan origination fees; and

WHEREAS, the parties hereto agree that "Contracts" includes all security agreements, conditional sales contracts, commercial documents, other instruments, property rights and all additional rights, including but not limited to all rights Dealer Agreements with respect to the Contracts and security of every kind and nature pertaining to the Contracts.

NOW, THEREFORE, in consideration of the mutual promised and covenants contained herein, it hereby agreed by the parties hereto that:

**PARAGRAPH ONE**

Seller hereby agrees to sell to Buyer, its successors and assigns, during calendar year 2007 and 2008, Contracts which have a total Principal Value of US$148,148,148.

**PARAGRAPH TWO**

The purchase price to be paid by Buyer to Seller for the prepayment of the Contracts is Six Million Dollars (US$6,000,000). In the event of any error in computation in arriving at the purchase price or in the final accounting, the party benefiting from the error shall reimburse the other for any sum due thereunder upon submission of satisfactory evidence of such error.

**PARAGRAPH THREE**

a) With respect to each Contract, Seller hereby represents, warrants and covenants unto Buyer as follows:

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 77 of 104

1. Buyer, upon acquisition of the Contracts from Seller will be the lawful owner thereof, free and clear of all claims, liens or encumbrances, whatsoever.
2. Each Contract will be valid and existing as of the time of delivery, will be an unconditional obligation of the obligor thereof and free of all defenses, real or alleged, whether in law or equity; and all persons and/or entities executing the Contracts will have had authority and capacity to so contract.
3. Each Contract will comply with all applicable legal requirements of federal, state, and municipal governments or agencies thereof, including the Federal Truth in Lending Act, the Federal Fair Credit Reporting Act, the Federal Equal Credit Opportunity Act, and all Federal Trade Commission administrative regulations, rules and in conformance with any other rules or regulations adopted by the Federal Trade Commission during calendar year 2007.
4. Neither Seller nor any of its agents or employees will in any manner have been guilty of any civil or criminal fraud or misrepresentation with respect to the creation or servicing of the Contracts or the transfer or assignment to Buyer.
5. None of the credit relating to any of the Contracts will be of a gratuitous nature or will be given in consideration other than for payment or money will be given for a payment made by any corporate parent, affiliate or subsidiary, or by any employee or agent of Seller or its predecessor-in-interest or any prior holder thereof; and no Contract will arise from any renewal granted for the purpose of concealing a contractual delinquency.
6. None of the buyers, obligors, endorsers, sureties, or guarantors named in the Contracts will be deceased, the subject of any current proceeding in bankruptcy, or identified as a Specially Designated Person by the Office of Foreign Assets Control of the U.S. Department of Justice.
7. The creation, servicing, and sale of the Contracts will comply with all applicable state and federal consumer credit, motor vehicle sales, financing, auto dealer and consumer protection statutes and regulations promulgated thereunder as well as all other laws, regulations, and rules pertaining to the type of character of contract agreements and transactions represented by the Contracts.
8. Seller or its predecessor-in-interest, or their agents or affiliated agents, will have registered all vehicles described in the Contracts in compliance with the vehicle laws of the state in which the respective obligor resides, showing the obligor as registered owner and Seller as first perfected lien-holder (secured party).

TRUSTEE000753^Auto Contracts Purchase Agreement-6 15 2007.doc – Page 2

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 78 of 104

9. To the best of Seller's knowledge, each vehicle to be financed under the Contracts will be covered by comprehensive and collision insurance, protecting Buyer's interest in the vehicle, and will be in a form and amount acceptable to Buyer.
10. All goods and services included in the Contracts will be free from defects and will have been installed, delivered, and accepted by the subject obligor.
11. The descriptions of the vehicles, goods and services, in the Contracts will be true, accurate, and complete.
12. Each obligor's name in the Contracts will be bona fide. Each obligor will have had the legal capacity to enter into a Contract and each obligor's signature on each Contract will be genuine.
13. The down payment shown in the Contracts will have been made in cash or its equivalent trade-in-value by the obligor and no part of the down payment shown in the Contracts will have been lent to the obligor, directly or indirectly, by Seller, its predecessor-in-interest or any of their agents and affiliates.
14. The obligor under each Contract will have no right to rescind the purchase of the goods and services that are the subject of the Contract and will have made no attempt to rescind.
15. The Contracts will represent a consumer purpose credit sale of a motor vehicle.
16. The obligor's price paid for each vehicle and for any other goods or services sold in connection with the sale of any vehicle and so purchased under the Contracts will not in any manner have been increased to recoup, adjust or compensate for any dealer discounts charged by anyone, including Seller.
17. Neither Seller, nor any of its agents or employees will have any reason to believe that as of the date of each of the Contracts that the odometer reading on the related vehicle is inaccurate.
18. All legally required notices regarding the Contracts including, but not limited to, notices of all prior incidences of the subject vehicle's involvement in traffic or other accidents, the vehicle's prior use or physical damage, including flood damage, to the vehicle will have been provided to the respective obligor.
19. Seller acknowledges that Buyer will rely upon information appearing in the Contracts, the records of Seller for each Contract, and upon other pertinent records maintained by or under the control of Seller and to be delivered to Buyer and, in the light of such acknowledgment Seller specifically warrants that each item of information contained in and appearing upon said records and documents will accurately and truthfully reflects the true status of the Contracts and indebtedness to which said records and documents are related.

TRUSTEE000753^Auto Contracts Purchase Agreement-6 15 2007.doc – Page 3

20. Notwithstanding any other provision hereof, Seller warrants that each Contract will be secured by a valid and legal perfected first lien upon the collateral described therein unless a different type or rank of lien is described in specific detail upon Seller's Payment History Ledger Card.

21. Nothwithstanding any other representations, warranties, or covenants herein, Seller covenants that as of the delivery date of each Contract, Buyer shall have received all of the respective obligor's scheduled payments on each Contract that are due and payable as of such delivery date. Seller further agrees that any payments received by Seller from the Contracts from and after the delivery date shall be turned over immediately to Buyer in the form of received or certified funds.

22. Seller will not take any action and will refrain from taking any action that would cause or tend to cause repossession from Buyer, or otherwise sell another vehicle to any previous obligor that will result in repossession from Buyer.

(b) It is hereby acknowledged that the Buyer shall have relied upon the representations and warranties expressed herein irrespective of any inspection or knowledge on its part of anything inconsistent with such representations and warranties. The representations and warranties contained herein shall survive the purchase of the Contracts and shall expire only upon the retirement of all the Contracts and expiration of all applicable statutes of limitations to any cause of action arising out of, or related to, the Contracts. For this purpose, the Contracts will not be deemed retired or paid in full if refinanced by Buyer or an affiliate or paid out of the proceeds of a new extension of credit from Buyer or an affiliate to the obligor, whether or not a new cash advance is made by Buyer or affiliate.

## PARAGRAPH IV

a) In the event any representation, warranty, or covenant made by Seller is incorrect in any material respect, Seller shall, no later than thirty (30) days after receiving a written notice from Buyer specifying the particular defect, pay Buyer in lawful money of the United States of America, the of the unpaid Principal Balance of such Contract as originally determined at the time of purchase. Upon payment by Seller to Buyer for such Contract, Buyer shall reassign and set the Contract over to Seller without recourse in recordable form.

b) Seller's obligation to repurchase as set forth in this Paragraph shall not be affected by any modification by Buyer of the terms of any Contract sold to Buyer, including any extension of the time payment deemed desirable by Buyer, any release or addition of any obligor, any release of substitution of collateral, with or without notice to Seller. Seller hereby waives presentment of any of said Contracts, demand of payment, protest, and notice of nonpayment or protest thereof.

TRUSTEE000753^Auto Contracts Purchase Agreement-6 15 2007.doc – Page 4

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 80 of 104

c) Seller further waives any right to require Buyer to: (1) Proceed against any person; (2) Proceed against or exhaust any rights under the receivables as to the Contracts; or (3) pursue any other remedy in Buyer's power as against any other persons or property.

d) Seller shall also defend and hold Buyer harmless from any claims, liabilities, causes of action, and judgments arising out of, resulting from, or concerning any of the matters covered by the foregoing representations or warranties.

## PARAGRAPH V

The closing of this transaction shall occur on the Closing Date, at an hour to be mutually agreed upon, and such Closing Date shall occur on June 22, 2007 or such other date as may be mutually agreed upon. At the closing, when Seller buyer will cause to be delivered to Seller, or its order, the full amount of the pre-payment of loan origination price, except as otherwise provided for herein.

## PARAGRAPH VI

Seller shall do the following at the time of closing this purchase or at the time of the future delivery with respect to all Contracts:

1. Execute and deliver as part of this Agreement, a Limited Power of Attorney appointing Buyer to act as Seller's agent and attorney as therein stated, which Limited Power of Attorney is attached to this Agreement and made a part hereof.
2. Deliver to Buyer the original Contracts and all files and records relating to each Contract.
3. Seller agrees to furnish Buyer with, prior to or at the closing or at the time of delivery of any Contract, certified resolutions of its directors and consent of its stockholders, in form and in substance acceptable to Buyer, authorizing Seller to enter into the Agreement.

## PARAGRAPH VII

Seller agrees to repurchase each unverified Contract upon notice from Buyer that a Contract cannot be verified. The verification of a Contract shall consist of an acknowledgment by a person named as an obligor on the Contract which states that such person is indebted according to the Contract to the extent of the outstanding balance reflected on Seller's records, and the receipt of ONE FULL MONTH'S SCHEDULED PAYMENTS (or the contractual equivalent of one month's worth of payments) from an obligor on such contract by Buyer. Such acknowledgment and payment must be received by Buyer within thirty (30) days from the date of purchase of the Contracts. Buyer agrees to use reasonable efforts to verify the Contracts. Seller

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 81 of 104

agrees to repurchase any unverified Contract at the same percentage Buyer paid therefore. Buyer's right to demand repurchase of any unverified Contract on the sole grounds that the Contract is unverified shall expire thirty (30) days from the date of this Agreement. However, nothing in this Paragraph shall affect, modify, replace, or abrogate any rights Buyer may have and any obligations Seller may have pursuant to Seller's other representations, warranties, and covenants herein. In the event Seller must repurchase an account from Buyer pursuant to the terms of this Paragraph, Seller shall repurchase said account within ten (10) business days of Seller's receipt of Buyer's written demand to repurchase such account.

## PARAGRAPH VIII

If any vehicle securing a Contract has been equipped with a starter interrupt device, GPS device, or other electronic device designed to aid in the location or repossession of the vehicle ("Device"), Seller assigns to Buyer the Device, all of Seller's rights in connection with the Device and all codes and/or software necessary to administer the Device. Seller understands and agrees that Buyer may administer such Device in accordance with the related Contract and in accordance with applicable law, and may remove the Device from the obligor's vehicle upon payment in full of the related Contract or upon repossession of the vehicle securing the related Contract. Alternatively, Buyer may direct Seller to administer the Device on Buyer's behalf. In such event, Seller unconditionally agrees not to activate any Device (thereby disabling said vehicle) unless directed to do so by Buyer in writing, or unless the related Contract has been reassigned in writing to Seller by Buyer. Seller agrees to give a customer as to any Contract, all necessary codes or service to prevent the activation of Devices, unless directed otherwise in writing by Buyer.

## PARAGRAPH IX

It is expressly agreed that Buyer is simply prepaying and therefore buying Contracts in the amount of the prepayment, and unless otherwise specifically provided for herein or in the Contracts, does not assume or incur any obligation or liability whatsoever of Seller which is in any way involved, either directly or indirectly, with the operation of Seller of its business or to which Seller may have become a party or liable by reason of its business or by the terms of the Contracts or with respect to the goods and services being purchased thereunder (except to release the security interest in the collateral when a Contract is paid in full). Seller hereby agrees to defend and hold Buyer harmless from any such liability and from any liability arising from the inclusion in the Contracts of the provision on assignee liability arising from the Federal Trade Commission Preservation of Consumer claims and Defenses Trade Regulation Rule.

## PARAGRAPH X

TRUSTEE000753^Auto Contracts Purchase Agreement-6 15 2007.doc – Page 6

Seller covenants and agrees with Buyer that Seller will not disclose or furnish or permit or authorize the disclosure or furnishing of the name of any customers or obligors on the Contracts to any person, firm, or corporation whatsoever, other than to the Buyer or Buyer's affiliates, except to the extent required by law.

## PARAGRAPH XI

Seller shall, upon Buyer's request, executed, and deliver to Buyer any instruments or documents, and do all things reasonably necessary and advisable to effect the provisions of this Agreement and to facilitate the collection of the Contracts, including the execution of separate endorsements and assignments and powers of attorney.

## PARAGRAPH XII

The obligations, warranties, and covenants of Seller shall be joint and several.

## PARAGRAPH XIII

Seller represents that policies or certificates of credit life, credit disability, property insurance, service contracts, and mechanical breakdown insurance will have been issued on the Contracts when indicated on the Contracts, that such policies or certificates will have been issued by the companies identified on the Contracts, and Seller hereby sells, transfers, assigns, sets over and delivers to Buyer all rights, title, and interest in and to each of said policies, contracts, or insurance as a creditor, beneficiary or otherwise, and hereby constitutes and appoints Buyer, its agents, successors, and assigns, the true and lawful attorney of Seller, but for and on behalf of and for Buyer's benefit, to file such proofs of loss and to process all claims thereon. Seller further agrees to notify said insurance company of the sale and transfer of the Contracts to Buyer immediately after the date such Contracts are delivered to the Buyer, and agrees to cooperate with Buyer in processing any claims or proof of loss in connection with such insurance policies or certificates, all as may be required. The parties hereto agree that in the event of any cancellation or termination of any policies of insurance by reason of prepayment, renewal, or otherwise, as a result of which a rebate of the prepaid insurance premium is required to be made, that Buyer will make the rebate of such premium from its own funds and credit the account of the individual insured obligor for such amount. Immediately upon submission to Seller of proof of a cancellation or termination, Seller shall pay and remit to Buyer the full amount of the subject rebate of prepaid insurance premium Buyer credited to the account of the individual insured obligor.

## PARAGRAPH XIV

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 83 of 104

The parties hereto agree that the original or duplicate original of this Agreement may be microfilmed and a photo copy of such microfilm or original may be introduced in lieu of the original or duplicate original hereof and without further foundation. The parties hereto expressly waive the Secondary Evidence Rule.

## PARAGRAPH XV

Each party hereto assumes responsibility for any and all commissions it may have incurred as a result of this sale.

## PARAGRAPH XVI

Buyer covenants to Seller, that it will use the Limited Power of Attorney delivered to Buyer pursuant to Paragraph VI hereof only in connection with the pre-payment of the origination fees as to the Contracts purchased by Buyer pursuant hereto.

## PARAGRAPH XVII

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. Buyer and Seller covenant and agree that any action instititued to enforce or interpret any of the terms and/or conditions of this Agreement shall be brought in a federal or state court of competent jurisdiction located in Cherokee County, Georgia and Buyer and Seller hereby willingly agree to submit to said court's venue and jurisdiction. Seller hereby waives any right it may have to a trial by jury.

## PARAGRAPH XVIII

In the event of a breach of any of the terms or conditions of this Agreement by either party, if a suit at law or equity is instituted, the prevailing party shall be entitled to reasonable attorneys' fees and costs and expenses incurred with respect thereto.

## PARAGRAPH XIX

Neither party to this Agreement will make any public announcement of this transaction without prior written approval of the other, which approval shall not be unreasonably withheld.

## PARAGRAPH XX

Any notice to be given or other documents to be delivered by any party to the other party may be delivered in person to such party, or may be deposited in the United States mail, duly certified, with postage thereon fully prepaid and addressed to the party for whom intended at the address shown at the beginning of this Agreement. Any party

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 84 of 104

to this Agreement may from time to time by written notice to the other, designate a different address which shall be substituted for the one above.

## PARAGRAPH XXI

The provisions of this Agreement are binding upon and shall inure to the benefit of the respective successors and assigns of both parties hereto.

## PARAGRAPH XXII

It is understood and agreed to by the parties to this Agreement that subject to the terms herein, Buyer's purchase of the Contracts is without recourse as to Seller's repurchase of the Contracts except for the representations, warranties, and covenants set forth in this Agreement.

## PARAGRAPH XXIII

Any references to Schedules in this Agreement, refer to Schedules attached to this Agreement, and such Schedules are incorporated herein by reference.  The singular includes the plural where applicable unless otherwise expressly stated.

## PARAGRAPH XXIV

Synergy Acceptance Corp., for the consideration of discounted fee previously mentioned, agrees to service all the loans which have been pre-purchased under this Agreement by American Pegasus Auto Loan Fund to the end of the terms of the pre-purchased Contracts or the sale of the Contracts.  Servicing of the loans includes, and is not limited to, collections of payments, sale of loan portfolios, repossession of contracts in default, sale of repossessed automobiles, and insurance claims.  American Pegasus Auto Loan Fund agrees to pay all fees in connection with defaulted Contracts and the reconditioning of automobiles repossessed.  Recondition of repossessed vehicles will be at the sole discretion of Synergy Acceptance Corp.  American Pegasus Auto Loan Fund also herewith agrees to pay all fees related to forced-placed insurance.

IN WITNESS WHEREOF,  the parties first listed above have caused this Agreement to be duly executed by persons who are authorized by the parties to enter into this Agreement this 22nd day of June 2007.

| For Seller: | For Buyer: |
|---|---|

TRUSTEE000753^Auto Contracts Purchase Agreement-6 15 2007.doc – Page 9

| | |
|---|---|
| SYNERGY ACCEPTANCE CORP. | AMERICAN PEGASUS AUTO LOAN FUND SP |
| BY:_____ | BY: _____ |
| ITS:_____ | ITS: _____ |
| Witness: _____ | Witness: _____ |

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 86 of 104

American Pegasus Auto Loan Fund SP
Synergy Acceptance Corp
Servicing Fee Structure Agreement



# SERVICING FEE STRUCTURE AGREEMENT

    1.  SERVICER warrants to CLIENT that it will keep a complete, accurate and separate account of and properly apply all sums collected by it from the said debtors in all deficiency balance accounts.

    2. CLIENT agrees to pay SERVICER a $40.00 placement fee per account assigned to SERVICER for collections. No collection activity including skip tracing, telephone collections and employment locating will take place until placement fees are paid to SERVICER in full.

    3. CLIENT will advance 100% of fees necessary to proceed with action against debtor. SERVICER will not prepare or file any cases until the CLIENT remits 100% of required fees due.

    4. All collection costs including court costs, attorney fees, collector fees, and skip tracing fees will be the responsibility of the CLIENT and recovered from first payments received on an account by account basis.

    5.  SERVICER agrees to provide debt collection services on all deficiency balance accounts for a contingency fee of 40% to be retained by SERVICER after all fees advanced by CLIENT are recovered from payments received.

    6.  SERVICER warrants that funds due to CLIENT will be remitted to the CLIENT no later than the (30th) day of each month for the previous month's collection proceeds are posted.

    7. SERVICER agrees that all payments received in connection with the accounts assigned for collection will be deposited in its standard collection account and shall maintain at all times proper accounting of CLIENTS funds in such account.

    8. In the event the CLIENT fails to receive any remittance on a timely basis and CLIENT provides written notice of such failure, SERVICER agrees to remit a duplicate check to CLIENT via overnight delivery.

    9. This servicing agreement for deficiency balance accounts is effective as of June 1, 2010.

Execution page to follow.

TRUSTEE005298^Agreement_Servicing Fee Structure Agreement - Page 1

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 87 of 104

American Pegasus Auto Loan Fund SP
Synergy Acceptance Corp
Servicing Fee Structure Agreement

Agreed to by:

SERVICER
Synergy Acceptance Corp

_____
Benjamin Chui, President
Date:  9/30/2010

CLIENT
American Pegasus Auto Loan Fund, SP

_____
Triffany Mok, Portfolio Manager
Date:  09/30/2010

TRUSTEE005298^Agreement_Servicing Fee Structure Agreement - Page 2

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 88 of 104

## SERVICING FEE STRUCTURE AGREEMENT

1. SERVICER warrants to CLIENT that it will keep a complete, accurate and separate account of and properly apply all sums collected by it from the said debtors in all deficiency balance accounts.

2. CLIENT agrees to pay SERVICER a $40.00 placement fee per account assigned to SERVICER for collections. No collection activity including skip tracing, telephone collections and employment locating will take place until placement fees are paid to SERVICER in full.

3. CLIENT will advance 100% of fees necessary to proceed with action against debtor. SERVICER will not prepare or file any cases until the CLIENT remits 100% of required fees due.

4. All collection costs including court costs, attorney fees, collector fees, and skip tracing fees will be the responsibility of the CLIENT and recovered from first payments received on an account by account basis.

5. SERVICER agrees to provide debt collection services on all deficiency balance accounts for a contingency fee of 40% to be retained by SERVICER after all fees advanced by CLIENT are recovered from payments received.

6. SERVICER warrants that funds due to CLIENT will be remitted to the CLIENT no later than the (30th) day of each month for the previous month's collection proceeds are posted.

7. SERVICER agrees that all payments received in connection with the accounts assigned for collection will be deposited in its standard collection account and shall maintain at all times proper accounting of CLIENTS funds in such account.

8. In the event the CLIENT fails to receive any remittance on a timely basis and CLIENT provides written notice of such failure, SERVICER agrees to remit a duplicate check to CLIENT via overnight delivery.

9. This servicing agreement for deficiency balance accounts is effective as of June 1, 2010.

Execution page to follow.

TRUSTEE005385^Servicing Fee Structure Agreement - Page 1

Case: 12-03156     Doc# 227     Filed: 04/24/14     Entered: 04/24/14 16:46:00     Page 89 of 104

American Pegasus Auto Loan Fund SP
Synergy Acceptance Corp
Servicing Fee Structure Agreement

Agreed to by:

SERVICER
Synergy Acceptance Corp

_____
Benjamin Chui, President
Date: 9/30/2010

CLIENT
American Pegasus Auto Loan Fund, SP

_____
Triffany Mok, Portfolio Manager
Date: 09/30/2010

TRUSTEE005385^Servicing Fee Structure Agreement - Page 2

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 90 of 104

# Bank of North Georgia
**Member FDIC**

P O Box 1407 • Alpharetta, GA 30009

## Statement of Account

Last statement: **September 30, 2007**
This statement: **October 31, 2007**
Total days in statement period: **31**
010-001-108-9      031      286
Page 1 of 79

EXHIBIT

N

SYNERGY ACCEPTANCE CORP.
~~SYNERGY CUBE ACCOUNT~~
110 LONDONDERRY CT SUITE 136
WOODSTOCK GA 30188

Direct inquiries to:
770-576-4471

## Summary of Account Balance

| Account | Number | Ending Balance |
|---|---|---|
| Commercial Checking | 010-001-108-9 | $1,145,623.44 |

## Commercial Checking        Account Number 010-001-108-9      781 Enclosures

| | | | |
|---|---|---|---|
| Beginning balance | 468,706.18 | | |
| Deposits/Credits | 8,393,799.64 | Low balance | 23,379.04 |
| Withdrawals/Debits | 7,716,882.38 | Average balance | 1,590,548.68 |
| Ending balance | 1,145,623.44 | Average collected balance | 1,588,747.00 |

### Checks

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 17515 | 10-15 | 300.00 | 29095 | 10-11 | 14,217.00 |
| 25106 * | 10-12 | 74.50 | 29099 * | 10-10 | 6,816.00 |
| 25139 * | 10-16 | 105.17 | 29101 * | 10-09 | 9,946.00 |
| 25169 * | 10-18 | 6,156.00 | 29118 * | 10-01 | 2,385.50 |
| 25252 * | 10-05 | 9,607.00 | 29165 * | 10-04 | 10,768.00 |
| 25506 * | 10-11 | 500.00 | 29175 * | 10-11 | 8,157.00 |
| 25594 * | 10-19 | 9,270.00 | 29188 * | 10-01 | 10,152.00 |
| 25719 * | 10-01 | 200.00 | 29189 | 10-01 | 5,794.00 |
| 25735 * | 10-04 | 10,323.00 | 29196 * | 10-01 | 6,345.00 |
| 25765 * | 10-11 | 5,973.00 | 29201 * | 10-01 | 9,584.00 |
| 25798 * | 10-04 | 9,175.00 | 29206 * | 10-02 | 4,261.00 |
| 25809 * | 10-11 | 5,143.00 | 29214 * | 10-02 | 9,781.00 |
| 25814 * | 10-01 | 7,980.00 | 29215 | 10-11 | 11,073.00 |
| 25898 * | 10-02 | 95.97 | 29216 | 10-04 | 5,630.00 |
| 25906 * | 10-02 | 7,767.00 | 29218 * | 10-05 | 7,493.00 |
| 25935 * | 10-19 | 7,699.00 | 29220 * | 10-04 | 5,766.00 |
| 25946 * | 10-11 | 7,661.00 | 29224 * | 10-05 | 9,052.00 |
| 25955 * | 10-05 | 9,492.00 | 29228 * | 10-02 | 7,736.00 |
| 25988 * | 10-01 | 5,204.00 | 29237 * | 10-01 | 600.00 |
| 28859 * | 10-10 | 7,176.00 | 29238 | 10-05 | 40.00 |
| 29015 * | 10-19 | 6,983.00 | 29245 * | 10-05 | 10,028.00 |
| 29045 * | 10-10 | 69.00 | 29250 * | 10-04 | 7,293.00 |
| 29065 * | 10-01 | 400.00 | 29259 * | 10-02 | 243.90 |
| 29066 | 10-16 | 100.00 | 29269 * | 10-01 | 17.47 |
| 29091 * | 10-19 | 5,809.00 | 29270 | 10-01 | 3,413.85 |
| 29093 * | | 3,785.00 | 29271 | | 663.00 |

## Checks and Debits Outstanding

| Check No. | Amount |
|-----------|--------|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total** | |

**Follow these easy steps to reconcile your checkbook to the "Ending Balance" shown on the front of this statement:**

Balance ........................................ $ _____

Add (+)

Deposits not shown on this statement (if any) $ _____

Subtract (-)

Checks and other debits still outstanding $ _____

Balance $ _____

---

**If your account does not balance ...**

* Have you added ...
* Have you correctly ...
* Do all checks and other debits ... appear on this statement? Are all withdrawals that you have marked as paid?
* Have all deposits been added to your checkbook record and do the amounts agree ...
* Have you carried the correct figures ...
* Are you sure that all items you have added or subtracted are not on this statement ...

**Electronic Fund Transfers Preauthorized Credits**

If you have arranged ...

**Electronic Fund Transfer Disclosure**

**In case of errors or questions about your electronic transfers:**

If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, please telephone us at the number or write us at the address indicated on the reverse side of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem is indicated.

(1) Tell us your name and account number.

(2) Describe the error or the transfer you are unsure about. Explain as clearly as you can why you believe there is an error or why you need more information.

(3) Tell us the dollar amount of the suspected error. We will investigate your complaint and will correct any error promptly. For Consumer-Personal accounts if we take more than 10 business days to do this, we will recredit your account for the

---

**Order of Payments**

We may pay any order in determining ...

**Billing Rights Summary**
**(Personal Reserve Account Only)**

**In case of errors or questions about your statement:**

If you think your statement is wrong or if you need more information about a transaction on the statement, write us at the address indicated on the reverse side as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- Describe the error and explain as clearly as you can why you believe there is an error. If you need more information, describe the item you are unsure about.
- Tell us the dollar amount of the suspected error.

You do not have to pay any amount in question while we are investigating, but are still obligated to pay the parts of your account that are not in question. While we investigate, we cannot report you as delinquent or take any action to collect the amount you question.

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 92 of 104


**Bank of North Georgia**
Member FDIC
P O Box 1407 • Alpharetta, GA 30009

October 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount | | Number | Date | Amount |
|---|---|---|---|---|---|---|
| 29290 * | 10-02 | 11,049.00 | | 29432 | 10-01 | 579.00 |
| 29294 * | 10-02 | 5,791.00 | | 29433 | 10-01 | 668.00 |
| 29296 * | 10-04 | 3,770.00 | | 29434 | 10-11 | 13,481.00 |
| 29299 * | 10-29 | 200.00 | | 29439 * | 10-10 | 12,549.00 |
| 29303 * | 10-01 | 400.00 | | 29441 * | 10-01 | 8,994.00 |
| 29307 * | 10-01 | 1,100.00 | | 29444 * | 10-04 | 15,467.00 |
| 29323 * | 10-12 | 50.00 | | 29450 * | 10-15 | 360.00 |
| 29325 * | 10-09 | 40.00 | | 29459 * | 10-03 | 797.00 |
| 29326 | 10-01 | 40.00 | | 29462 * | 10-01 | 5,019.00 |
| 29327 | 10-01 | 458.45 | | 29464 * | 10-04 | 11,304.00 |
| 29329 * | 10-05 | 50,000.00 | | 29465 | 10-15 | 7,205.00 |
| 29337 * | 10-10 | 8,428.00 | | 29467 * | 10-01 | 8,345.00 |
| 29342 * | 10-02 | 8,412.00 | | 29468 | 10-01 | 6,880.00 |
| 29345 * | 10-01 | 9,946.00 | | 29471 * | 10-04 | 4,240.00 |
| 29348 * | 10-04 | 9,231.00 | | 29478 * | 10-04 | 671.50 |
| 29350 * | 10-02 | 3,803.00 | | 29479 | 10-04 | 2,383.75 |
| 29353 * | 10-02 | 4,955.00 | | 29480 | 10-01 | 895.00 |
| 29357 * | 10-09 | 6,847.00 | | 29482 * | 10-04 | 8,825.00 |
| 29364 * | 10-04 | 6,498.00 | | 29483 | 10-01 | 7,456.00 |
| 29375 * | 10-15 | 6,222.00 | | 29484 | 10-02 | 8,071.00 |
| 29382 * | 10-03 | 15,080.00 | | 29485 | 10-09 | 4,460.00 |
| 29388 * | 10-02 | 46.62 | | 29487 * | 10-11 | 9,822.00 |
| 29391 * | 10-01 | 1,562.49 | | 29488 | 10-12 | 8,188.00 |
| 29392 | 10-04 | 250.52 | | 29489 | 10-09 | 7,663.00 |
| 29393 | 10-01 | 750.00 | | 29490 | 10-04 | 8,337.00 |
| 29394 | 10-04 | 330.92 | | 29494 * | 10-04 | 2,152.75 |
| 29396 * | 10-03 | 750.00 | | 29498 * | 10-12 | 112.44 |
| 29398 * | 10-02 | 395.83 | | 29499 | 10-11 | 9,919.00 |
| 29399 | 10-03 | 562.50 | | 29500 | 10-12 | 11,806.00 |
| 29400 | 10-03 | 1,200.00 | | 29501 | 10-10 | 8,567.00 |
| 29401 | 10-02 | 208.33 | | 29502 | 10-12 | 6,618.00 |
| 29402 | 10-04 | 250.00 | | 29503 | 10-10 | 2,280.50 |
| 29403 | 10-04 | 166.67 | | 29504 | 10-12 | 9,995.00 |
| 29404 | 10-01 | 1,102.29 | | 29505 | 10-11 | 8,222.00 |
| 29405 | 10-03 | 1,197.92 | | 29506 | 10-10 | 4,905.00 |
| 29406 | 10-03 | 360.00 | | 29507 | 10-17 | 1,953.11 |
| 29407 | 10-01 | 641.67 | | 29508 | 10-12 | 130.00 |
| 29408 | 10-02 | 208.33 | | 29512 * | 10-23 | 310.00 |
| 29409 | 10-04 | 218.75 | | 29513 | 10-11 | 3,613.82 |
| 29410 | 10-02 | 375.00 | | 29514 | 10-15 | 125.00 |
| 29412 * | 10-03 | 208.33 | | 29515 | 10-15 | 1,291.04 |
| 29414 * | 10-02 | 725.00 | | 29517 * | 10-11 | 15,600.15 |
| 29415 | 10-05 | 187.50 | | 29518 | 10-15 | 17,097.98 |
| 29416 | 10-09 | 1,250.00 | | 29519 | 10-11 | 12,440.54 |
| 29417 | 10-02 | 1,256.25 | | 29520 | 10-15 | 13,599.00 |
| 29418 | 10-03 | 395.83 | | 29521 | 10-12 | 5,423.00 |
| 29419 | 10-16 | 75.00 | | 29522 | 10-11 | 11,906.00 |
| 29420 | 10-16 | 205.83 | | 29523 | 10-11 | 11,130.00 |
| 29421 | 10-03 | 1,500.00 | | 29524 | 10-11 | 7,058.00 |
| 29429 * | 10-01 | 22,882.49 | | 29525 | 10-12 | 2,080.50 |
| 29430 | 10-01 | 9,997.91 | | 29526 | 10-11 | 7,013.00 |
| 29431 | 10-01 | 61.46 | | 29527 | 10-10 | 7,159.00 |

October 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|---|---|---|
| 29528 | 10-12 | 7,772.00 |
| 29529 | 10-12 | 6,083.00 |
| 29530 | 10-12 | 7,375.00 |
| 29531 | 10-11 | 9,380.00 |
| 29532 | 10-12 | 6,150.00 |
| 29533 | 10-15 | 17,102.98 |
| 29534 | 10-15 | 7,153.10 |
| 29535 | 10-15 | 4,503.19 |
| 29536 | 10-15 | 20,064.80 |
| 29537 | 10-18 | 1,240.00 |
| 29538 | 10-15 | 22,955.29 |
| 29539 | 10-31 | 1,733.25 |
| 29540 | 10-31 | 71.00 |
| 29542 * | 10-11 | 928.11 |
| 29543 | 10-15 | 650.20 |
| 29544 | 10-12 | 749.83 |
| 29546 * | 10-12 | 385.03 |
| 29547 | 10-12 | 150.00 |
| 29548 | 10-16 | 100.00 |
| 29549 | 10-17 | 750.00 |
| 29550 | 10-12 | 500.00 |
| 29551 | 10-19 | 225.00 |
| 29556 * | 10-18 | 141.10 |
| 29557 | 10-15 | 768.00 |
| 29559 * | 10-11 | 14,170.48 |
| 29560 | 10-25 | 2,539.85 |
| 29561 | 10-12 | 2,300.00 |
| 29562 | 10-16 | 3,530.00 |
| 29563 | 10-17 | 2,490.00 |
| 29564 | 10-17 | 1,195.00 |
| 29565 | 10-16 | 240.00 |
| 29566 | 10-15 | 150.00 |
| 29567 | 10-16 | 130.00 |
| 29568 | 10-15 | 150.00 |
| 29569 | 10-12 | 462.60 |
| 29570 | 10-16 | 203.08 |
| 29571 | 10-16 | 353.34 |
| 29572 | 10-16 | 193.76 |
| 29573 | 10-22 | 318.61 |
| 29574 | 10-22 | 27.71 |
| 29575 | 10-19 | 931.11 |
| 29576 | 10-18 | 2,745.98 |
| 29577 | 10-17 | 1,213.61 |
| 29578 | 10-24 | 11.14 |
| 29579 | 10-24 | 466.04 |
| 29581 * | 10-18 | 212.12 |
| 29582 | 10-19 | 1,670.72 |
| 29583 | 10-23 | 4,502.00 |
| 29584 | 10-15 | 12,661.85 |
| 29585 | 10-17 | 672.50 |
| 29586 | 10-19 | 281.28 |
| 29587 | 10-18 | 112.62 |
| 29588 | 10-23 | 50.00 |

| Number | Date | Amount |
|---|---|---|
| 29589 | 10-22 | 26.49 |
| 29590 | 10-15 | 5,000.00 |
| 29591 | 10-19 | 1,200.00 |
| 29592 | 10-15 | 12,069.00 |
| 29593 | 10-15 | 2,255.95 |
| 29594 | 10-15 | 2,893.51 |
| 29595 | 10-15 | 2,765.95 |
| 29596 | 10-15 | 2,627.58 |
| 29597 | 10-15 | 7,064.00 |
| 29598 | 10-17 | 461.00 |
| 29599 | 10-16 | 10,674.00 |
| 29600 | 10-16 | 8,610.00 |
| 29601 | 10-16 | 9,632.00 |
| 29602 | 10-17 | 13,175.00 |
| 29603 | 10-16 | 7,303.00 |
| 29604 | 10-15 | 12,485.00 |
| 29605 | 10-16 | 1,870.00 |
| 29606 | 10-15 | 5,987.00 |
| 29607 | 10-17 | 10,058.00 |
| 29608 | 10-16 | 7,650.00 |
| 29609 | 10-16 | 9,888.00 |
| 29610 | 10-16 | 5,652.00 |
| 29611 | 10-16 | 14,735.00 |
| 29612 | 10-16 | 5,969.00 |
| 29613 | 10-16 | 7,982.00 |
| 29614 | 10-16 | 7,713.00 |
| 29615 | 10-16 | 8,150.00 |
| 29616 | 10-15 | 7,030.00 |
| 29617 | 10-15 | 6,363.00 |
| 29618 | 10-16 | 9,175.00 |
| 29619 | 10-17 | 8,675.00 |
| 29620 | 10-16 | 9,083.00 |
| 29621 | 10-16 | 9,764.00 |
| 29622 | 10-16 | 10,808.00 |
| 29623 | 10-16 | 12,090.00 |
| 29624 | 10-15 | 6,516.00 |
| 29625 | 10-17 | 7,559.00 |
| 29626 | 10-16 | 6,766.00 |
| 29627 | 10-16 | 11,922.00 |
| 29628 | 10-16 | 7,791.00 |
| 29629 | 10-15 | 8,809.00 |
| 29630 | 10-18 | 12,560.00 |
| 29632 * | 10-16 | 7,525.00 |
| 29635 * | 10-16 | 9,055.00 |
| 29637 * | 10-16 | 9,584.00 |
| 29638 | 10-16 | 21,119.00 |
| 29639 | 10-15 | 6,013.00 |
| 29640 | 10-18 | 16,240.00 |
| 29641 | 10-16 | 2,208.25 |
| 29642 | 10-16 | 5,751.00 |
| 29643 | 10-18 | 1,068.00 |
| 29644 | 10-16 | 13,456.73 |
| 29645 | 10-18 | 11,425.00 |

Case: 29587156  10-18 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 94 of
104



**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

October 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|---|---|---|
| 29646 | 10-17 | 1,734.39 |
| 29647 | 10-16 | 200.00 |
| 29648 | 10-15 | 200.00 |
| 29649 | 10-15 | 245.00 |
| 29650 | 10-22 | 40.00 |
| 29651 | 10-19 | 200.00 |
| 29652 | 10-23 | 70.00 |
| 29653 | 10-22 | 150.00 |
| 29654 | 10-22 | 100.00 |
| 29655 | 10-24 | 120.00 |
| 29656 | 10-16 | 157.50 |
| 29657 | 10-15 | 175.00 |
| 29658 | 10-19 | 1,470.33 |
| 29659 | 10-22 | 767.18 |
| 29660 | 10-18 | 302.07 |
| 29661 | 10-18 | 1,030.00 |
| 29662 | 10-16 | 101.51 |
| 29663 | 10-15 | 2,880.00 |
| 29664 | 10-22 | 5,511.46 |
| 29665 | 10-17 | 508.66 |
| 29666 | 10-22 | 3,848.00 |
| 29668 * | 10-17 | 6,621.00 |
| 29669 | 10-17 | 12,274.00 |
| 29670 | 10-17 | 7,865.00 |
| 29672 * | 10-03 | 574.82 |
| 29673 | 10-04 | 395.00 |
| 29674 | 10-03 | 130.00 |
| 29675 | 10-02 | 3,614.60 |
| 29676 | 10-02 | 309.52 |
| 29677 | 10-04 | 18,410.38 |
| 29678 | 10-03 | 203.18 |
| 29679 | 10-03 | 333.70 |
| 29680 | 10-03 | 557.97 |
| 29681 | 10-10 | 59.56 |
| 29682 | 10-01 | 150.00 |
| 29683 | 10-01 | 150.00 |
| 29684 | 10-02 | 80.00 |
| 29685 | 10-04 | 4,149.50 |
| 29687 * | 10-03 | 380.56 |
| 29688 | 10-01 | 192.37 |
| 29689 | 10-02 | 357.79 |
| 29690 | 10-02 | 266.39 |
| 29691 | 10-03 | 137.49 |
| 29692 | 10-04 | 341.54 |
| 29693 | 10-02 | 170.64 |
| 29694 | 10-01 | 2,490.00 |
| 29695 | 10-01 | 8,701.00 |
| 29696 | 10-01 | 3,610.00 |
| 29697 | 10-09 | 248.00 |
| 29698 | 10-02 | 646.98 |
| 29699 | 10-10 | 697.00 |
| 29700 | 10-09 | 10,691.00 |

| Number | Date | Amount |
|---|---|---|
| 29701 | 10-04 | 6,049.00 |
| 29702 | 10-04 | 6,691.00 |
| 29703 | 10-09 | 6,190.00 |
| 29704 | 10-18 | 11,485.00 |
| 29705 | 10-04 | 6,097.00 |
| 29706 | 10-15 | 11,324.00 |
| 29707 | 10-05 | 6,785.00 |
| 29708 | 10-17 | 7,930.00 |
| 29709 | 10-09 | 6,884.00 |
| 29710 | 10-04 | 1,796.50 |
| 29711 | 10-04 | 1,980.25 |
| 29712 | 10-09 | 2,096.36 |
| 29713 | 10-17 | 11,079.00 |
| 29715 * | 10-09 | 8,038.00 |
| 29716 | 10-04 | 12,600.00 |
| 29717 | 10-04 | 8,015.00 |
| 29718 | 10-04 | 9,491.00 |
| 29719 | 10-04 | 849.50 |
| 29720 | 10-09 | 18,809.00 |
| 29721 | 10-09 | 6,010.00 |
| 29722 | 10-03 | 13,992.00 |
| 29723 | 10-09 | 12,808.00 |
| 29724 | 10-16 | 6,798.00 |
| 29725 | 10-05 | 5,718.00 |
| 29726 | 10-04 | 6,535.00 |
| 29727 | 10-17 | 10,861.00 |
| 29728 | 10-16 | 7,772.00 |
| 29729 | 10-09 | 10,208.00 |
| 29730 | 10-10 | 320.88 |
| 29732 * | 10-03 | 2,880.00 |
| 29733 | 10-10 | 20,170.00 |
| 29734 | 10-10 | 982.50 |
| 29735 | 10-03 | 400.00 |
| 29736 | 10-03 | 250.00 |
| 29737 | 10-04 | 350.00 |
| 29738 | 10-03 | 350.00 |
| 29739 | 10-02 | 7,750.19 |
| 29740 | 10-05 | 8,650.00 |
| 29741 | 10-05 | 17,300.00 |
| 29743 * | 10-18 | 750.00 |
| 29744 | 10-10 | 36.00 |
| 29746 * | 10-10 | 80.00 |
| 29747 | 10-10 | 60.00 |
| 29748 | 10-10 | 350.00 |
| 29749 | 10-10 | 50.00 |
| 29751 * | 10-04 | 7,323.00 |
| 29752 | 10-05 | 5,498.00 |
| 29753 | 10-05 | 9,152.00 |
| 29754 | 10-04 | 9,736.00 |
| 29755 | 10-04 | 1,922.50 |
| 29756 | 10-11 | 12,701.00 |
| 29757 | 10-11 | 4,234.00 |

October 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|--------|------|--------|
| 29758 | 10-04 | 7,600.00 |
| 29759 | 10-04 | 8,155.00 |
| 29760 | 10-04 | 12,501.00 |
| 29761 | 10-05 | 6,832.00 |
| 29762 | 10-05 | 10,504.00 |
| 29763 | 10-10 | 9,947.00 |
| 29765 * | 10-12 | 16,460.00 |
| 29766 | 10-11 | 7,315.00 |
| 29767 | 10-04 | 8,719.00 |
| 29768 | 10-10 | 22,899.00 |
| 29769 | 10-04 | 7,286.00 |
| 29770 | 10-04 | 12,352.00 |
| 29771 | 10-18 | 7,165.00 |
| 29772 | 10-05 | 8,822.00 |
| 29774 * | 10-09 | 6,277.00 |
| 29775 | 10-09 | 2,877.88 |
| 29776 | 10-04 | 5,920.00 |
| 29777 | 10-05 | 7,483.00 |
| 29778 | 10-09 | 12,021.00 |
| 29779 | 10-05 | 9,492.00 |
| 29780 | 10-09 | 7,676.00 |
| 29781 | 10-11 | 5,797.00 |
| 29782 | 10-04 | 8,388.00 |
| 29783 | 10-10 | 7,064.00 |
| 29785 * | 10-18 | 2,053.88 |
| 29786 | 10-18 | 2,877.82 |
| 29787 | 10-09 | 6,036.00 |
| 29790 * | 10-09 | 11,038.00 |
| 29791 | 10-04 | 6,824.00 |
| 29792 | 10-05 | 7,030.00 |
| 29793 | 10-09 | 11,626.00 |
| 29795 * | 10-05 | 12,587.00 |
| 29796 | 10-04 | 8,697.00 |
| 29797 | 10-30 | 2,488.51 |
| 29798 | 10-05 | 20,401.00 |
| 29799 | 10-09 | 9,674.00 |
| 29800 | 10-09 | 9,130.00 |
| 29801 | 10-05 | 9,046.00 |
| 29802 | 10-09 | 6,660.00 |
| 29803 | 10-04 | 6,249.00 |
| 29804 | 10-15 | 13,335.00 |
| 29805 | 10-05 | 6,101.00 |
| 29806 | 10-11 | 7,044.00 |
| 29807 | 10-09 | 6,632.00 |
| 29808 | 10-09 | 3,124.51 |
| 29809 | 10-05 | 9,062.00 |
| 29810 | 10-05 | 10,551.00 |
| 29811 | 10-26 | 6,805.00 |
| 29812 | 10-12 | 7,559.00 |
| 29813 | 10-09 | 11,919.00 |
| 29814 | 10-10 | 13,231.00 |
| 29815 | 10-10 | 10,058.00 |
| 29816 | 10-05 | 5,572.00 |

| Number | Date | Amount |
|--------|------|--------|
| 29818 * | 10-18 | 6,931.00 |
| 29819 | 10-18 | 5,846.00 |
| 29820 | 10-03 | 3,090.00 |
| 29821 | 10-10 | 100.00 |
| 29822 | 10-17 | 315.00 |
| 29823 | 10-11 | 385.00 |
| 29824 | 10-09 | 207.23 |
| 29825 | 10-09 | 50.00 |
| 29826 | 10-09 | 21,216.94 |
| 29827 | 10-15 | 256.25 |
| 29828 | 10-05 | 175.00 |
| 29829 | 10-09 | 250.00 |
| 29830 | 10-10 | 525.00 |
| 29832 * | 10-10 | 405.00 |
| 29833 | 10-09 | 150.00 |
| 29834 | 10-10 | 130.00 |
| 29835 | 10-09 | 150.00 |
| 29836 | 10-10 | 600.00 |
| 29837 | 10-11 | 100.00 |
| 29838 | 10-11 | 500.00 |
| 29839 | 10-11 | 40.70 |
| 29840 | 10-11 | 241.62 |
| 29841 | 10-11 | 990.04 |
| 29842 | 10-10 | 963.07 |
| 29843 | 10-12 | 61.11 |
| 29845 * | 10-10 | 2,322.85 |
| 29846 | 10-11 | 1,703.93 |
| 29847 | 10-12 | 140.00 |
| 29848 | 10-09 | 416.67 |
| 29849 | 10-12 | 518.66 |
| 29850 | 10-10 | 5,503.52 |
| 29851 | 10-10 | 275.53 |
| 29852 | 10-05 | 1,012.99 |
| 29853 | 10-09 | 406.85 |
| 29854 | 10-09 | 277.99 |
| 29855 | 10-12 | 100.00 |
| 29856 | 10-29 | 400.00 |
| 29857 | 10-11 | 300.00 |
| 29858 | 10-15 | 200.00 |
| 29859 | 10-12 | 1,000.00 |
| 29860 | 10-12 | 300.00 |
| 29861 | 10-15 | 100.00 |
| 29862 | 10-11 | 800.00 |
| 29863 | 10-11 | 100.00 |
| 29864 | 10-12 | 100.00 |
| 29865 | 10-11 | 400.00 |
| 29866 | 10-16 | 100.00 |
| 29867 | 10-11 | 500.00 |
| 29868 | 10-09 | 5,286.00 |
| 29869 | 10-09 | 5,921.00 |
| 29870 | 10-10 | 8,704.00 |
| 29872 * | 10-09 | 9,169.00 |
| 29873 | 10-10 | 8,118.00 |

Case: 09-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/10 16:46:00    Page 96 of 104


## Bank of North Georgia
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

October 31, 2007
010-001-108-9
**SYNERGY ACCEPTANCE CORP.**

## Checks

| Number | Date | Amount |
|---|---|---|
| 29874 | 10-12 | 685.28 |
| 29876 * | 10-11 | 737.30 |
| 29877 | 10-11 | 324.77 |
| 29878 | 10-09 | 2,830.00 |
| 29879 | 10-09 | 1,660.00 |
| 29880 | 10-09 | 3,540.00 |
| 29881 | 10-10 | 1,920.00 |
| 29882 | 10-10 | 518.33 |
| 29883 | 10-10 | 347.00 |
| 29884 | 10-10 | 1,760.00 |
| 29885 | 10-09 | 1,231.00 |
| 29886 | 10-10 | 1,315.00 |
| 29887 | 10-10 | 1,975.00 |
| 29888 | 10-10 | 7,131.00 |
| 29889 | 10-09 | 8,097.00 |
| 29890 | 10-09 | 10,125.00 |
| 29891 | 10-09 | 7,601.00 |
| 29892 | 10-09 | 8,984.00 |
| 29893 | 10-09 | 6,258.00 |
| 29894 | 10-10 | 9,255.00 |
| 29896 * | 10-10 | 200.00 |
| 29897 | 10-11 | 200.00 |
| 29898 | 10-09 | 800.00 |
| 29899 | 10-09 | 1,935.00 |
| 29900 | 10-10 | 2,765.95 |
| 29901 | 10-10 | 7,910.00 |
| 29902 | 10-12 | 4,705.00 |
| 29903 | 10-18 | 7,207.00 |
| 29904 | 10-10 | 7,212.00 |
| 29905 | 10-16 | 10,295.00 |
| 29906 | 10-10 | 13,950.00 |
| 29907 | 10-11 | 7,638.00 |
| 29908 | 10-10 | 9,415.00 |
| 29909 | 10-11 | 132.29 |
| 29910 | 10-12 | 4,482.73 |
| 29914 * | 10-10 | 26.49 |
| 29915 | 10-12 | 80.00 |
| 29916 | 10-10 | 92.00 |
| 29917 | 10-23 | 100,513.70 |
| 29918 | 10-22 | 28,013.29 |
| 29919 | 10-19 | 200,230.14 |
| 29920 | 10-22 | 100,080.01 |
| 29921 | 10-19 | 50,262.65 |
| 29922 | 10-22 | 30,109.11 |
| 29923 | 10-22 | 25,090.92 |
| 29924 | 10-19 | 25,101.12 |
| 29925 | 10-23 | 26,089.19 |
| 29926 | 10-18 | 25,000.00 |
| 29927 | 10-19 | 30,062.49 |
| 29929 * | 10-19 | 20,000.00 |
| 29930 | 10-24 | 120,996.19 |
| 29931 | 10-22 | 66,528.14 |

| Number | Date | Amount |
|---|---|---|
| 29932 | 10-24 | 70,434.14 |
| 29933 | 10-19 | 30,616.78 |
| 29934 | 10-19 | 145,823.35 |
| 29935 | 10-23 | 50,281.88 |
| 29936 | 10-24 | 44,122.50 |
| 29937 | 10-19 | 50,000.00 |
| 29939 * | 10-19 | 25,093.12 |
| 29940 | 10-24 | 125,000.00 |
| 29941 | 10-22 | 75,140.24 |
| 29942 | 10-22 | 15,031.16 |
| 29943 | 10-24 | 131,245.45 |
| 29944 | 10-22 | 48,000.00 |
| 29945 | 10-22 | 50,033.70 |
| 29946 | 10-22 | 35,023.62 |
| 29947 | 10-22 | 15,485.09 |
| 29948 | 10-19 | 50,000.00 |
| 29949 | 10-22 | 121,267.58 |
| 29950 | 10-22 | 54,536.54 |
| 29951 | 10-22 | 18,748.98 |
| 29952 | 10-22 | 46,421.94 |
| 29953 | 10-22 | 25,098.63 |
| 29954 | 10-19 | 25,109.67 |
| 29955 | 10-22 | 45,042.22 |
| 29956 | 10-22 | 30,590.41 |
| 29957 | 10-22 | 172,091.21 |
| 29958 | 10-22 | 41,056.75 |
| 29959 | 10-22 | 31,988.63 |
| 29960 | 10-22 | 83,115.35 |
| 29961 | 10-22 | 25,393.67 |
| 29962 | 10-22 | 24,784.08 |
| 29963 | 10-22 | 167,143.69 |
| 29964 | 10-19 | 50,894.86 |
| 29965 | 10-22 | 26,990.50 |
| 29966 | 10-22 | 65,000.00 |
| 29967 | 10-22 | 33,450.29 |
| 29968 | 10-22 | 40,047.99 |
| 29969 | 10-22 | 36,000.00 |
| 29970 | 10-22 | 35,052.89 |
| 29971 | 10-22 | 42,853.22 |
| 29972 | 10-22 | 40,000.00 |
| 29973 | 10-30 | 100,201.37 |
| 29974 | 10-22 | 91,770.71 |
| 29975 | 10-22 | 125,000.00 |
| 29976 | 10-22 | 64,911.27 |
| 29977 | 10-24 | 126,846.58 |
| 29978 | 10-22 | 29,119.08 |
| 29979 | 10-24 | 110,011.30 |
| 29980 | 10-22 | 101,858.48 |
| 29981 | 10-23 | 10,000.00 |
| 29982 | 10-22 | 42,572.74 |
| 29983 | 10-22 | 46,907.90 |
| 29984 | 10-19 | 25,191.77 |

October 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|--------|------|--------|
| 29985 | 10-24 | 50,346.23 |
| 29986 | 10-24 | 50,067.81 |
| 29987 | 10-22 | 150.00 |
| 29988 | 10-30 | 130.00 |
| 29989 | 10-22 | 150.00 |
| 29990 | 10-26 | 300.00 |
| 29991 | 10-30 | 1,385.12 |
| 29992 | 10-26 | 98.00 |
| 29993 | 10-30 | 368.32 |
| 29994 | 10-30 | 84.96 |
| 29995 | 10-29 | 29.21 |
| 29996 | 10-29 | 313.57 |
| 29998 * | 10-30 | 286.20 |
| 29999 | 10-29 | 910.84 |
| 30000 | 10-25 | 2,514.34 |
| 30001 | 10-18 | 7,333.00 |
| 30002 | 10-17 | 5,752.00 |
| 30003 | 10-18 | 9,904.00 |
| 30004 | 10-17 | 7,105.00 |
| 30005 | 10-18 | 7,586.00 |
| 30006 | 10-18 | 8,937.00 |
| 30007 | 10-18 | 8,065.00 |
| 30008 | 10-17 | 3,711.00 |
| 30009 | 10-17 | 9,846.00 |
| 30010 | 10-18 | 11,166.00 |
| 30011 | 10-18 | 5,281.00 |
| 30012 | 10-19 | 6,264.00 |
| 30013 | 10-17 | 7,643.00 |
| 30014 | 10-17 | 6,882.00 |
| 30015 | 10-17 | 6,999.00 |
| 30016 | 10-18 | 6,650.00 |
| 30017 | 10-17 | 11,638.00 |
| 30018 | 10-17 | 10,622.00 |
| 30019 | 10-17 | 6,646.00 |
| 30020 | 10-17 | 8,278.00 |
| 30021 | 10-17 | 9,436.00 |
| 30022 | 10-18 | 2,043.75 |
| 30023 | 10-18 | 300.00 |
| 30024 | 10-24 | 7,350.00 |
| 30025 | 10-25 | 350.00 |
| 30026 | 10-19 | 1,925.00 |
| 30027 | 10-22 | 239.80 |
| 30028 | 10-17 | 439.99 |
| 30029 | 10-26 | 5,851.80 |
| 30030 | 10-23 | 91.00 |
| 30031 | 10-19 | 8,093.00 |
| 30032 | 10-22 | 6,876.00 |
| 30034 * | 10-18 | 7,260.00 |
| 30035 | 10-17 | 7,451.00 |
| 30037 * | 10-19 | 8,083.00 |
| 30038 | 10-19 | 4,913.00 |
| 30039 | 10-19 | 100.00 |
| 30040 | 10-22 | 4,913.00 |

| Number | Date | Amount |
|--------|------|--------|
| 30041 | 10-18 | 1,908.50 |
| 30042 | 10-18 | 6,162.00 |
| 30043 | 10-18 | 9,255.00 |
| 30045 * | 10-19 | 1,755.00 |
| 30046 | 10-22 | 5,772.00 |
| 30047 | 10-18 | 5,462.00 |
| 30048 | 10-18 | 13,935.00 |
| 30049 | 10-18 | 6,511.00 |
| 30050 | 10-26 | 1,000.00 |
| 30051 | 10-19 | 500.00 |
| 30052 | 10-23 | 500.00 |
| 30053 | 10-26 | 700.00 |
| 30054 | 10-19 | 100.00 |
| 30055 | 10-30 | 100.00 |
| 30056 | 10-25 | 500.00 |
| 30057 | 10-23 | 1,000.00 |
| 30058 | 10-29 | 900.00 |
| 30059 | 10-31 | 100.00 |
| 30060 | 10-24 | 1,000.00 |
| 30061 | 10-22 | 300.00 |
| 30062 | 10-23 | 700.00 |
| 30063 | 10-25 | 700.00 |
| 30064 | 10-19 | 1,338.80 |
| 30065 | 10-17 | 2,300.00 |
| 30066 | 10-19 | 500.00 |
| 30067 | 10-22 | 1,151.85 |
| 30068 | 10-18 | 1,420.35 |
| 30071 * | 10-29 | 425.00 |
| 30072 | 10-31 | 402.00 |
| 30074 * | 10-19 | 14,477.00 |
| 30075 | 10-19 | 9,140.00 |
| 30077 * | 10-22 | 4,369.00 |
| 30078 | 10-29 | 265.20 |
| 30079 | 10-30 | 361.63 |
| 30080 | 10-29 | 50.00 |
| 30081 | 10-23 | 19.21 |
| 30083 * | 10-30 | 26.53 |
| 30084 | 10-22 | 33,366.21 |
| 30086 * | 10-23 | 190.56 |
| 30087 | 10-23 | 255.69 |
| 30088 | 10-22 | 267.24 |
| 30089 | 10-24 | 224.47 |
| 30090 | 10-24 | 391.25 |
| 30091 | 10-26 | 1,621.00 |
| 30092 | 10-22 | 1,875.00 |
| 30093 | 10-19 | 50.00 |
| 30094 | 10-31 | 350.00 |
| 30095 | 10-31 | 270.00 |
| 30096 | 10-26 | 125.00 |
| 30097 | 10-23 | 8,828.00 |
| 30098 | 10-23 | 7,892.00 |
| 30099 | 10-23 | 7,946.00 |
| 30100 | 10-23 | 10,914.00 |



**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

October 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Checks

| Number | Date | Amount |
|---|---|---|
| 30101 | 10-23 | 10,000.00 |
| 30102 | 10-30 | 7,502.00 |
| 30103 | 10-29 | 10,663.00 |
| 30104 | 10-29 | 8,977.00 |
| 30105 | 10-29 | 5,906.00 |
| 30106 | 10-29 | 8,511.00 |
| 30108 * | 10-29 | 9,677.00 |
| 30110 * | 10-29 | 2,755.95 |
| 30111 | 10-29 | 12,400.00 |
| 30112 | 10-29 | 2,360.95 |
| 30113 | 10-29 | 1,965.95 |
| 30114 | 10-30 | 9,662.00 |
| 30115 | 10-23 | 15,616.00 |
| 30116 | 10-30 | 8,273.00 |
| 30117 | 10-23 | 8,703.00 |
| 30120 * | 10-29 | 9,243.00 |
| 30121 | 10-26 | 6,333.00 |
| 30122 | 10-29 | 2,227.58 |
| 30125 * | 10-23 | 10,739.00 |
| 30127 * | 10-29 | 8,038.00 |
| 30129 * | 10-30 | 6,577.00 |
| 30130 | 10-29 | 6,044.00 |
| 30131 | 10-26 | 6,377.00 |
| 30132 | 10-30 | 7,205.00 |
| 30133 | 10-29 | 7,039.00 |
| 30134 | 10-23 | 10,121.00 |
| 30136 * | 10-29 | 6,657.00 |
| 30137 | 10-30 | 5,095.00 |
| 30138 | 10-29 | 7,905.00 |
| 30139 | 10-23 | 7,537.00 |
| 30140 | 10-29 | 7,375.00 |
| 30142 * | 10-31 | 13,218.00 |
| 30143 | 10-30 | 6,053.00 |
| 30145 * | 10-29 | 7,814.00 |
| 30146 | 10-29 | 8,551.00 |
| 30147 | 10-31 | 5,435.00 |
| 30149 * | 10-24 | 734.40 |
| 30150 | 10-24 | 170.37 |
| 30151 | 10-25 | 653.73 |
| 30152 | 10-25 | 700.00 |
| 30154 * | 10-22 | 777.86 |
| 30156 * | 10-25 | 105.33 |
| 30157 | 10-25 | 270.00 |
| 30158 | 10-26 | 1,537.75 |
| 30159 | 10-29 | 536.21 |
| 30160 | 10-23 | 42.94 |
| 30161 | 10-25 | 240.73 |
| 30165 * | 10-26 | 100.00 |
| 30166 | 10-25 | 100.00 |
| 30167 | 10-25 | 100.00 |

| Number | Date | Amount |
|---|---|---|
| 30169 * | 10-31 | 100.00 |
| 30170 | 10-25 | 100.00 |
| 30171 | 10-25 | 100.00 |
| 30172 | 10-25 | 100.00 |
| 30173 | 10-25 | 100.00 |
| 30175 * | 10-25 | 300.00 |
| 30177 * | 10-25 | 500.00 |
| 30178 | 10-29 | 24.05 |
| 30188 * | 10-31 | 21.00 |
| 30189 | 10-30 | 986.82 |
| 30190 | 10-30 | 26.53 |
| 30191 | 10-30 | 165.84 |
| 30192 | 10-31 | 262.56 |
| 30193 | 10-31 | 336.50 |
| 30195 * | 10-30 | 133.03 |
| 30197 * | 10-30 | 17.47 |
| 30201 * | 10-30 | 219.00 |
| 30202 | 10-31 | 409.10 |
| 30203 | 10-30 | 256.59 |
| 30204 | 10-29 | 347.09 |
| 30205 | 10-30 | 166.82 |
| 30206 | 10-30 | 263.19 |
| 30207 | 10-30 | 82.67 |
| 30208 | 10-31 | 599.00 |
| 30209 | 10-31 | 100.00 |
| 30213 * | 10-31 | 1,319.76 |
| 30215 * | 10-29 | 725.00 |
| 30216 | 10-29 | 1,342.09 |
| 30218 * | 10-30 | 336.55 |
| 30221 * | 10-29 | 50.00 |
| 30222 | 10-29 | 455.00 |
| 30224 * | 10-26 | 19,500.09 |
| 30226 * | 10-26 | 16,039.35 |
| 30227 | 10-30 | 1,443.10 |
| 30228 | 10-30 | 320.00 |
| 30233 * | 10-30 | 2,940.00 |
| 30235 * | 10-30 | 50.00 |
| 30236 | 10-26 | 15,698.36 |
| 30237 | 10-30 | 336.55 |
| 30239 * | 10-26 | 1,950.00 |
| 30243 * | 10-31 | 150.00 |
| 30244 | 10-31 | 250.00 |
| 30245 | 10-31 | 250.00 |
| 30247 * | 10-30 | 625.62 |
| 30251 * | 10-31 | 60.50 |
| 30252 | 10-31 | 500.00 |
| 30253 | 10-31 | 10,362.00 |
| 30254 | 10-31 | 6,653.00 |
| 30256 * | 10-31 | 8,013.00 |

* Skip in check sequence

Case: 12-03156    Doc# 227    Filed: 04/24/14    Entered: 04/24/14 16:46:00    Page 99 of 104

October 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Other Debits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 10-01 | Deposit Return Item | Rdi chargeback for seq 0146510800 | 432.80 |
| 10-01 | Service Charge | Deposit Return Ite | 5.00 |
| 10-01 | POS Withdrawal | Bkcd Chargeback Chargeback SYNERGY ACCEPTANCE000000010144193 | 465.56 |
| 10-01 | Preauthorized Wd | CB&T/Bkcd Mnthly Merch Fees 070928 000000010144193 | 8,139.14 |
| 10-03 | Service Charge | Stop Pay Charge | 32.00 |
| 10-04 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 071004 15GY6 100540A01 | 15,237.11 |
| 10-04 | Service Charge | Stop Pay Charge | 32.00 |
| 10-05 | Service Charge | Wire Transfer-IN | 15.00 |
| 10-05 | Deposit Return Item | Rdi chargeback for seq 0146682170 | 585.95 |
| 10-05 | Service Charge | Deposit Return Ite | 5.00 |
| 10-05 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 071005 569007360449GY6 | 32,560.94 |
| 10-05 | Preauthorized Wd | Adp Payroll Fees Adp - Fees 071005 10GY6 8269951 | 127.53 |
| 10-09 | Service Charge | Wire Transfer-IN | 15.00 |
| 10-11 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 071011 634012377409GY6 | 33,307.01 |
| 10-11 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 071011 15GY6 101241A01 | 14,458.88 |
| 10-12 | Preauthorized Wd | Adp Payroll Fees Adp - Fees 071012 10GY6 8594719 | 127.53 |
| 10-16 | Transfer Debit | Transfer To Deposit Account 0100010933 | 20,000.00 |
| 10-16 | Transfer Debit | Transfer To Deposit Account 0100010933 | 7,780.71 |
| 10-17 | Service Charge | Wire Transfer-IN | 15.00 |
| 10-17 | Service Charge | Wire Transfer-IN | 15.00 |
| 10-18 | Service Charge | Wire Transfer-IN | 15.00 |
| 10-18 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 071018 15GY6 101942A01 | 15,965.27 |
| 10-19 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 071019 707016784218GY6 | 37,609.64 |
| 10-19 | Preauthorized Wd | Adp Payroll Fees Adp - Fees 071019 10GY6 0157805 | 163.75 |
| 10-23 | Wire Transfer-Out | | 21,267.90 |
| 10-23 | Service Charge | Wire Transfer-Out | 20.00 |
| 10-25 | Service Charge | Wire Transfer-IN | 15.00 |
| 10-25 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 071025 15GY6 102643A01 | 14,586.83 |
| 10-25 | Service Charge | Stop Pay Charge | 32.00 |
| 10-26 | Deposit Return Item | Rdi chargeback for seq 0100194230 | 635.38 |
| 10-26 | Service Charge | Deposit Return Ite | 5.00 |
| 10-26 | Preauthorized Wd | Adp TX/Fincl Svc Adp - Tax 071026 645011891415GY6 | 38,539.23 |
| 10-26 | Preauthorized Wd | Adp Payroll Fees Adp - Fees 071026 10GY6 0064134 | 149.83 |



# Bank of North Georgia
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

October 31, 2007
010-001-108-9
**SYNERGY ACCEPTANCE CORP.**

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|-------:|
| 10-01 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 28,567.56 |
| 10-01 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 13,778.73 |
| 10-01 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21777956 | 8,576.20 |
| 10-01 | Remote Express Dep | | 100.00 |
| 10-02 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21794087 | 31,170.67 |
| 10-02 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 19,035.11 |
| 10-02 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21810848 | 14,421.27 |
| 10-02 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21827979 | 6,444.35 |
| 10-03 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21835661 | 22,670.47 |
| 10-03 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 14,690.00 |
| 10-03 | Remote Express Dep | | 960.95 |
| 10-03 | Remote Express Dep | | 257.63 |
| 10-04 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 18,357.24 |
| 10-04 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21862216 | 7,981.23 |
| 10-05 | Transfer Credit | Transfer From Deposit Account 0100009646 | 850,000.00 |
| 10-05 | Wire Transfer-IN | | 477,910.09 |
| 10-05 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 10,749.07 |
| 10-05 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21881649 | 9,937.69 |
| 10-05 | Remote Express Dep | | 351.90 |
| 10-09 | Wire Transfer-IN | | 470,755.49 |
| 10-09 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 22,569.89 |
| 10-09 | Deposit | | 17,299.64 |
| 10-09 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 15,617.45 |
| 10-09 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21896075 | 13,867.58 |
| 10-09 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 9,318.18 |
| 10-09 | Remote Express Dep | | 1,056.78 |
| 10-09 | Deposit | | 301.00 |
| 10-10 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21911561 | 19,269.65 |
| 10-10 | Credit Memo Bankcard | POS Deposits Deposits SYNERGY ACCEPTANCE000000010144193 | 10,375.42 |
| 10-10 | Preauthorized Credit | Moneygram P Sys Util Remit 43547245,21928468 | 9,185.32 |

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 101 of 104

October 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 10-10 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,21955595 | 5,472.04 |
| 10-10 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,21943213 | 4,753.94 |
| 10-10 | Preauthorized Credit | Adp TX/Fincl Svc Adp - Tax<br>071010 719014439103GY6 | 1,621.16 |
| 10-10 | Remote Express Dep | | 510.00 |
| 10-11 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 13,126.26 |
| 10-11 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,21969156 | 8,349.90 |
| 10-12 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 11,318.17 |
| 10-12 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,21987303 | 5,894.90 |
| 10-15 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 17,277.44 |
| 10-15 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 12,731.52 |
| 10-15 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22001176 | 11,293.50 |
| 10-15 | Remote Express Dep | | 7,153.10 |
| 10-15 | Remote Express Dep | | 712.34 |
| 10-15 | Deposit | | 26.00 |
| 10-16 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22017659 | 20,016.61 |
| 10-16 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 15,254.10 |
| 10-16 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22036927 | 13,836.21 |
| 10-16 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22050877 | 3,318.94 |
| 10-17 | Wire Transfer-IN | | 4,248,061.34 |
| 10-17 | Wire Transfer-IN | | 484,606.59 |
| 10-17 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 27,228.79 |
| 10-17 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22058774 | 18,790.72 |
| 10-18 | Wire Transfer-IN | | 612,042.03 |
| 10-18 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 19,323.32 |
| 10-18 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22076927 | 11,197.84 |
| 10-18 | Remote Express Dep | | 4,933.82 |
| 10-18 | Remote Express Dep | | 553.00 |
| 10-19 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 14,154.96 |
| 10-19 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22093068 | 8,479.82 |
| 10-19 | Remote Express Dep | | 643.47 |
| 10-19 | Remote Express Dep | | 205.00 |

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 102 of 104


**Bank of North Georgia**
Member FDIC

P O Box 1407 • Alpharetta, GA 30009

October 31, 2007
010-001-108-9
SYNERGY ACCEPTANCE CORP.

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 10-22 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22106673 | 16,702.29 |
| 10-22 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 15,543.85 |
| 10-22 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 6,349.19 |
| 10-23 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22122440 | 21,654.59 |
| 10-23 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 20,857.96 |
| 10-23 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22138942 | 7,855.41 |
| 10-23 | Remote Express Dep | | 6,328.32 |
| 10-23 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22153156 | 4,230.47 |
| 10-24 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22163671 | 13,019.06 |
| 10-24 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 12,986.43 |
| 10-25 | Wire Transfer-IN | | 343,843.65 |
| 10-25 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 14,688.25 |
| 10-25 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22186348 | 9,658.21 |
| 10-25 | Remote Express Dep | | 512.87 |
| 10-25 | Remote Express Dep | | 180.00 |
| 10-26 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 15,124.08 |
| 10-26 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22202489 | 7,470.75 |
| 10-29 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 34,726.67 |
| 10-29 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 15,868.69 |
| 10-29 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22211653 | 7,760.92 |
| 10-29 | Preauthorized Credit | Adp TX/Fincl Svc Adp - Tax<br>071029 761008656215GY6 | 520.35 |
| 10-30 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22226629 | 21,323.33 |
| 10-30 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 14,224.63 |
| 10-30 | Remote Express Dep | | 9,297.00 |
| 10-30 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22247157 | 8,408.13 |
| 10-30 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22262577 | 2,579.39 |
| 10-30 | Deposit | | 1,853.52 |
| 10-31 | Credit Memo Bankcard | POS Deposits Deposits<br>SYNERGY ACCEPTANCE000000010144193 | 13,143.04 |

Case: 12-03156   Doc# 227   Filed: 04/24/14   Entered: 04/24/14 16:46:00   Page 103 of 104

**October 31, 2007**
**010-001-108-9**
**SYNERGY ACCEPTANCE CORP.**

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 10-31 | Preauthorized Credit | Moneygram P Sys Util Remit<br>43547245,22268344 | 13,121.71 |
| 10-31 | Remote Express Dep | | 5,503.49 |

## Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 09-30 | 468,706.18 | 10-11 | 846,877.33 | 10-23 | 1,923,539.52 |
| 10-01 | 355,538.22 | 10-12 | 751,366.19 | 10-24 | 1,110,007.14 |
| 10-02 | 338,232.28 | 10-15 | 551,606.42 | 10-25 | 1,454,282.31 |
| 10-03 | 330,784.71 | 10-16 | 293,665.40 | 10-26 | 1,353,511.35 |
| 10-04 | 23,379.04 | 10-17 | 4,860,183.58 | 10-29 | 1,271,304.29 |
| 10-05 | 1,065,359.88 | 10-18 | 5,249,525.28 | 10-30 | 1,164,820.87 |
| 10-09 | 1,302,748.46 | 10-19 | 4,406,564.95 | 10-31 | 1,145,623.44 |
| 10-10 | 1,112,310.81 | 10-22 | 2,176,812.84 | | |